1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                    Plaintiff,

     -v-                        Case No. 16-30350

RANDY MONTANTE,

                    Defendant./
     _____

**DETENTION HEARING**
**BEFORE HON. ANTHONY P. PATTI**
United States Magistrate Judge
Theodore Levin U.S. Courthouse
231 West Lafayette Boulevard
Detroit, Michigan 48226

**(Friday, August 12, 2016)**

APPEARANCES:          MARGARET SMITH, ESQUIRE
                      Appearing on behalf of the Government.

                      ANDREW N. WISE, ESQUIRE
                      Appearing on behalf of the Defendant.

TRANSCRIBED BY:       MARIE METCALF, CVR, CM
                      Federal Official Court Reporter
                      257 U.S. Courthouse
                      231 W. Lafayette Boulevard
                      Detroit, Michigan 48226
                      metcalf_court@msn.com

*(TRANSCRIPT PRODUCED FROM DIGITAL VOICE RECORDING; TRANSCRIBER*
*NOT PRESENT AT PROCEEDINGS)*

1

## TABLE OF CONTENTS

2

3     Proceedings – Friday, August 12, 2016

4

5

6

7     **WITNESS:**                                        **PAGE:**

8      (None called)

9

10

11

12

13

14

15

16

17

18    **EXHIBITS:**                                       **REC'D:**

19     (None offered)

20

21

22

23

24

25

*U.S.A. v. Randy Montante*

1          Detroit, Michigan

2          Friday, August 12, 2016

3          At 1:31 p.m.

4                              *     *     *

5          DEPUTY COURT CLERK:  The Court calls case number

6    16-30350, United States of America versus Randy Montante.

7          MS. SMITH:  Good afternoon, Your Honor.  Maggie

8    Smith appearing on behalf of the United States.

9          THE COURT:  Good afternoon, Ms. Smith.

10          MR. WISE:  Andrew Wise on behalf of Mr. Montante.

11          THE COURT:  Good afternoon again, Mr. Wise.

12          So it's my understanding this is the date and time

13    set for a detention hearing, correct?

14          MS. SMITH:  That is correct, Your Honor.

15          THE COURT:  And how does the government wish to

16    proceed?

17          MS. SMITH:  The government intends on proceeding by

18    proffer.

19          THE COURT:  Okay.  You may proceed.

20          MS. SMITH:  Thank you.  Before I begin, may I hand

21    up three exhibits to the Court?

22          THE COURT:  You may.

23          MS. SMITH:  Thank you.  May I begin?

24          THE COURT:  Yes.

25          MS. SMITH:  Thank you, Your Honor.

*U.S.A. v. Randy Montante*

1          The United States is seeking detention today on the

2     basis that the defendant is both a risk of flight and a

3     danger to the community.

4          This is a presumption case because the defendant has

5     been charged with various crimes related to the production,

6     receipt of child pornography and on-line enticement of a

7     minor.

8          THE COURT:  Do you have a detention worksheet, by

9     the way, before I forget to ask?

10         MS. SMITH:  No, but I can fill one out.  I

11    apologize.  Do you want it now or do you want it at the end

12    of the hearing?

13         THE COURT:  Just so we don't forget.

14         (Brief pause in proceedings)

15         MS. SMITH:  Your Honor, I'm going to show this to

16    the defense counsel before I pass it up.

17         THE COURT:  Thank you.  Do both sides agree that

18    this is a presumption case?

19         MR. WISE:  Yes, Your Honor.

20         MS. SMITH:  Thank you.  Your Honor, there is one

21    minor victim that I will refer to throughout this case.  It

22    is a female child born in the fall of 2002.  During the

23    relevant time periods in this criminal complaint she was 13

24    years old.

25         On July 23, 2016, which was just a couple of weeks

*U.S.A. v. Randy Montante*

1    ago, minor victim one's mother reported to the police in New

2    Jersey, which is the state where the minor victim resides,

3    that her daughter had been texting, Skyping, using Kik and

4    various other social media applications, as well as texting

5    and calling the defendant, and had been doing so since

6    February of 2016.

7              Those communications were sexually explicit in

8    nature and included her transmission of images and videos

9    that were sexually explicit.

10             On July 21st, which was two days before she came to

11   the police, she had obtained minor victim one's phone, saw

12   these communications and communicated to the defendant that

13   her daughter was a minor and that he should leave her alone.

14             Between July 22nd and July 23rd, minor victim one

15   and the defendant continued to converse with each other, and

16   through Twitter they exchanged over 100 messages after minor

17   victim one's mother confronted the defendant.  This is

18   between July 22nd at 11:16 a.m. and July 23rd at 8:31 a.m.

19             And among the things that the defendant instructed

20   minor victim one were the following.  I'm going to read from

21   these messages, because I think that the Court can't get a

22   flavor for the facts of this case without hearing the types

23   of things that this defendant was saying.

24             MR. WISE:  At this point can I make a request, since

25   Ms. Smith seems to be reading from a printed list of Twitter

*U.S.A. v. Randy Montante*

1    messages, that I could review that list.

2              THE COURT:  Yeah, I'm wondering, is there a list I

3    can see, too, that might have dates and times?

4              MS. SMITH:  Your Honor, I'm reading from a 24-hour

5    period of time.  These are unredacted Twitter messages that

6    I'm happy to show to the defense and I'm happy to show them

7    to the bench, but I have received much of this information in

8    the last 48 hours, so I haven't had an opportunity to redact

9    that.  But I'm happy to pass, to take a look, if that's

10   acceptable to the Court and to defense.

11             THE COURT:  Sure.  I understand that they're

12   unredacted.  We're not going to enter them in the record so

13   that they're viewable, but I'd like to be able to follow

14   along, and I'm sure Mr. Wise would, as well.

15             MS. SMITH:  Okay.  If Your Honor would like, I can

16   -- if you would indulge me, I could make copies in the back,

17   okay?

18             THE COURT:  Okay, that would be great.

19             (At 1:36 p.m., pause in proceedings)

20             (At 1:52 p.m., Court in session)

21             THE COURT:  You may proceed when you're ready.

22             MS. SMITH:  I'm sorry, I thought you were reading

23   the texts.

24             THE COURT:  Well, I was, but this pile is a little

25   bit bigger, so I think I'll let you guide our way through.

*U.S.A. v. Randy Montante*

1          MS. SMITH:  Thank you, Your Honor.  As I was stating

2     earlier, on approximately July 21st, minor victim one's

3     mother had communicated with the defendant, letting him know

4     that she was a minor and that he should leave her alone.

5          The first packet of text messages that I gave a copy

6     to the defense counsel and to the Court are from Twitter, and

7     they span July 22, 2016 at 11:16 a.m. to July 23, 2016 at

8     8:31 a.m.  And these are exclusively between minor victim one

9     and the defendant.

10          And as I go through these -- there's no page numbers

11     on here, so I'll give you the date and time as I go through.

12          On 7/22, at 11:21 a.m., which is the second page,

13     the defendant tells minor victim one:

14          "If you end up getting good at Hearthstone, we can

15          play one day.  My Blizzard ID is --"

16     and then there's an identification.

17          Hearthstone, for the Court's reference, is an

18     on-line game that allows a chat feature.

19          On the next page, 7/22 at 11:29 -- excuse me, 11:25

20     a.m., the defendant tells minor victim one:

21          "Your parents are sneaky."

22     Two lines down, he says:

23          "Gotta watch out for them baiting me."

24     And this -- these two text communications are in response to

25     the defendant asking, if you will, security questions to

7

*U.S.A. v. Randy Montante*

1    minor victim one.  And she answered them correctly, so he

2    felt it was safe to talk to her.

3           THE COURT:  Okay, just give me one second.  I want

4    to make sure I'm indeed on the correct page.

5           MS. SMITH:  It would be the third page of the

6    Twitter messages.

7           THE COURT:  Okay, I'm sorry.  I'm on Skype.

8           Got it.

9           MS. SMITH:  And about three quarters of the way

10   down, 7/22 at 11:26 a.m., the defendant says:

11          "Gotta find alternate ways to talk now."

12   On the next page, the two are discussing the fact that mom

13   telephoned the defendant.

14          And at 11:26, the defendant says:

15          "I was smart enough not to pick up."

16   And towards the end of the page, 11:29 a.m., the defendant

17   says:

18          "But yeah, alternate ways we can talk.

19          Hearthstone has a chat feature and you can play it

20          off as if you're playing a game."

21   Continuing to the next page, 11:30 a.m., he says:

22          "So add my Blizzard account when you have the

23          chance.  It's --"

24   and then he gives the account.

25          Two lines down at 11:30, he says:

1          "Also, when and if you get a laptop, download

2          Steam.  And my account on there is --"

3     and he provides another account name.

4          "We weren't --"

5     Sorry.

6          THE COURT:  You need -- I'm just trying to decide

7     whether I can mark or make notes on these.  Do you need these

8     back?

9          MS. SMITH:  They are unredacted.  So to the extent

10    the Court intends on keeping them, I would ask they be placed

11    under seal.  I would ask that the defendant return his copy

12    until I can give him a redacted copy.

13         THE COURT:  Is that acceptable, Mr. Wise?

14         MR. WISE:  That's fine.

15         THE COURT:  Thank you.  I will do so.  Go ahead.

16         MS. SMITH:  Thank you.  In fact, most of the text

17    messages I'm going to read into the record are from the

18    defendant, so in order to kind of streamline this process,

19    unless I say otherwise, these are the defendant's texts.

20         Eleven thirty:

21         "But we weren't careful enough.  If this is going

22         to be a thing, we have to be ten times more."

23    Eleven thirty-two:

24         "All I can think about is how to make it work.

25         But yeah, don't forget to add me on Blizzard and

*U.S.A. v. Randy Montante*

1            Hearthstone, so you don't forget."

2       Next page, 11:34:

3            "Gotta be extra careful.  And when we talk a lot,

4            make sure no one knows.  Make sure you know no

5            one's around."

6       Next page, 11:37 a.m.:

7            "Oh, and you have to act sad that we, quote,

8            aren't talking anymore, unquote, or they'll

9            suspect you're still doing it."

10      Eleven thirty-eight:

11           "We need to talk when you know they aren't

12           anywhere near."

13      Next page, 11:41:

14           "Don't forget to add my Blizzard."

15      And then he provides the screen name a third time.

16           Next page, 11:46:

17           "So just message me later or when you're alone.

18           Hang in there, princess.  You know we'll make this

19           work."

20      Next page, 7:34 p.m.  This is all on the same day, July 22nd.

21      The defendant asks minor victim one:

22           "What are the passwords?"

23      This is referring to the two passwords that he had previously

24      arranged for them to use to communicate.

25           Seven thirty-seven p.m.:

*U.S.A. v. Randy Montante*

1          "But also, we can't talk unless it's 100 percent

2          safe."

3    Two pages later, 7:54 p.m.:

4          "Send me a message later.  Don't forget the

5          passwords.  And only if it's 100 percent safe.

6          Delete all conversations."

7    Next page, 7/23 at 12:25 a.m.:

8          "Did they find the number of mine?"

9    And in this text, he's referring to her parents.

10         He then says:

11         "It's 313."

12   Next page, 12:27 a.m.:

13         "Also, what's your address so I have it?"

14   Next page, 12:33 a.m.:

15         "Also, my home address is --"

16   and he provides a house number on Highview in Dearborn.

17         "Put that somewhere no one will ever find it, even

18         accidentally."

19   Minor victim one asks:

20         "Should I give you mine?"

21   And the defendant says:

22         "Actually, don't.  It might get found."

23   And then in the same minute, he says:

24         "Give me yours."

25   Next page:

*U.S.A. v. Randy Montante*

1           "That way, if the shit hits the fan, I'll still

2           have an idea where you are."

3   Next page, 12:41 a.m.:

4           "For real, only contact if you know for real it's

5           safe."

6           THE COURT:  What time was that one?

7           MS. SMITH:  That was 7/23 at 12:41 a.m.  It's the

8   second line at the top of the page.

9           THE COURT:  Okay, got it.

10          MS. SMITH:  Two pages later, at 12:48 a.m.:

11          "We weren't careful enough,"

12  the defendant says.

13          At 12:50, he asks minor victim one:

14          "Does your iTouch have Kik?  I mean, like for

15          months from now when it's safe?"

16  Next page:

17          "And you can use it at school."

18  Twelve fifty-two, referring to the Kik app.  He says:

19          "You'd have to re-download and delete it every

20          time."

21  I'm going to direct the Court to the last page of this

22  packet.

23          The second from-the-last entry is at 7/23 at 8:07

24  a.m.  And it purports to be -- it's from minor victim one's

25  account, but it's minor victim one's mother.  This is the

*U.S.A. v. Randy Montante*

```
1      second time she has communicated with the defendant.

2              And she says:

3              "Wow, I --"

4      I think she means to say "you."

5              "-- didn't get the message the first time.  My

6              daughter is 12 years old.  I have screenshot

7              everything and I'm calling police to report you

8              for soliciting a minor.  Stay the fuck away.  She

9              won't be following any of your games to talk.  I

10             have the screenshot of you directing her to talk

11             to you."

12     I'm going to skip his screen name there.

13             "To talk to you when it's safe."

14     And then she uses a curse word.

15             And the defendant responded to that message by

16     saying:

17             "I believe you meant you didn't message the first

18             time.  And as far as I'm concerned, age of consent

19             is 18 in both New York and Michigan, not that that

20             would matter in this situation, as realistically,

21             what would happen anytime soon between us.  I

22             would have rather held my tongue, but seeing as

23             that's no longer an option, so be it.  I'm fairly

24             certain that you, of all people, should know, as

25             her mother, how she feels.  From what she's told
```

*U.S.A. v. Randy Montante*

1          me about her friends --"
And I'm not going to name the names.

3          "-- they clearly don't fully respect her or get

4          her, and clearly neither do you.  I'm not telling

5          you how to parent your child, but I am telling you

6          how I think she feels.  We talked for at least

7          four months now.  Now, why would anyone waste

8          their time talking to someone for four months?"
The last line indicates that he says to her that he genuinely

10   cares about her and her feelings.

11          And that was what was captured from the Twitter

12   message in less than a 24-hour period.

13          THE COURT:  This whole packet?

14          MS. SMITH:  Yes.

15          The next packet comes from Skype.  And it begins on

16   7/26, which is just a couple days after mom has had the

17   second interaction with this defendant.

18          And minor victim one initiates the conversation that

19   says she sent a message on Kik:

20          "Just want to say hi.  Things are calming down."
And the defendant says:

22          "I messaged back."
His messages are on the left-hand side, for the Court's

24   reference.

25          On the third page, about halfway down, minor victim

*U.S.A. v. Randy Montante*

1    one says:

2            "My mom told you my age.  I didn't know if you

3            would talk to me again."

4    And the defendant says:

5            "Wait.  Are you really 13 or 12?  Like I'm

6            freaking out a little."

7    She says:

8            "Thirteen."

9    He says:

10           "Really?"

11   She says:

12           "Yup."

13   And he responds:

14           "Hmm.  A good friend of mine said if you like

15           someone and it's real, age doesn't matter."

16   And on the very last page of this Skype chat, halfway down,

17   the defendant says:

18           "Well, with everything that's happened, I could

19           still totally go to prison if they dug shit up,

20           but I didn't know at that point."

21   She says:

22           "Wanta Kik then?"

23   Meaning go to the Kik application.

24           And he says:

25           "If it's safer than this, which it probably is.

*U.S.A. v. Randy Montante*

1          Delete all this, please."

2     At this point, minor victim one's mother has discovered that

3     the conversations have continued and she goes back to the

4     police station with her daughter.

5          Two interviews between law enforcement and minor

6     victim one took place within this time frame and I will

7     proffer the information from those interviews to the Court

8     when I finish with all of the electronic communications.

9          But at that point mom gives the passwords and the

10    on-line identity over to law enforcement.

11         The third packet of messages that the Court has

12    received and also for which defense counsel has received, and

13    I would also ask that those be treated in the same manner as

14    the other chats that I sent to the Court, these are Kik

15    messages between the defendant and who he believes to be

16    minor victim one.  But at this point an undercover officer

17    takes over her account and begins to speak with him as her.

18         If you look at the first page where it says,

19    "communications and messages," the first one on the left has

20    the name Randy, with the screen name doImakeyourandy.

21         The chats on the right that are indented towards the

22    right, are from minor victim one's account.  And again, this

23    is the undercover that's chatting from here, in this entire

24    package that I'm going through.

25         These messages begin on the third of August 2016,

*U.S.A. v. Randy Montante*

1    and this packet ends August 6, 2016.  So this is over the

2    course of three days.  And there are approximately close to

3    100 pages here of chats.

4          The chats begin with the undercover initiating the

5    conversation and saying:

6          "I just wanted to say hi and things are calming

7          down."

8    And the defendant responds:

9          "You have no idea how happy I am to see this."

10   And then he proceeds to ask her a test question to try to

11   make sure that who he's talking to is minor victim one.

12         Again, these don't have page numbers, so I'm going

13   to try to direct the Court through this as we go.

14         On page four, the last message from the defendant,

15   August 3, 2016, at 3:18 -- as a side note to the record, Your

16   Honor, the Kik messages are in UTC time, which is called

17   universal time, which means if you are wanting to convert it

18   to Eastern -- to our time zone, you would subtract four hours

19   or five hours, depending on whether or not we were on

20   daylight savings time.

21         At 3:18:55, the defendant says:

22         "You really need to delete anything and every time

23         we talk now."

24   On the next page, three-quarters of the way down:

25         "But yeah, even if it's a friendship, try not to

*U.S.A. v. Randy Montante*

```
 1              talk to me unless you're the only one home or

 2              you're completely alone and know it, because I

 3              could legitimately go to prison."

 4  Three pages later, 8/03 at 3:33, he says:

 5              "Wait.  So you're an eighth grader?  Wow, you seem

 6              legit like a high school senior talking to you.

 7              Mind if I make a different Kik account and you

 8              delete this one or block it from both your

 9              accounts?  I'll message you from there.  I'll add

10              you from there.  Delete everything from

11              everything."

12  The next page shows that within ten minutes the defendant had

13  set up a new account in Kik, with the name kamb, k-a-m-b.

14  The screen name is kamylanta, k-a-m-y-l-a-n-t-a.

15              Four pages later, towards the bottom, the undercover

16  says:

17              "I will only send face pics, no more videos."

18  And the defendant says:

19              "It hates (sic) me to say it, but yeah, I can't do

20              it.  I'm going to miss it so much.  You have no

21              idea.  And obviously parts of me thought it was

22              amazing.  You really are the worst tease.  And

23              now, you're just jailbait tease."

24              THE COURT:  What's the time on that?

25              MS. SMITH:  That's -- this is a number of chats that
```

*U.S.A. v. Randy Montante*

1    go from 3:56 through 3:59.

2            THE COURT:  Just one moment.

3            (Brief pause in proceedings)

4            THE COURT:  Okay.

5            MS. SMITH:  Two pages later, 8/03 at 4:02, so this

6    would be approximately midnight, maybe 11 p.m., depending on

7    whether daylight savings time is in effect.

8            The defendant says:

9            "Hey, do me a favor.  Can you like delete our

10           conversation, like every five to ten minutes?"

11   The next page at the top:

12           "And always have a story of who you're talking to.

13           But you should never be in a situation where

14           someone even has a chance to catch you."

15   Two pages later, at the top.  This is at 4:11.  The defendant

16   tells who he believes to be minor victim one:

17           "Honestly, I'm pretty horny.  Like, I'm not going

18           to lie."

19   On the next page he says:

20           "Also delete that."

21   Two pages later, towards the bottom.  We're at August third,

22   at 4:19.  He says:

23           "I kind of -- "

24   Next page:

25           "-- I want you to go to the bathroom."

*U.S.A. v. Randy Montante*

1   And in context, Your Honor, throughout these cases -- or

2   excuse me, throughout these text messages, it appears that,

3   and we know from some of the forensics that minor victim one

4   made some of the videos in the bathroom.

5          Five pages later, 8/03 at 4:33, the defendant says:

6          "How are you feeling?"

7   And then he says, --"

8          "Hmm."

9   Next page:

10         "Want to go do something about it?  You feeling

11         like a submissive little 18-year-old Catholic

12         schoolgirl?  Well, I think you should go in the

13         bathroom.  Lock the door, turn on the exhaust fan

14         if it has one.  Tell me when you've done it."

15  The next thing he says is:

16         "Oh, do you have Julio?"

17  And as a side note, through this investigation it appears

18  that the name "Julio" refers to some sort of sexual object

19  that minor victim one had used on herself in prior videos.

20         The undercover answers:

21         "I have a highlighter."

22  And the defendant says:

23         "All right.  Well, are you there yet?  Send me a

24         pic of the highlighter."

25  Next page, halfway down, he says:

*U.S.A. v. Randy Montante*

1          "All right, go doggy style and use it."

2    Five pages later, 8/03 at 4:50, the defendant instructs:

3          "You should always hide your iPod.  Make them

4          think you don't have one."

5    Next page at the top:

6          "Delete everything and hide the iPod."

7    The next pages starts another set of communications and

8    messages.  And this is just how the forensics pulled these

9    chats into a format.

10          And 8/03 at 4:53, the defendant provides a new key

11   phrase.  And the next chats discuss what this particular key

12   phrase is going to be in order for who he believes to be the

13   minor victim to know that it's her on the other side.

14          Six pages later, 8/05 at 3:09, he says:

15          "We've spent a lot of time talking together and I

16          care about you a lot, like a lot.  But seriously,

17          if this is going to continue, you pretty much hold

18          my life in your hands.  Promise me, if your

19          parents somehow find out we've been talking again,

20          tell them you told me you were 18 and I believed

21          you the whole time.  In fact, after this, I'm

22          going to talk to you like you're 18 and in

23          college."

24   Next page:

25          "Because if the cops find out, I'm going to go to

*U.S.A. v. Randy Montante*

1           jail for at least ten years."

2   At 3:12:

3           "But if they ask you, you have to tell them I

4           thought you were 18 and that you told me you were

5           the whole time, because if I can deny it, I'll be

6           fine.  I researched it."

7   Next page, 3:13:

8           "The only way to get them off completely --"

9   and he's in parentheticals here, he's referring to messages

10  on the phone.

11          "The only way to get them off completely is to

12          delete the app, because they're saved on the

13          phone.  So from now on, yeah, delete the app and

14          re-download it when it is safe."

15  Two pages later, 8/05 at 3:19:

16          "You realize how incredibly illegal and bad this

17          is?  Ha-ha.  You're too cute, though."

18  Four pages, 8/05 at 3:26:

19          "I'll talk with you as long as you want to talk to

20          me,"

21  he says, to who he believes is minor victim one.

22          Next page, 3:28:

23          "I was talking to you about my sister and my

24          cousin, and I even told my Mom, when we got

25          caught, they all think you're 18, and that I can't

*U.S.A. v. Randy Montante*

1              talk to you anymore --"

2      Next page:

3              "-- because your parents are superconservative and

4              overprotective."

5      Three pages -- next three pages, at the top, 8/05 at 3:33,

6      the defendant asks:

7              "You still deleting the whole conversation every

8              so often?  Gotta make it a habit."

9      Two pages later, towards the bottom, last line, 3:39:

10             "Realistically, if you can keep me safe, we'll

11             talk for a long time --"

12     Next page:

13             "-- and meet one day."

14     Three pages, 8/05 at 3:45, at the top:

15             "My feelings toward you haven't changed."

16     At 3:46:

17             "Just gotta think about it differently."

18     Next page, at 3:48, he says:

19             "Trust me.  I love --"

20     in all caps.

21             "I love dominating you.  And I love how submissive

22             you are."

23     Next page:

24             "Probably the kinkiest was the clips, but I still

25             remember when you put Julio in your back door.

*U.S.A. v. Randy Montante*

```
 1              God, I was so turned on."
 2    Next page, 3:52:
 3              "Before we got caught, I was going to --"
 4    Next page,
 5              "-- have you do stuff."
 6    The undercover responds:
 7              "Are you still going to have me do stuff?"
 8    And the defendant says:
 9              "Well, it'll be harder without Skype.  You're
10              going to have to take a long video again, like you
11              did that one time."
12    And the word "one" is in quotes.
13              THE COURT:  We obviously know from what you've told
14    us before what we believe Julio is.  Do we know what the
15    clips were?
16              MS. SMITH:  Yes, Your Honor.  And I will refer to
17    that when I get into the forensic report.
18              THE COURT:  Okay, thank you.
19              MS. SMITH:  At this point, I would -- it has to do
20    with sex acts involving clothespins.
21              I'm going to direct the Court to -- I'm almost ten
22    pages later, at 8/05 at 4:30.  Down at the bottom, the
23    sentence begins with.
24              "But yeah."
25    It's 8/05, 4:30:31.
```

*U.S.A. v. Randy Montante*

1           THE COURT:  All right.  Just a moment.

2           (Brief pause in proceedings)

3           THE COURT:  Okay.

4           MS. SMITH:  He says:

5           "But yeah, after tonight, after you delete this

6           app and refresh it, you're 18 and that's all I

7           know."

8    Next page:

9           "And that's why you'll tell people if we get

10          caught, you made me think you were 18.  I mean,

11          you did.  Ha-ha."

12   Two pages, 8/05 at 4:34 at the top, he asks:

13          "Have you deleted the conversation in a bit?

14          Don't forget to get rid of the app before you go

15          to bed, like un-install so the secret Kik messages

16          on the phone are gone too."

17   Three pages later, 8/05 at 4:40, the defendant says:

18          "I also want to see some other things."

19   Four-forty-one:

20          "I want to see your whole sexy body, including

21          your face."

22   Next page:

23          "I want to see that look on your face while you're

24          pleasuring yourself.  I want to see you tremble.

25          I want to see how wet you are."

*U.S.A. v. Randy Montante*

1    Four-forty-three:

2              "Well, I want to see you play with your ass.  I

3              want to see you go doggy style."

4    Next page:

5              "Ass up and towards the camera.  And I want to see

6              everything.  I want to see and hear the moment you

7              come.  I think that would be really sexy."

8    The undercover asks:

9              "You want me to send that to you?"

10   And he responds:

11             "More than anything."

12   Five pages later, 8/05 at 4:52, the defendant says:

13             "So I have an idea, you're going to have to start

14             it every time.  Don't forget to delete and

15             un-install."

16   Your Honor, those are selected chats from a series that you

17   have the entire copy of, and for brevity's sake, I have

18   highlighted certain portions, but the entire chat log between

19   the undercover and the defendant says generally the same

20   thing, over and over again.

21             When the Court is ready, I will move on.

22             THE COURT:  Okay.  One moment.

23             (Brief pause in proceedings)

24             THE COURT:  Okay.

25             MS. SMITH:  Thank you.  Minor victim one was

*U.S.A. v. Randy Montante*

1    interviewed during the course of this investigation.  She

2    indicated that she is in the seventh grade.  She attends a

3    Catholic school.  She met the defendant on Omego at the end

4    of February of 2016.

5         And she admitted that she initially told him that

6    she was 18, but then began a couple -- I don't know the exact

7    time frame, but according to her, they took a couple weeks'

8    break between their conversations and then they started --

9    started up again, and she began hinting that she was only 13

10   by saying things like, "What if I was 13?"

11        She said when she would say that, he would just shut

12   her down.  And, in fact, minor victim one said that at one

13   point the defendant said:

14        "You're so obsessed with saying you're 13."

15   There is a text message what was captured between the

16   defendant and minor victim one on June 2, 2016, where the

17   defendant refers to her being 13 years old and makes an

18   indication that:

19        "You say you're 13 and have a 4.0 grade point

20        average, and you know the types of things that

21        you've showed me.  I don't believe you."

22   I would direct the Court to Exhibits B and C in your packet.

23   These are two images that were found on a flash drive of the

24   defendant's in his desk drawer.  They are not pornographic in

25   nature.  They are pictures of minor victim one standing in

*U.S.A. v. Randy Montante*

1    front of a mirror in her bedroom.  These pictures are on a

2    wavy-type mirror.  They are from approximately shoulders

3    down.

4            Exhibit B, as you can see, doesn't show her face.

5    It shows the child in a dress, a short dress with knee socks.

6    But what I want to direct the Court's attention to is this

7    whiteboard that's in the foreground of this image, that has

8    the words, "Home," and then "SOC."  Underneath that, it says.

9            "One through six."

10           Three quarters of the way down, it says:

11           "Social studies, Spanish test, vocabulary."

12   Exhibit C is minor victim one in her school uniform.  And

13   again, in the foreground is that whiteboard.

14           Minor victim one said that through the course of her

15   communications with the defendant, it, quote, became normal

16   to send pictures.  They talked every day.  In fact, she said

17   some days it was all day, from seven a.m. to five a.m. (sic)

18   and she didn't go out.  She just stayed and talked to the

19   defendant.

20           She indicated that they frequently, if not daily,

21   live-cammed over the Skype webcam program.  Defendant would

22   ask her -- let me back up.

23           During those webcam sessions, the minor victim one

24   would perform sex acts for him.

25           The defendant would ask her at times for pictures

*U.S.A. v. Randy Montante*

1    and videos, sometimes specific and sometimes he would

2    generally talk about sexual topics or things he generally

3    liked, which she believed to be indicative of what he wanted

4    her to make for him.

5          Turning to August 10th, which was two days' ago, the

6    FBI executed a search warrant at the defendant's residence.

7    And that was based on these communications, as well as the

8    three videos that were found in minor victim one's phone,

9    which are listed in the criminal complaint.

10          I know the Court is familiar with the complaint, so

11    I'm not going to go through those videos in detail.

12          The defendant was home that day and agreed to an

13    interview.  At the beginning of the interview, the

14    defendant's attitude, if you will, is kind of aloof.  In

15    fact, he says to the agent, "This is like Chris Hanson on To

16    Catch a Predator."

17          If the Court isn't familiar with Chris Hanson and To

18    Catch a Predator, that was a very widely-known popular series

19    back in the mid to late 90's, I believe, where Chris Hanson

20    would work with law enforcement to set up undercover

21    operations where grown men would come to have sex with

22    children at various houses.

23          The defendant admitted to sending -- excuse me.  The

24    defendant admitted that she sent pictures and videos that

25    were sexually explicit in nature.  He indicated that he

*U.S.A. v. Randy Montante*

1    believed her to be 18 years old.

2          That day he explained to his parents that the reason

3    why the police -- excuse me.  Why the FBI was at the house,

4    was because of an 18-year-old girl.

5          And he indicated also that he spent time

6    volunteering at a camp for bereaved children at Henry Ford

7    Hospital.

8          The defendant agreed to take a polygraph.  At this

9    time the results are still pending of that polygraph.  I

10   believe the results are going to come back inconclusive.  And

11   so I don't have anything -- I'm not going to be relying on

12   any polygraph results for this hearing.

13         But after the polygraph, he admitted that he did

14   continue to ask for pictures and videos of minor victim one

15   after he was confronted by her mother.

16         Law enforcement that day seized two flash drives out

17   of the defendant's desk drawer, a number of cell phones, two

18   computers and three laptops.

19         THE COURT:  You say "two computers."  Do you mean

20   two desktops?

21         MS. SMITH:  Yes.

22         If you recall from the criminal complaint, the

23   defendant had told minor victim one that he saved her

24   pictures and videos on a flash drive.  There, in fact, on one

25   of the flash drives, is a number of images and videos that

                                                          30

*U.S.A. v. Randy Montante*

 1 | are sexually explicit in nature.

 2 |         Under a folder that contains the minor victim's

 3 | initials, there are 66 files.  These are images and videos,

 4 | most of which are sexually explicit.  These include the minor

 5 | victim with objects penetrated in her vagina, and videos of

 6 | her masturbating, a picture of her with black duct tape,

 7 | which corroborates with the video that was on her cell phone.

 8 |         There are images and videos of minor victim one with

 9 | clothespins or clips on her nipples.

10 |         Additionally, outside of the minor victim one

11 | folder, there's a number of other folders with two letters,

12 | which we believe to be initials.

13 |         Some of the -- there are some folders that have

14 | celebrity nude pictures that are divided by category, by a

15 | particular celebrity.  And then there's these other folders

16 | that have letters that appear to be initials.

17 |         We've been able to, just by sight, see that

18 | approximately four girls in this thumb drive are four

19 | different girls besides the minor victim that are taking

20 | selfies in a mirror in a bedroom in some various stages of

21 | undergarments.

22 |         The rest of the material is -- I will quantify it as

23 | either age-difficult or as so close up we can't at this point

24 | in time tell what we're looking at.

25 |         THE COURT:  But the four that you're describing, are

*U.S.A. v. Randy Montante*

1    those obviously underage or not?

2            MS. SMITH:  Yes.  They are girls that appear to be

3    between the ages of 11 and 13 years old.

4            MR. WISE:  And, Judge, if I'm hearing correctly

5    though, they are not nudes.

6            MS. SMITH:  Not the -- no.  They are pictures of

7    girls in underwear and pajamas.  The other pictures --

8    there's a number of pictures without faces, and this is what

9    we have from the preliminary review.

10           The second flash drive that was found in the top

11   dresser drawer -- or sorry, desk drawer, next to this other

12   flash drive, is encrypted, and we haven't yet been able to

13   get in that flash drive, so I don't know what's in there.

14           The defendant's cell phone took a remarkably long

15   time to unload over the last two days into the system.  As

16   far as I understand at this point there's very little

17   information I can proffer the Court.

18           It appears that it's -- it appears that it's clean

19   in the sense that it's consistent with the defendant's

20   instructions to keep deleting aps and deleting texts every

21   couple of lines.

22           The only other thing I would proffer to the Court

23   this afternoon is Exhibit A, which is just a map of the

24   defendant's residence.  And it just shows that his house is,

25   for lack of a better term, within a stone's throw of Divine

                                                              32

*U.S.A. v. Randy Montante*

1    Child Elementary School and High School.  And five blocks

2    over is Crestwood High School, as well as a park.  Also, on a

3    block to the other side is another park.

4           According to the pretrial services report, the

5    defendant has traveled internationally on four occasions to

6    the Philippines, where he has family, most recently went in

7    November of 2015.

8           That's all I have to proffer, Your Honor.  The

9    pretrial services report does recommend detention.

10          THE COURT:  Thank you.  Mr. Wise?

11          MR. WISE:  Yes, Your Honor.  In terms of a proffer,

12   I would proffer the entire pretrial services report to the

13   Court.

14          I would also proffer to the Court that Mr.

15   Montante's parents are in the courtroom.  They are prepared

16   to act as third party custodians for him.

17          THE COURT:  And I want to acknowledge that.  I've

18   looked out and I've seen a number of people who I assume are

19   here for this hearing.  So I want to acknowledge the presence

20   of his family for a number of reasons, one of which is that I

21   -- it's always an admirable thing when people come to support

22   a member of their family who's been accused of a crime.

23          It's not an easy thing to do.  And many people don't

24   do it.  I've seen many people standing where your son or your

25   brother is and there's -- nobody in the world has shown up in

1    court.  Nobody has made the time to come here.  And you have,

2    so I appreciate that.

3          The other reason I mention it is because I know that

4    the content of this particular hearing is or must be

5    extremely difficult to listen to.

6          I can see that there are tears flowing in the back

7    of the courtroom.  And I just want to acknowledge that I

8    understand that this is really a very traumatic event for

9    you, as a family, and regardless of how the outcome is today,

10   I know that this is very painful.

11         So I make no promises about how I'm going to rule.

12   I have the facts to listen to and consider, and I have the

13   law that I have to follow, but I want to acknowledge that

14   you're here and that I know it's not easy to be here.

15         MR. WISE:  I would also proffer to the Court that

16   his mother, Ruth, is a cardiac nurse, works for Henry Ford

17   Health Systems.

18         His father, Andres Montante, who's present in court,

19   is retired from the City of Detroit where he worked as an

20   accountant.  And again, they're both willing to act as third

21   party custodians in this matter.

22         THE COURT:  He was a City of Detroit accountant, you

23   said?

24         MR. WISE:  Correct.

25         And then I would adopt, I guess, the entirety of the

34

*U.S.A. v. Randy Montante*

1    government's submission with the text messages.  In going

2    through them, there's a couple of them that I noticed just

3    real quickly that I think are particularly relevant that Ms.

4    Smith did not mention.

5            The Twitter messages, 7/22 at --

6            THE COURT:  Hold on.  Let me get to the Twitter

7    messages first.  That was the first packet we went through,

8    right?

9            MR. WISE:  Correct.

10           THE COURT:  Okay, 7/22.  What time?

11           MR. WISE:  I'm having trouble.  I didn't want to

12   mark these up.  Oh, at 7/22 at 11:34, towards the bottom of

13   the page, Mr. Montante apparently is talking about minor

14   victim one having been sent to college.

15           She responds:

16           "I'm not allowed to live in the dorm."

17   Seven-twenty-three, 12 --

18           THE COURT:  Well, it says:

19           "They'll send you to community college."

20           MR. WISE:  Right, right.

21           THE COURT:  Okay.

22           MR. WISE:  And then she's talking about not being

23   allowed to live in the dorm, which --

24           THE COURT:  Okay.

25           MR. WISE:  -- I can argue about that later.

*U.S.A. v. Randy Montante*

1    Seven-twenty-three at 12:44, and this is in response, I

2    think, to the communication from the mother.

3               "It was weird for her to call me a pedophile and

4               say you're a minor."

5               THE COURT:  I saw that, too.  Let me just find it.

6    The time on that was 11:44?

7               MR. WISE:  Twelve-forty-four.

8               THE COURT:  I'm not finding it.  It's on 7/22 or am

9    I on the wrong date?

10              MR. WISE:  I'm sorry, 7/23.

11              THE COURT:  Got it.

12              MR. WISE:  I think Ms. Smith went through the Skype

13   chats, but I think it's pretty -- to me, it seems like the

14   whole context of it, the thing is that Mr. Montante is only

15   now beginning to realize that the minor victim is, in fact, a

16   minor.

17              Then with respect to the Kik messages, which are in

18   the forensic report, Mr. Montante, at -- that's August 3rd,

19   3:10:36 asks:

20              "Why didn't you tell me how old you actually were

21              a while ago, though?"

22   And the undercover at this point responds:

23              "Thought you wouldn't like me.  But I'm sure you

24              knew I wasn't 18 when you saw me.  But I thought

25              you didn't care."

*U.S.A. v. Randy Montante*

1    Mr. Montante responds:

2            "Well, that was a little irresponsible.  This age

3            gap is kind of massive.  I honestly thought you

4            were.  You look mature."

5    And then it goes on.

6            THE COURT:  Give me the time again on that series,

7    please?

8            MR. WISE:  So that's the first page of the Kik chats

9    in the forensic reports, starts at 3:10:36 on August 3rd.

10           THE COURT:  Got it.

11           (Brief pause in proceedings)

12           MR. WISE:  Then going ahead to August 5th at 3:56,

13   this is the -- Ms. Smith had mentioned this passage with

14   respect to the communication about the videos, response to, I

15   think, the undercover, trying to get Mr. Montante to admit to

16   which videos he was thinking of, he responds at 3:56:29 on

17   August 5th, the only video (inaudible).

18           Then go ahead to 4:44, where he's discussing having

19   a video sent to him from the bathroom.  At 4:44:59, he says:

20           "If you don't want to, you don't have to.  It's

21           fine."

22           THE COURT:  And I noticed that previously.

23           MR. WISE:  And with -- and I haven't had a chance to

24   go through all these chats thoroughly, but I have and there

25   are more passages like that out of the bulk of this, and

*U.S.A. v. Randy Montante*

1    essentially that's what I have to proffer at this point.

2            THE COURT:  Okay.  Ms. Smith, any factual rebuttal

3    before you move on to argument?

4            MS. SMITH:  Only to say, Your Honor, that if the

5    defendant is suggesting that there is only one video of her,

6    that's simply not true.  It's belied by what I've seen so far

7    on the preliminary review of that flash drive.

8            THE COURT:  Okay.

9            MS. SMITH:  I am prepared to argue.

10           THE COURT:  All right.  Please do.

11           MS. SMITH:  Thank you.

12           Your Honor, this is a presumption case, and the

13   government believes that we've shown probable cause that the

14   defendant committed the crimes charged in the criminal

15   complaint.

16           I'm going to get to the timing in a minute, but

17   because this case really can be looked at, I think, in two

18   different sections, everything that happened before July 22nd

19   and everything that happened after July 22nd.

20           But suffice it to say that a production of child

21   pornography count does not require knowledge of age in order

22   to be convicted at trial.

23           On-line enticement of a minor, receipt of child

24   pornography both require that the defendant know or thought

25   that who they were talking to were under age, but production

*U.S.A. v. Randy Montante*

1   does not have such a requirement.

2           The probable cause that I've shown today is based on

3   a number of factors from the criminal complaint and affidavit

4   that was signed.

5           MR. WISE:  Your Honor, we're not contesting the fact

6   that they have established probable cause to invoke the

7   presumption in this case.

8           THE COURT:  Okay.

9           MS. SMITH:  Okay.  Thank you.  I'll move on.

10          The government also believes that it has met the

11  factors under 18 United States Code Section 3142(g) to

12  warrant detention.

13          The nature and circumstances of this offense

14  obviously are serious.  When we look at what the defendant

15  knew before mom got involved, we only have a very small

16  portion of that.  And that is because the defendant directed

17  minor victim to delete everything she had.

18          She has indicated in her interview that she hinted

19  that she told him that she was underage.  The Court has

20  Exhibits B and C, which are two images that minor victim sent

21  to him.

22          THE COURT:  Do we know when those were sent?

23          MS. SMITH:  Not at this point, no, not yet.  But I

24  would suggest to the Court that there is homework written on

25  that white board.  So I would think that you can infer that

*U.S.A. v. Randy Montante*

1     it was probably during the school year, particularly when

2     she's in her school uniform in one of those pictures, which

3     would be before June of -- or middle of June of this year.

4            THE COURT:  Okay.  I'm not sure what to infer from

5     it, though, because she could be 18 years old and in the

6     second semester of her senior year.  So the fact that she is

7     in school doesn't necessarily tell me that she's a minor.

8            MS. SMITH:  Not necessarily, but I would suggest to

9     the Court that seniors in high school don't take vocabulary

10    as one of their subjects.

11           THE COURT:  Unless you had Mr. Krause.

12           MS. SMITH:  Whether -- we also have that

13    corroborates with what the minor victim is saying.  We have a

14    text message from June 3rd, where the defendant talks about

15    that he doesn't believe that she is 13, as well as the minor

16    victim saying that he in fact said that he believed she was

17    obsessed with talking about how she was 13.

18           Whether or not he believed her to be 13, whether or

19    not he was willfully blind, whether or not he had no idea,

20    this case really turns the day that mom becomes involved and

21    informs this defendant that he is, in fact, talking to a

22    minor and she tells him to go away.

23           And his response to that is to do the exact

24    opposite.  And when minor victim one contacts him, he not

25    only continues the conversation, he then starts to instruct

*U.S.A. v. Randy Montante*

1   her on specific alternative ways to contact her.  Repeatedly

2   and relentlessly, he instructs her to delete her tracks.

3   Every couple of lines "delete it, every night delete that app

4   and download it again in the morning."

5         At no time does the defendant say, "We need to

6   stop."  He may have a lot of conversations in these chats

7   where he says, "I thought you were 18," but at no time does

8   he say, "Now that I know the truth, this needs to end."  He

9   recognizes her age, because, in fact, he's researched what

10  his possible defenses will be when the police show up.  Not

11  only has he done that, he's instructed her on what to say.

12        This is a case about a man who pursued a 13-year-old

13  girl.  Her mother, not once, but twice confronted this

14  defendant and told him to stop.  And it did nothing to deter

15  his conduct.

16        He made comments to the minor victim about her

17  parents, that they were trying to bait him, that they were

18  sneaky, in an effort to get her to trust him over them.

19        And even after, he's having a conversation with the

20  undercover, and I read many of those chats, he was completely

21  undeterred, asking her to produce specific videos of specific

22  sex acts for his pleasure.

23        Your Honor, the weight of the detention -- of the

24  evidence for detention in this case, is equally strong.  This

25  defendant clearly has a -- I don't want to use the term

*U.S.A. v. Randy Montante*

1    "relationship."  I don't want to use the term "obsession."

2    But he certainly has a drive to do whatever he needs to do to

3    continue to talk to this child.  And this isn't a 17-year-old

4    who is on -- is six months away from graduating high school.

5    She is 13.

6          In terms of his family ties, I recognize that his

7    family is here, and I'm sure that they love him.  I would

8    note that he lied to them about what the nature of the search

9    warrant was.  He also indicated in the chats that he had this

10   entire plan set up with some sort of escape method.  And that

11   escape method, I would point out, includes minor victim one's

12   participation in a lie.

13         And when we think about whether or not he poses a

14   danger to any person, including minor victim one, I would

15   suggest to the Court that the number of times that this

16   defendant has attempted to get minor victim one to go along

17   with the story, to ensure that when the police come to her,

18   that she lies and says that she said she was 18 this whole

19   time, it also supports detention.

20         This defendant doesn't have any past criminal

21   history.  That's not necessarily surprising in a case such as

22   this.  This defendant has admitted to having some interaction

23   with marijuana.  In terms of flight risk, this defendant has

24   international ties.  He's got family in the Philippines.  He

25   had been there approximately maybe six months ago, a little

*U.S.A. v. Randy Montante*

1    bit more than six months ago.

2            The preliminary forensic review, Your Honor, showed

3    us that there's at least four more investigations that we

4    have to explore regarding this defendant and his behavior.

5            And I would -- I would argue to this Court that

6    based on all of this, all of these chats, all of the

7    information that's been proffered today, that no condition or

8    combination of conditions is going to reasonably assure the

9    safety of other persons or the community.  And pretrial

10   services recommends detention and so does the United States.

11           THE COURT:  Thank you.  Mr. Wise?

12           MR. WISE:  Thank you, Your Honor.  With respect to

13   risk of flight, I don't think that -- I mean, pretrial

14   services certainly has not found Mr. Montante to be a risk of

15   flight.  It's true that he does have ties to the Philippines.

16   His parents are immigrants.

17           However, I think the Court can minimize any risk of

18   flight in this case sufficient to assure (inaudible) grant

19   bond by imposing conditions on Mr. Montante, particularly

20   that he surrender any of his travel documents.

21           And because of the nature of this charge, the Court

22   is required to impose some kind of location monitoring on Mr.

23   Montante if he is released on bond.

24           We think those two conditions, particularly combined

25   with third-party custodianship of his parents, should

*U.S.A. v. Randy Montante*

1    alleviate any risk of flight whatsoever.

2              With respect to dangerousness, the argument that I

3    heard Ms. Smith make is that Mr. Montante poses a danger to

4    one particular minor victim in this case.

5              THE COURT:  Isn't that enough?

6              MR. WISE:  No, certainly it is.

7              THE COURT:  I mean, under the statute, as a matter

8    of law, that's enough, isn't it?

9              MR. WISE:  No.  If the Court finds that to be true

10   and finds that there are no conditions that can reasonably

11   assure the safety of that victim.

12             And, of course, it's our argument that the Court can

13   impose those conditions.  In these types of cases, generally

14   the Court is looking at an argument from the government that

15   this person poses a danger to the community as a whole

16   generally, children everywhere, potential minor victims

17   everywhere.  This is not that kind of case.

18             In this case, Mr. Montante established this

19   relationship based on the evidence that we've heard so far.

20   What it looks like to me, he established this relationship

21   with the minor victim not knowing that she was a minor,

22   believing that that was 18.

23             Eventually, certainly there was information

24   presented to Mr. Montante that should have made him seriously

25   question that belief, should have made him believe otherwise

44

*U.S.A. v. Randy Montante*

 1   if we believe the evidence that has been proffered.  .

 2          And he did persist in communications with this

 3   individual.

 4          THE COURT:  What about -- what about the -- I

 5   realize that they were in underwear rather than nude, but

 6   what about four different girls between the ages of 11 and

 7   13, photos of that?  Doesn't that demonstrate a sexual

 8   interest in underage girls?

 9          MR. WISE:  I --

10          THE COURT:  Generally?

11          MR. WISE:  Well, I don't know, because I haven't

12   seen the images.  They are not charged as child pornographic.

13   I don't believe that there is any allegation that those

14   images are illegal.

15          What Mr. Montante's interests are or aren't, he

16   doesn't appear to have a massive collection of child

17   pornography.  He takes objection to being referred to as a

18   pedophile or -- you know, when he's confronted about her

19   being under 13, that throws him off.

20          Looking at the pictures in Government Exhibits B and

21   C, she could appear to be 18, appears to be certainly

22   post-pubescent.

23          THE COURT:  We can't tell actually with those,

24   either way.  I mean, it cuts both ways.  As I said to Ms.

25   Smith, you can't tell that she's under 18, but you can't tell

*U.S.A. v. Randy Montante*

1    -- she doesn't necessarily look like she's over-age, either.

2              MS. SMITH:  She's not prepubescent.  I will offer

3    that to the Court.  She is not prepubescent, no.

4              THE COURT:  I mean, for -- that photo just doesn't

5    show me enough.

6              MS. SMITH:  Uh-huh.

7              MR. WISE:  But the point I'm arguing here to the

8    Court is I think that the concern here is can we protect a

9    limited set of potential victims, whether it be one or five?

10             This is not a situation where Mr. Montante is in

11   chat rooms, talking with other people trying to get child

12   pornography.  He doesn't appear to be conversing with the

13   minor victim trying to get pictures of her friends.  At least

14   the preliminary forensics don't reveal the kind of collection

15   that we see the FBI regularly put into search warrants and

16   complaints that people who have an interest in child

17   pornography tend to amass.

18             So what I'm suggesting to the Court is that the

19   evidence in this case suggests that Mr. Montante had a

20   particular relationship with this particular person, was not

21   aware of her age when it started, became aware of her age,

22   continued the conversations that had been going on for months

23   before.

24             She is certainly reaching out to him, and of course,

25   he didn't have to reach back, but I think that's a factor

*U.S.A. v. Randy Montante*

 1   that the Court can consider.

 2           And given the fact that this victim lives in New

 3   Jersey, Mr. Montante lives in Michigan, that the Court is

 4   going to impose travel restrictions, location monitoring as a

 5   condition of bond, and given the fact that pretrial services

 6   has available to it computer monitoring.

 7           The family certainly is willing to ensure that Mr.

 8   Montante doesn't have unmonitored access to cell phones,

 9   computers or the internet.  I don't know that it's

10   particularly realistic, given the fact that Mr. Montante

11   hopes to be enrolling in college this fall, to keep him off

12   computers entirely.  But if that's a necessary condition,

13   it's certainly at the Court's availability.

14           And we think if the Court were to impose bonds with

15   all those conditions, the Court could reasonably be assured

16   that Mr. Montante is not going to engage in communications

17   with this particular minor or any other minors.  Therefore,

18   the Court should set bond with those conditions.

19           THE COURT:  Thank you.

20           Ms. Smith, in rebuttal, I would like you to respond

21   to the argument that there's only an interest shown in one

22   person, who he didn't know at the time that the

23   communications began, was underage.

24           MS. SMITH:  Your Honor -- yeah, I can address that.

25   Whether or not he has a collection of child pornography, how

*U.S.A. v. Randy Montante*

1    many children he talked to in chat rooms, we just don't know,

2    because he has been very successful in deleting his tracks.

3          We were able to identify minor victim one through

4    minor victim one's mother.  I don't know standing here today

5    what will come of the other four girls that we have seen on

6    that flash drive, or what will come when we do a forensic

7    review.

8          But if you read through these chats, this defendant

9    has spent an enormous amount of time and energy trying to

10   hide from what he's doing, trying to instruct this child to

11   hide what she's doing.  And I would suggest that that goes to

12   the history and characteristics of this defendant.  I don't

13   know what we are going to find, but I believe that what we

14   found so far is alarming.

15         And I think that the Court should be concerned with

16   the fact that this defendant has lied to every single person

17   about this case.  Maybe even himself at some point.  He has

18   told his parents that this was about an 18-year-old girl.  He

19   was confronted by this child's mother, who I cannot imagine

20   would be a more unpleasant experience when you have been

21   told, "I have screen-shotted what you've done and I have sent

22   this to the police."  And it does nothing to deter him.

23         THE COURT:  Well, he did correct her grammar.

24         MS. SMITH:  Yes, he did.  He did.  And then he told

25   minor victim how to get better at hiding her activities.

*U.S.A. v. Randy Montante*

1    I would suggest to the Court that these four other

2  girls were saved to a separate flash drive for a reason.

3  These aren't images that are found in deleted space somewhere

4  on the desktop.  These are images he chose to move over and

5  save outside of his computer.

6    This is a defendant who knows how to be sneaky.  He

7  knows how to get what he wants.  And if he is willing to go

8  to these lengths when faced with a potential of the prison

9  time that he has already recognized he's facing, I would

10  suggest that he cannot be trusted on bond to behave himself.

11    I would also suggest, as I stated before, that minor

12  victim one's participation in this escape plan is essential

13  for him.  That places her in danger, not just for that

14  reason, but also for her emotional well being, for her

15  ability to talk freely about what's happened to her.

16    I believe he's a danger not just to her, but to all

17  children in the community.  And for all those reasons, I ask

18  that you detain this defendant.

19    THE COURT:  Thank you.

20    MR. WISE:  Your Honor, I would just like to respond.

21  I'm hearing the government essentially argue that Mr.

22  Montante should be detained in part because we don't have

23  evidence.  And I think that's a totally inappropriate

24  consideration for the Court.  The Court should base its

25  determination on the facts before it, with the evidence that

*U.S.A. v. Randy Montante*

1    the government has, not what Mr. Montante may have

2    hypothetically done to somebody else, because that's

3    certainly just speculation before the Court.  Totally

4    inappropriate.

5              THE COURT:  I appreciate that, Mr. Wise.  And you

6    can rest assured the Court will not base it's opinion on the

7    evidence we don't have.  It's about to base its opinion on

8    the evidence that we do.  Okay.

9              Mr. Montante, as I explained to you when you were in

10   front of me a few days ago or -- yeah, it was a few days ago,

11   earlier this week.  This is the time that we have what's

12   called a detention hearing to determine whether you should be

13   released on bond as you know, or whether you should be

14   detained and kept in federal custody.

15             Now, In most cases, the presumption is that you

16   would be released subject to conditions that the Court would

17   set.  And what the Court is trying to do in setting

18   conditions for bond is reasonably assure the safety of the

19   community, and reasonably assure that you will appear for

20   court appearances and as necessary.

21             DEFNDANT MONTANTE:  I understand, Your Honor.

22             THE COURT:  Okay.  Now, that presumption in certain

23   kinds of cases, and this is one of them, because of the

24   nature of the crimes alleged, shifts, so that it is presumed

25   in a presumption case that no condition or combination of

*U.S.A. v. Randy Montante*

1    conditions will reasonably assure the safety of the

2    community, and no condition or combination of conditions will

3    reasonably assure your appearance.  So that's the starting

4    point here.

5         Your attorney has indicated it's not being

6    challenged that there is probable cause here.  And in any

7    case, the Court, both based on that stipulation, but also

8    based upon the evidence that I've heard, does find probable

9    cause to believe that the crimes alleged in the complaint

10   have been committed.

11        And if I could find a copy of the complaint, I would

12   say more on that.  Here it is.  Namely, probable cause to

13   believe that you committed the crime of production of child

14   pornography, probable cause to believe that you committed the

15   crime of receipt of child pornography, and probable cause to

16   believe that you committed the crime of on-line enticement of

17   a minor.

18        I understand, as counsel for the government has

19   explained, that there is some of those there needs to be

20   knowledge, but here, given the time line, the Court finds

21   that while there may not have been knowledge at the

22   beginning, there was certainly knowledge at the end.

23        Because at some point, very clearly, you were

24   informed of the actual age of this child.  And make no

25   mistake about it, she's a child.  I don't care how -- what

*U.S.A. v. Randy Montante*

1    the photos look like or anything else.  She is a child and

2    the evidence would show that you knew she was a child and

3    continued down this path and continued to ask her, when in

4    fact, at that point, it was an undercover agent, to engage in

5    sexually explicit conduct, with very specific requests to do

6    very specific acts to gratify yourself.

7         So I find that there is probable cause.  So because

8    of that, the presumption goes in favor of detention.  Now,

9    that's a rebuttable presumption.  Your attorney, through his

10   presentation, may convince the Court that that presumption

11   has been rebutted, in which case essentially the ball gets

12   punted back to the government, and the government may still

13   establish that you should be detained.

14        In making all these determinations, I am instructed

15   by a statute that was passed by Congress some time ago called

16   the Bail Reform Act.  The Bail Reform Act, specifically under

17   Title 18 of the United States Code, Section 3142(g), asks me

18   to consider four factors in making my determinations

19   regarding this case.

20        Ms. Smith has addressed some of those factors, your

21   attorney has addressed some of those factors.  So let me talk

22   about them.

23        The first of those factors is, number one, the

24   nature and circumstances of the offense charged.  And that

25   includes whether it involves a minor victim.  That's one of

*U.S.A. v. Randy Montante*

1    the specific things we are asked to look at in considering

2    the nature and circumstances of the offense charged.  And

3    it's not just the actual title on the charge.  It's broader

4    than that, because I'm looking at the nature and

5    circumstances surrounding the charge.

6         Here, the nature and circumstances of the charge is

7    very serious.  The charges themselves are very serious

8    because they involve a minor victim and sexually explicit

9    conduct.

10        There is no such thing as a victimless crime of this

11   nature.  Sometimes people think that if they are dealing with

12   someone anonymously or someone they didn't actually have

13   direct contact with, that that is somehow victimless.  But

14   it's not, because these young children appear on these

15   videos, and God knows what happens to the videos in this

16   cyber age, but they never really can be sure that they are

17   gone.

18        This case, it's worse than that, because it's a

19   knowing person with whom the evidence would indicate you had

20   very direct and repeated conduct and contact.  So the nature

21   is very serious.  And that factor goes against you.

22        Secondly, when the Court considers the weight of the

23   evidence against the person, it's not the weight of the

24   evidence that you did or didn't commit the crimes that are

25   alleged against you.  It's rather, the weight of the evidence

*U.S.A. v. Randy Montante*

1   as to the risk of you not appearing and the risk of danger to

2   the community.  That's the weight that I'm looking at.

3           And in this case, that factor also goes against you,

4   because the weight of the evidence is very strong as to

5   danger to the community, because -- and it might have been

6   different if you had learned her real age and stopped.  But

7   that's not what this evidence indicates.  This evidence

8   indicates an obsessive, ongoing series of communications

9   after knowing her age, after being warned by her mother that

10   indicated not only an unwillingness to stop, but of also

11   grave consideration to the Court, a desire to cover your

12   tracks, a desire to hide this behavior, a desire to continue

13   the behavior as furtively as possible.

14           And quite frankly, treating the person who was

15   trying to protect her, as one would expect, her mother, as

16   though she were somehow a fool.

17           Also, there is a strong evidence that cuts against

18   you of risk of non-appearance.  I know that there are things

19   that we can do to try to make it so that you won't move out

20   of this district or move out of this country, but you do have

21   strong ties to a foreign country, you do have significant

22   foreign travel experience.

23           And while I know the passport can be taken away, I

24   also know I don't know your status with respect to being able

25   to get dual citizenship.  And on top of that, I know from

*U.S.A. v. Randy Montante*

1    experience in this courtroom that people do tend to go across

2    international borders without passports.  It can be done and

3    it is done.

4           But also to the point, there is some indication in

5    the communications that the Court has reviewed that you and

6    the minor victim have exchanged addresses, that you know

7    where she is, which both goes to danger and goes to incentive

8    and risk of you fleeing to her location.

9           And a tether is only as good as you wearing it.  The

10   day it's cut, we don't know where you are.  And you also have

11   incentive to flee in this case because of the significant

12   penalties that you're facing, penalties which, by the way,

13   are reflected in the communications themselves as you having

14   been aware of them.

15          The third factor we look at is the history and

16   characteristics of the person.  And that factor has some

17   positives in your behalf.  You've stayed out of trouble with

18   the law.  You have -- are apparently planning to pursue

19   higher education.  You've had a -- looks like a pretty steady

20   job.  Those are factors that cut in your favor as to your

21   stability.

22          Nevertheless -- and by the way, I acknowledged this,

23   I acknowledged it before.  You apparently have strong family

24   ties.  That's cuts in your favor, a family that cares about

25   you, a family that is apparently willing to step up to the

*U.S.A. v. Randy Montante*

1    plate for you.

2            So all of that is good.  Your drug history appears

3    to be not much to get the Court's attention.  Let's put it

4    that way.  Although I recognize that you have some other

5    substance issues that could be dealt with better.

6            So that goes in your favor, but then I look -- in

7    looking at history and characteristics, characteristics also

8    demonstrate why this evidence, a very obsessive type

9    personality with respect to communications with this child

10   and a very -- I can only characterize it as a damn the

11   torpedoes kind of attitude, that regardless of the fact that

12   you now knew that you were in waters that were dangerous,

13   continued to plow ahead.

14           And in many senses, this evidence would indicate a

15   daring the Court or rather the law enforcement to catch you,

16   knowing it was inevitable and trying to come up with the

17   excuses and playing your way around it.  That type of

18   deception is a characteristic that the Court considers that

19   goes against you.

20           So on that third factor, I can only say there are

21   mixed attributes that go one way and some that go the other.

22           Fourth is the nature and seriousness of the danger

23   to any person or the community that would be posed by the

24   person's release.  We've had some argument today here about

25   whether danger to this particular minor victim is the thing I

*U.S.A. v. Randy Montante*

1    should be focusing on, or danger to other children.

2          I think there's both.  I think there's a very

3    serious danger to the minor victim in question.  And I think

4    that, because after knowing her age, after being confronted

5    by her mother, after being told by her mother that she was

6    going to go to the police, nevertheless, you lumbered on,

7    according to this evidence, not only communicating, but

8    specifically asking her to partake in sexual acts, asking her

9    to cover tracks, asking her to delete communications, asking

10   her to delete apps on a daily basis.  And by these

11   communications, every few minutes, quite frankly.

12         It's extremely conniving, and it's extremely

13   deceptive and it's extremely dangerous, because it's an

14   indicator to me that direction from this Court would not be

15   heeded.  It's an indication to me that this level of interest

16   in this child is so obsessive that it cannot be prevented

17   going forward.

18         I'm also very, very troubled, although I know it's

19   perhaps minor in the scope of everything else that I've heard

20   today, and I quipped about it earlier, but I think the

21   brazenness with which you responded to the mother of the

22   child who is trying to protect a young girl, essentially

23   telling the mother to go to hell, makes me believe that you

24   would say the same to this Court were I to impose conditions

25   upon you.

*U.S.A. v. Randy Montante*

1        So the Court finds that the presumption has not been

2   overcome in this case.  Let me see if there is anything

3   further I wanted to say on the facts or as the evidence.

4        The Court is also troubled, although they're not

5   pornographic in nature, by the images of four other young

6   girls in the 11 to 13 year old category in their

7   undergarments, selfies, pajamas.  Even if it's not

8   pornographic, it is an interest that is not appropriate and

9   is indicative of danger and interest in children of that age.

10       The Court is also very, very concerned about the

11  place that's been proposed for you to stay, which is at a

12  home that is very close to Divine Child grade school, two

13  parks, a few blocks away from a high school.

14       I also note the four trips to the Philippines, most

15  recently within the last year.

16       I also note, although it was not pointed out to me

17  by either of the counsel -- if I can find it.  I note that

18  during your communications with the undercover agent,

19  specifically on August 5, 2016 at 4:29 and 12 seconds, a

20  communication that you sent to the minor victim said, "Don't

21  grow up too fast."

22       It's pretty clear you knew you were dealing with a

23  young child and were getting a rise out of that as well, even

24  after you knew it.

25       I think this child is at serious risk if I were to

*U.S.A. v. Randy Montante*

1    let you out, but I also think more generally that other

2    children would be at risk.

3              So I find that the presumption has not been

4    overcome.  Even if it had been overcome, I make the

5    alternative finding, that no condition or combination of --

6    and I make this by a preponderance of the evidence -- that no

7    condition or combination of conditions can reasonably assure

8    your appearance.

9              And further, I find by clear and convincing evidence

10   that no condition or combination of conditions can reasonably

11   assure the safety of the community.

12             Accordingly, I'm ordering that you be detained, and

13   that you be committed to the custody of the United States

14   Marshal service.

15             DEPUTY COURT CLERK:  The preliminary exam with be

16   August 24th at 1:00.

17             MS. SMITH:  Your Honor, I have two matters before we

18   close the record, if I may?

19             THE COURT:  Yes.

20             MS. SMITH:  The first is that I'm requesting a no

21   contact order be part of this order of detention, no contact

22   with minor victim one, either directly or indirectly.  And

23   that means him personally or third parties trying to contact

24   her in any way.

25             THE COURT:  Mr. Wise, I assume you don't have any

*U.S.A. v. Randy Montante*

1  objection to that?

2          MR. WISE:  I assume that should my office find it

3  appropriate to try and interview minor victim one, that that

4  would not violate the no contact --

5          THE COURT:  No.  We're talking about direct contact.

6          MR. WISE:  No, I -- well, indirect contact is an

7  agent of Mr. --

8          THE COURT:  Obviously, you need to prepare for

9  trial.  I'm not prohibiting that.

10          MR. WISE:  Right.  So with that understanding, we

11  have no objection to that order.

12          MS. SMITH:  Thank you.  Secondly, I would just ask

13  that the electronic portion of this hearing not be put up on

14  the public docket, but be made available in case somebody

15  wants it, but not be placed on the ECF, and I can talk

16  sidebar if the Court would indulge me.

17          THE COURT:  I would like you to, please.

18          (Sidebar conference held off the record)

19          THE COURT:  Anything further on this matter?

20          MS. SMITH:  No, Your Honor.  Thank you.

21          MR. WISE:  No, Your Honor.  Thank you.

22          THE COURT:  Thank you.

23          (Proceedings concluded at 3:21 p.m.)

24                    *      *      *

25

*U.S.A. v. Randy Montante*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17              **C E R T I F I C A T I O N**

18        I, Marie J. Metcalf, Official Court Reporter for the

19   United States District Court, Eastern District of Michigan,

20   Southern Division, do hereby certify that the foregoing is a

21   correct transcript of the digital sound recording of the

22   proceedings in the above-entitled matter and has been

23   prepared by me or under my direction.

24   s\Marie J. Metcalf                          09-20-16

25   Marie J. Metcalf, CVR, CM                   (Date)