UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,               CRIMINAL NO. 16-cr-20576

v.                        HON. STEPHEN J. MURPHY

RANDY NIBUNGCO MONTANTE,

      Defendant.

---

**Government's Response to Defendant's Motion to Withdraw Plea
(Doc. 38)**

---

For the reasons stated in the government's brief, this Court should deny

Montante's motion to withdraw from his plea.

 

DANIEL L. LEMISCH,
Acting United States Attorney

s/ Margaret M. Smith
MARGARET M. SMITH
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI  48226
Phone:  (313) 226-9135
Dated: October 27, 2017      E-Mail: margaret.smith@usdoj.gov
Bar No. P71413

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,                 CRIMINAL NO. 16-cr-20576

v.                           HON. STEPHEN J. MURPHY

RANDY NIBUNGCO MONTANTE,

       Defendant.

---

**Government's Brief in Support of its Response to
Defendant's Motion to Withdraw Plea
(Doc. 38)**

---

Defendant Randy Montante pleaded guilty to producing child pornography, in violation of 18 U.S.C. § 2251(a), pursuant to a Rule 11(b)(1)(B) agreement. (Doc. 25).  Now, almost nine months later, he seeks to withdraw from his plea, claiming that either the government or prior counsel acted derelict in their discovery duties, causing  Defendant's plea to become involuntary.  Defendant is wrong on both the facts and the law.  No basis exists to allow Defendant to withdraw from his guilty plea.  His motion should be denied.

## I.      Background and Procedural History

This Court is well aware of the facts of this case, having presided over Montante's appeal of his detention order, as well as his plea hearing.  For purposes of background, the United States incorporates its response to Montante's detention appeal (filed under seal).

The FBI arrested Montante on August 10, 2016, at his home in Dearborn, Michigan.   The magistrate court appointed the Federal Defender's Office to represent Montante.   After the magistrate ordered Montante detained, the family retained private counsel Sanford Schulman.  (Doc. 9).  Initial discussions with Mr. Schulman—as early as August 17, 2016—indicated that Montante was interested in negotiating a plea.  Undersigned counsel has had numerous cases with Mr. Schulman over the last few years, and had an additional case with him during this timeframe. Undersigned counsel mailed the first batch of discovery on August 30, 2016. This consisted of over 500 pages of documents, chat logs, and other evidence from the case.   At that time, undersigned counsel noted that when the forensics were completed on Montante's devices, she would invite him over to view them.

Undersigned counsel and Mr. Shulman continued to engage in plea negotiations.  Mr. Schulman sent a psychological report from Dr. Gerald Shiener on January 1, 2017, in an effort to persuade the government to revise its offer of plea. On February 1, 2017, Montante pleaded guilty to one count of producing child

pornography.  This Court accepted his guilty plea.  (Doc. 39: Plea Hrg. Trans., also submitted here as Ex. A).

## II.    Law and Argument

### A.    Federal Rule of Criminal Procedure 11(d)

Under Fed. R. Crim. P. 11(d), a defendant may withdraw a plea of guilty after the plea is accepted but before sentence is imposed if "the defendant can show a fair and just reason for requesting the withdrawal."  "A defendant has no right to withdraw his guilty plea, and he has the burden of showing 'a fair and just reason for requesting the withdrawal.' . . . ."  *United States v. Martin*, 668 F.3d 787, 794 (6th Cir. 2012) (citing Rule 11(d)(2)(b)).  Courts have noted that "the aim of the rule is to allow a hastily entered plea made with unsure heart and confused mind to be undone, ***not*** to allow a defendant 'to make a tactical decision to enter a plea, wait several weeks, and then obtain a withdrawal if he believes that he made a bad choice in pleading guilty.'"  *United States v. Alexander*, 948 F.2d 1002, 1004 (6th Cir. 1991) (emphasis added) (citing *United States v. Carr*, 740 F.2d 339, 345 (5th Cir.1984), *cert. denied*, 471 U.S. 1004, (1985)).

The defendant has the burden of demonstrating a proper ground for withdrawal.  *United States v. Swanberg*, 370 F.3d 622, 626 (6th Cir. 2004).

In deciding whether a defendant has demonstrated a fair and just reason to permit withdrawal under Rule 11(d), the district court, in its broad discretion, may

3

consider the following factors: (1) the length of time between the plea and the motion to withdraw the plea; (2) the reason for not moving to withdraw the plea earlier; (3) whether the defendant has asserted and maintained his innocence; (4) the circumstances underlying the entry of the plea; (5) the defendant's nature and background; (6) the defendant's prior experience with the criminal justice system; and (7) the potential prejudice to the government. *United States v. Bashara*, 27 F.3d 1174, 1181 (6th Cir. 1994), *superseded on other grounds by statute as recognized in United States v. Caseslorente*, 220 F.3d 727, 734 (6th Cir. 2000). No one factor controls; the list is general and nonexclusive. *United States v. Bazzi*, 94 F.3d 1025, 1027 (6th Cir. 1996). The relevance of each factor will vary according to the "circumstances surrounding the original entrance of the plea as well as the motion to withdraw." *United States v. Triplett*, 828 F.2d 1195, 1197 (6th Cir. 1987).

Montante has proffered one reason for wanting to withdraw from his plea: "Defendant was not fully informed as to the evidence or merits of the allegations against him." (Doc. 38 at PgID 492). Not only is this not factually true, but his proffered reason does not constitute a "fair and just" reason for withdrawal of his plea because it contradicts Montante's repeated, under-oath statements made during the plea hearing. Simply put, plea decisions are not "reversible at the defendant's whim." *United States v. Hyde*, 520 U.S. 670, 677 (1997) (internal citations and quotations omitted).

**B.      Montante's discovery claim is baseless.**

The heart of Montante's motion appears to be a claim that the United States and/or defense counsel withheld certain evidence from him. Specifically, he claims the following items were not disclosed to him:

1.  A full and complete copy of communications between him and MV-1;

2.  A copy of Montante's recorded interview;

3.  Full and complete forensics from Montante's electronic devices;

4.  Copies of recorded interviews of MV-1;

5.  Full and complete forensics from MV-1's phone and other devices;

(Doc. 38 at PgID 491).  As an initial matter, Rule 16 discovery is a pre-trial right, not a pre-plea right.  Nonetheless, the United States did not fail to disclose anything to the defense, and prior counsel did not fail in his duty to make it known to him and his client the existence of any exculpatory material (of which, there is none).

**1.      Communications between Montante and MV-1**

Defense counsel received the "full and complete copy" of all the communications it found between Montante and MV-1 through the forensic review process.  In fact, this Court also has a copy of those communications, attached as exhibits to the detention appeal.   Was that the entire universe of their communications?  Of course not.  Defendant knew, and undersigned counsel noted on the record, that the pair communicated via live-stream on Skype, and those video

communications were not memorialized.  Certain applications, such as KIK, self-delete after a certain number of lines.  When that happens, it is nearly impossible to recover them.  Montante ordered MV-1 to delete all of their communications. Repeatedly, Montante told MV-1 to be sure to hide their activities and delete everything.  And, not surprisingly, when law enforcement seized Montante's devices during the execution of the search warrant, he had deleted virtually everything off of his devices.  Law enforcement located the images and videos of child pornography on a thumb drive, where Montante had saved them.  Defense counsel possesses the universe of chat logs that FBI recovered between Montante and MV-1.

### 2.    Montante's recorded interview

Montante confessed to his crimes twice on the day he was arrested.  The first time, it was at his home.  It was audio recorded.  The second time, it was at his polygraph exam.   During his interviews, Montante gave somewhat mitigating statements, but ultimately confessed that he continued to pursue MV-1 and ask her for sexually explicit videos and images, even after he was specifically told that she was thirteen years old.   The United States did not "withhold" the interview information.  First, Montante himself gave the interviews. He was fully aware of them.  And he was told before his statements that they were recording it.  Second, undersigned counsel discussed his interview at length during the detention hearing, and again in its response to the detention appeal.   The government noted the

existence of his statements in its Discovery Notice. (Doc. 13).   It was always available for the defense to inspect and copy.   And, there is nothing exculpatory in the statements.   They are inculpatory, as they offer confessions to the crime.

### 3.   Montante's forensic reports

FBI forensically analyzed Montante's seized devices.    Under 18 U.S.C. § 3509(m), Congress specifically prohibits the dissemination of any property or material that constitutes child pornography.   Montante was well aware that FBI seized his items, and FBI left a detailed accounting on the search warrant return. Montante even directed the FBI to the images and videos of MV-1 on a thumb drive. And, undersigned counsel noted the evidence in the Discovery Notice, in the detention hearing, in the criminal complaint, and in its response to the detention appeal.

It is the practice of the U.S. Attorney's Office to make forensic reports available for review at the U.S. Attorney's Office.   Counsel did so in this case. Moreover, Montante's current counsel has not been denied access to these reports. In fact, an appointment was set up for review of his items two days prior to the filing of this motion.

### 4.   MV-1's interviews

The two interviews of MV-1 at the police station are not Rule 16 discovery. There exists no general constitutional right to discovery in a criminal case. *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977).   These interviews are more properly characterized as *Jencks* material. 18 U.S.C. § 3500.   Thus, they are not Rule 16 discovery, and the government would not be required to allow the defense access to them until after the witness testified.   *See, e.g., United States v. Presser*, 844 F.2d 1275 (6th Cir. 1988).

Under the Crime Victim's Rights Act, 18 U.S.C. § 3771, victims have a right to "be reasonably protected from the accused," and "the right to be treated with fairness and with respect for the victim's dignity and privacy."   18 U.S.C. §§ 3771(a)(1), (a)(8).   Additionally, the Act directs the government and the Court to "ensure that the crime victim" is afforded these rights.   *Id.* §§  (b)(1), (c)(1).

Because of all of the above, the government does not make copies of recorded interviews of minor victims in child exploitation cases.   Instead, out of professional courtesy, the government often allows pre-trial (and sometimes even pre-plea) review of recorded interviews of minor victims in the U.S. Attorney's Office.   This Court has approved this process. *See, United States v. John Vincent-Hyung Manzitti*, 16-cr-20417 (Doc. 26: Order Denying Defendant's Motion for Discovery).   There is nothing exculpatory in MV-1's interviews.   And, they have never been withheld

from defense.  The existence of her interview has been known to the defense since the inception of the case.  *See* Criminal Complaint, Doc. 1 at PgID 4, ¶ 6.

### 5.    MV-1's forensic devices

Much of what defense counsel received in discovery in terms of communications between MV-1 and Montante originated from MV-1's cell phone. The images and videos recovered from her phone (and described in the criminal complaint) have been treated in the same fashion as the child pornography seized from Montante.

It appears that Montante seems to take the discovery a step further, and seek to pour through MV-1's electronic devices, in an attempt to locate "who MV-1 may have sent any such photographs/recordings to."  (Doc. 38: Motion, PgID 496, fn.1). In other words, Montante seeks to "dirty up" the victim by looking to see if he can find—as he puts it—"other act" evidence from MV-1 that may prove to be exculpatory in nature.  This he cannot do.

It is Defendant's burden to establish a Rule of Criminal Procedure, or a case law, that would support the government's disclosure of MV-1's communications with other individuals.  Perhaps it could be an issue in a case where the victim "recycled" images or videos and did not produce them at the behest of her abuser. But that argument is of no moment, here.  Both MV-1 and Montante told law enforcement that Montante requested sexually explicit material from MV-1, and she

complied.  They both admitted to live-stream sexual activity via Skype.  And, in the later communications between Montante and "MV-1" (when the undercover officer took over), Montante repeatedly asked her for specific sexual images.  Just one example:  "Well, I want to see you play with your ass.  I want to see you go doggy style.  Ass up and towards the camera.  And I want to see everything.  I want to see and hear the moment you come.  I think that would be really sexy."[1] (Gov. Resp to Appeal of Det. Order, Ex. D at 509–10).  And, of course, Montante admitted to this behavior in his plea colloquy: "We had a–we had a I think–I suppose you could say relationship over six months, and then the last two have lead–it was centered on Skype, yeah.  In the last month I was apprised of her age and it wasn't what she had initially put forth and I still requested images and video of sensitive content."  The Court clarified: "You knowingly persuaded this person who you met online to engage in content that was sexual and to–send a visual depiction . . . you persuaded her to do that, is that what you said before?"  Montante answered: "Yes."  (Doc. 39 at PgID 521-22 & Ex. A.).

Whether MV-1 communicated with other individuals, or sent sexually graphic material to others is simply not relevant.  Any evidence of her "other acts," to the extent it even exists, falls under Federal Rule of Evidence 412.

---

[1] This conversation alone qualifies as an attempt to produce child pornography, in violation of 18 U.S.C. § 2251(a), which carries the same penalty as the substantive offense.

10

Rule 412 of the Federal Rules of Evidence states that in cases involving allegations of sexual misconduct "evidence offered to prove that any alleged victim engaged in other sexual behavior" and "evidence offered to prove any alleged victim's predisposition" are inadmissible. Fed. R. Evid. 412(a). "Sexual behavior" includes "all activities that involve actual physical conduct, i.e., sexual intercourse and sexual contact" or that imply sexual intercourse or sexual contact, "such as use of contraceptives, birth of an illegitimate child, or diagnosis of venereal disease." Fed. R. Evid. 412, Advisory Committee Notes, Subdivision (a) (1994). "Sexual behavior" also includes "verbal conduct." *United States v. Ogden*, 685 F.3d 600, 605 (6th Cir. 2012) (finding that records of the victim's online conversations in chatrooms with other men were properly excluded under 412(a)(1)). The reference to "sexual predisposition" is "designed to exclude evidence that the proponent believes may have a sexual connotation for the fact finder," such as "the alleged victim's mode of dress, speech, or lifestyle." *Id*.   According to the advisory committee notes accompanying this section:

> The rule aims to safeguard the alleged victim against the invasion of privacy, potential embarrassment and sexual stereotyping that is associated with public disclosure of intimate sexual details and the infusion of sexual innuendo into the fact-finding process. By affording victims protection in most instances, the rule also encourages victims of sexual misconduct to institute and to participate in legal proceedings against alleged offenders.

11

Fed. R. Evid. 412, Advisory Committee Notes (1994). The Rule attempts to accomplish these objectives by "barring evidence relating to the alleged victim's sexual behavior or alleged sexual predisposition, whether offered as substantive evidence or for impeachment, except in designated circumstances in which the probative value of the evidence significantly outweighs possible harm to the victim." *Id*. There are only three exceptions to this rule in criminal cases.

> The following such evidence is admissible:
>
> (A)  evidence of specific instances of a victim's sexual behavior, if offered to prove that someone other than the defendant was the source of semen, injury, or other physical evidence;
>
> (B)  evidence of specific instances of a victim's sexual behavior with respect to the person accused of the sexual misconduct, if offered by the defendant to prove consent or if offered by the prosecutor; and
>
> (C)  evidence whose exclusion would violate the defendant's constitutional rights.

Fed. R. Evid. 412(b); *see also United States v. Cardinal*, 782 F.2d 34, 36 (6th Cir. 1986) (affirming defendant's rape conviction of his thirteen-year-old niece by excluding evidence of the victim reporting past instances of sexual assault by family members).

In sum, since this evidence is not admissible, it is also not discoverable. And, there exists no evidence in her phone that is favorable to the defendant under *Brady v. Maryland*, 373 U.S. 83 (1963).

Finally, Montante pleaded guilty. He can point to no piece of evidence that was not disclosed to him. As the First Circuit has held, "a defendant who subscribes an unconditional guilty plea is deemed to have waived virtually all claims arising out of garden-variety errors that may have antedated the plea." *United States v. Rodriguez-Castillo*, 350 F3d 1, 3–4 (1st Cir. 2003) (*citing United States v. Cordero*, 42 F.3d 697, 698-99 (1st Cir. 1994) (collecting cases)). This includes any non-jurisdictional claims, including those involving discovery. *See United States v. Broce,* 488 U.S. 563 (1989); *United States v. Cottage*, 307 F.3d 494 (6th Cir. 2002); *United States v. Simpson*, 78 Fed. Appx. 523, 525 (6th Cir. 2003) (unpublished).

### C.     The *Bashara* factors weigh in favor of denying the motion.

#### 1.     The amount of time that elapsed between the plea and the motion to withdraw is almost nine months.

On February 1, 2017, Defendant entered his guilty plea pursuant to a Rule 11 Plea Agreement. Montante filed his motion to withdraw on October 18, 2017, after an unsuccessful meeting with the U.S. Attorney's Office seeking a more favorable plea agreement. In total, approximately nine months—or, 260 days—passed from Defendant's plea until new counsel filed this motion.

The Sixth Circuit has consistently upheld district court decisions rejecting plea withdrawal motions where the strongest factor is the passage of time. *See United States v. Quinlan,* 473 F.3d 273 (6th Cir. 2007 (collecting cases). For example, in *United States v. Spencer*, 836 F.2d 236 (6th Cir. 1987), the district court

refused to allow a defendant to withdraw a guilty plea 22 days after the date of the plea.  In *United States v. Durham*, 178 F.3d 796 (6th Cir. 1999), the district court refused to allow the defendant to withdraw his guilty plea because he waited 77 days. *See also United States v. Dixon*, 479 F.3d 431 (6th Cir. 2007) (two year delay); *United States v. Wynn*, 663 F.3d 847 (6th Cir. 2011) (delay of eight months); *United States v. Benton*, 639 F.3d 723 (6th Cir. 2011) (93 day delay).

A prolonged delay "weighs heavily against [a defendant] and supports . . . the district court's denial of the motion."  *United States v. Ellis*, 470 F.3d 275, 282 (6th Cir. 2006) (citing *United State v. Pluta*, 144 F.3d 968, 973 (four month delay); *United States v. Valdez*, 362 F.3d 903, 912 (6th Cir.2004) ("unjustified 75–day delay, alone, supported the court's denial of a motion to withdraw"); *United States v. Baez*, 87 F.3d 805, 808 (sixty-seven day delay); *United States v. Goldberg*, 862 F.2d 101, 104 (6th Cir.1988) (fifty-five day delay).

Here, Montante allowed a delay of 260 days before seeking to withdraw from his plea.  Montante's purported "justification" for the delay falls flat.  As will be discussed, Montante was fully aware of all the evidence against him, particularly because the bulk of the evidence consisted of his own words.

This 260-day delay independently supports a reason to deny Montante's motion to withdraw.

### 2.   The presence or absence of a valid reason for the failure to move for withdrawal earlier in the proceedings.

The second factor the Court must consider, to determine whether Defendant's motion to withdraw is for a fair and just reason, "is the presence of a valid reason for the failing to move for withdrawal earlier in the proceedings." *Ellis*, 470 F.3d at 282 (citing *Bashara*, 27 F.3d at 1181). Defendant again tries to argue that because he received ineffective assistance of counsel, this factor ought to be excused by this court. This claim lacks merit. As stated above, Montante went into his plea with eyes wide open. He assured this Court, more than one time, that it was his desire to plead guilty.

Montante's claim that he "was not aware that he could withdraw his plea" is curious, because he cannot, in fact, withdraw his plea without meeting a very heavy burden. This Court reminded Montane that "this is a permanent decision to accept responsibility and plead guilty here today." And Montante agreed. (R.39 at PgID 520 & Ex. A).

### 3.   Whether the defendant has asserted or maintained his innocence

Defendant makes no assertion of innocence. "This factor, therefore, weighs against [Defendant]." *Benton*, 639 F.3d at 728. Montante never professed innocence or expressed any hesitancy in his decision to plead guilty. He confessed the day he was arrested. He provided a factual basis for his guilt during the plea hearing, while

15

under oath and before this Court.  To claim that Montante was "not ever provided with an opportunity to assert or maintain his innocence" is nonsense.  Montante pleaded guilty because he is, in fact, guilty.

To allow Montante to withdraw his guilty plea, not because of innocence, but as a strategic move, "would degrade the otherwise serious act of pleading guilty into something akin to a move in a game of chess." *Hyde*, 520 U.S. at 677. *See also United States v. Goddard*, 638 F.3d 490 (6th Cir. 2011).

### 4.   The circumstances underlying the entry of the guilty plea.

The circumstances underlying the entry of Montante's plea also support a denial of his motion to withdraw.  Solemn declarations of guilt in open court carry a strong presumption of verity.  *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977).  At the time of Montante's guilty plea, he consistently affirmed that no one had tried to force, threaten, or pressure him to plead guilty.  He also confirmed that the decision to plead guilty was his decision, and not that of his attorney.  (R.39, PgID 510, 520).

Montante's second argument, that "it appears that the plea may have been negotiated without any consideration of mitigating factors," is not only untrue, but also, not a basis to withdraw from the plea.  As stated above, undersigned counsel and Montante's counsel have a very good working relationship, and discussed this case thoroughly on several occasions.  The offer of plea to the most serious offense, capping the sentencing exposure to 30 years, was, in fact, the best deal Montante was going to be offered.  And while Montante and his prior counsel discussed the possibility of pleading "straight up" without an agreement, in the end, Montante decided that limiting the top end of the punishment was a better deal for him.  (Doc. 39, PgID 506-07).

### 5.    Defendant's nature and background

Defendant is 24 years old and college-educated.  He can read, write, and understand the English language.  No evidence exists to show that he could not understand the proceedings on February 1, 2017.  He is articulate, and smart enough to know that if he were caught by law enforcement, he would be facing significant prison time.  He told MV-1: "But if they ask you, you have to tell them I thought you were 18 and that you told me you were the whole time, because if I can deny it, I'll be fine.  I researched it." (See Gov. Resp. to Det. Appeal, Ex. D at 465).

Defendant's nature and background support the Court's denial of his motion to withdraw his plea.

17

**6.      The degree to which the defendant has had prior experience with the criminal justice system.**

Defendant has not had experience with the criminal justice system.  But, he was taking classes at University of Michigan-Dearborn, studying history and political science.  He interned for former U.S. Representative John Dingell.

 In addition to the colloquy with the Court, Montante reviewed and signed a Rule 11 Plea Agreement.  Additionally, "there is also no evidence here of any unusual circumstances underlying the plea, such as defendants' naiveté with respect to the criminal justice system." *Baez*, 87 F.3d at 809.  Defendant fully understood the consequences of pleading guilty.  Defendant's colloquy with this Court demonstrated a strong understanding of the criminal justice system, and supports the Court's denial of his motion to withdraw his plea.

**7.      Potential prejudice to the government if the motion to withdraw is granted.**

The government "is not required to establish prejudice that would result from a plea withdrawal, unless and until the defendant advances and establishes a fair and just reason for allowing the withdrawal . . . ." *Spencer*, 836 F.2d at 240 (6th Cir. 1987).  Defendant has not established a fair and just reason for allowing the withdrawal.  If the Court determines otherwise, the government argues that it will suffer significant prejudice if Montante's motion is granted.

"Prejudice to the government can include wasted government resources, which in turn can include potential wasted judicial resources." *United States v. Osborne*, 565 F. Supp. 2d 927, 939 (E.D. Tenn. 2008).  Prejudice can also exist where Defendant "has now had the benefit of basically hearing the governments' case-in-chief against him, and the government has expended much time and resources . . . ." *United States v. Murray*, 66 F. App'x 600, 605–06 (6th Cir. 2003).

This case is now over a year old.  Memories fade, and last-minute evidentiary items that come up may no longer be available in the same manner as a year ago.  Importantly, too, this case involves a minor victim.  The victim in this case has been advised that this matter has ended in a plea.  In *United States v. Lineback*, 330 F.3d 441 (6th Cir. 2003), the Sixth Circuit  affirmed a district court's order denying a motion to withdraw, in part, because it would cause trauma to the victims.

Just like in *Lineback*, there is a minor child who has already been traumatized by the actions of Montante.  She "and her family have been through enormous stress and mental anguish in awaiting some finality to these legal proceedings.  To reverse this process and require [her] to now testify before the public in a jury trial will be difficult at best and will certainly prejudice the Government in its effort to obtain justice." *Id.*

**D.    Montante entered into a knowing and voluntary plea**

A guilty plea is valid if it is entered knowingly, voluntarily, and intelligently, as determined under the totality of the circumstances. *Boykin v. Alabama*, 395 U.S. 238, 242–44 (1969).  A district court, in accordance with Rule 11 of the Federal Rules of Criminal Procedure, must "verify that the defendant's plea is voluntary and that the defendant understands his or her applicable constitutional rights, the nature of the crime charged, the consequences of the guilty plea, and the factual basis for concluding that the defendant committed the crime charged." *United States v. Webb*, 403 F.3d 373, 378–79 (6th Cir. 2005) (citation omitted).

Under the totality of the circumstances, this Court properly found that Montante made a knowing, voluntary, and intelligent guilty plea.  There exists not a shred of evidence to indicate that Montante had any hesitation, question, concern, misunderstanding, or misapprehension about what happened in the courtroom on February 1, 2017, and he presents no evidence to the contrary.

It is unclear what relief Montante hopes to gain.  If he is allowed to withdraw from his plea, he will have two options before him: plead to all counts in the indictment without a Rule 11 plea agreement, or go to trial.  If he pleads without a Rule 11, he exposes himself to a statutory penalty of up to life in prison for the online enticement count.  If he proceeds to trial, he loses any acceptance of responsibility

points, and faces a higher guideline range, and a statutory penalty of up to life in prison.

## III.   Conclusion

Throughout his filing, Montante does not make a demand to go to trial.  The United States has already indicated, in no uncertain terms, that the Rule 11 plea agreement will not be reduced in any fashion.  As the mother to MV-1 told undersigned counsel: "My daughter doesn't get a do over…..why [ ] should he?"

Montante's motion to withdraw from his plea should be denied, and the sentencing set for November 30, 2017, should not be delayed.


Respectfully submitted,

DANIEL L. LEMISCH,
*Acting United States Attorney*

s/ *Margaret M. Smith*
Margaret M. Smith
Deputy Chief, General Crimes Unit
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, Michigan  48226
Phone: (313) 226-9135
e-mail: margaret.smith@usdoj.gov


Dated: October 27, 2017

**<u>Certificate of Service</u>**

I certify that on October 27, 2017, I filed Government's Response to

Defendant's Motion, with the Clerk of the Court of the Eastern District of

Michigan, using the ECF system, which will send notification of such filing to the

following:

Sandford A. Schulman
email:saschulman@comcast.net


s/*<u>Margaret M. Smith</u>*
Assistant U.S. Attorney
United States Attorney's Office

22