UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

Case No.: 16-20576
Honorable Stephen J. Murphy

RANDY NIBUNGCO MONTANTE,

        Defendant.

_____/

MARGARET M. SMITH (P-71413)
United States Attorney's Office
211 W. Fort Street, Suite 2001
Detroit, Michigan 48226
313/226-9135
margaret.smith@usdoj.gov

CAMILLA BARKOVIC (P-78254)
Attorney for Defendant
25805 Harper Avenue
St. Clair Shores, Michigan 48081
586/773-2120
camillabarkovic@gmail.com
_____/

## DEFENDANT'S SUPPLEMENTAL SENTENCING MEMORANDUM

### INTRODUCTION

An initial sentencing memorandum was filed on behalf of Mr. Randy Montante on

August 18, 2017. (Dkt. No. 29.) Defendant files the instant memorandum, which is

intended to supplement his initial sentencing memorandum, for the Court's consideration

prior to sentencing.[1] The sentencing guideline range set forth in the Presentence

Investigation Report and the Rule 11 Plea Agreement amounts to 262 months

---

1.     Defendant hereby incorporates his initial Sentencing Memorandum (in it's entirety) and all attachments herein.

(approximately 22 years) to 327 months (approximately 27 years).  For the reasons set forth in Defendant's initial memorandum and herein, Defendant requests that this Court impose a sentence below the applicable guideline range and sentence the Defendant to no more than the mandatory minimum of fifteen (15) years.

## FACTUAL/PROCEDURAL BACKGROUND

Defendant was originally charged in a four (4) count Indictment with the following: (1) Production of Child Pornography, contrary to 18 U.S.C. § 2251(a); (2) Coercion and Enticement of a Minor, contrary to 18 U.S.C. § 2422(b); (3) Receipt of Child Pornography, contrary to 18 U.S.C. § 2252A(a)(2); and (4) Possession of Child Pornography, contrary to 18 U.S.C. 2252A(a)(5)(b).  (See Dkt. 10.)

The government alleged that Mr. Montante had been communicating electronically with MV-1, a minor, over the course of approximately six (6) months (February 2016 - July 2016) and that, during this period in time, MV-1 had sent the Defendant nude photographs and/or live-streams/videos depicting MV-1 without clothing.

MV-1 initiated contact with Mr. Montante on a website intended for adults (Omegle) and purported to be an eighteen (18) year old female throughout the entire course of her online relationship with him.  MV-1 and Mr. Montante developed an emotional bond over the course of several months and engaged in various discussions that were not sexually oriented.  It was not until Mr. Montante was confronted by MV-1's mother on or about July 22-23, 2016 that he was apprised of the true age of MV-1.

Mr. Montante eventually ceased communication with MV-1 for a period of several days following the above-described confrontation.  A law enforcement officer subsequently assumed the online identity of MV-1 and unilaterally reinitiated contact with Mr. Montante

by way of electronic means on or about August 2, 2016 and enticed Mr. Montante to continue to communicate with MV-1.  Mr. Montante and the law enforcement officer acting as MV-1 continued to communicate through August 6, 2016.   The communications consisted of online messages only.   It is alleged that Mr. Montante made certain inappropriate statements, which may be construed as request(s) for illicit material, during these conversations. No images/videos were exchanged during these communications. Defendant was subsequently arrested and charged in the instant proceeding.

Defendant entered a plea of guilty to Count I of the Indictment - Production of Child Pornography, contrary to 18 U.S.C. § 2251(a) - and tendered a Rule 11 Plea Agreement on or about February 1, 2017.  (Dkt. 25.)   In exchange for Defendant's plea to the most serious charge, the remaining three (3) less serious offenses were dismissed.  The agreed upon guideline range set forth in the Rule 11 is 262 months to 327 months.  (See Dkt. 25, ¶ 2(B).)

Sentencing in this matter was originally scheduled for May 5, 2017.   However, sentencing was adjourned, pursuant to a stipulation, to September 8, 2017.  (Dkt. 28.) Defendant engaged the services of the undersigned counsel prior to the scheduled sentencing hearing.  This Court entered an order allowing for the substitution of counsel on or about September 6, 2017 and adjourned sentencing to November 30, 2017.  (Dkt. 37.)

Defendant subsequently sought to withdraw his guilty plea (after conducting further discovery through new counsel) by way of filing a Motion to Withdraw Plea.  (Dkt. 38.) [2]

---

2.    Defendant sought to withdraw his plea for a number of reasons, including, but not limited to, prior defense counsel's apparent failure to conduct a full and complete investigation in connection with this matter and failure to review/obtain full and complete discovery. Defendant previously asserted by implication, and now

The undersigned counsel also sought to re-negotiate the plea with the United States Attorney's Office. The United States Attorney's Office declined to modify the disposition. Further, this Court denied Defendant's request to withdraw his plea by way of an order entered on November 22, 2017. (Dkt. 41.) Accordingly, this matter is scheduled to proceed to sentencing on November 30, 2017.

The government is seeking a sentence within the applicable guideline range. However, Defendant requests that this Court impose a sentence below the applicable guideline range and sentence the Defendant to no more than fifteen (15) years. For the reasons set forth below and in Defendant's initial sentencing memorandum, this Court should impose a sentence below the guideline range and sentence Mr. Montante to no more than the mandatory minimum.

## APPLICABLE LAW

"[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." Gall v. United States, 552 U.S. 38, 49–50 (2007). However, the district court may not treat the applicable range as mandatory or presumptive. Id. at 50. (noting that district judges, in considering how the various statutory sentencing factors apply to an individual defendant, "may not presume that the Guidelines range is reasonable"); see also, Nelson v. United States, 555 U.S. 350, 352 (2009). The sentencing court is to simply treat the guideline range as "one factor among several" when imposing an appropriate sentence under 3553(a). Kimbrough v. United States, 552 U.S. 85, 90 (2007). The Court must "consider all of the § 3553(a) factors," "make an

---

unequivocally asserts, that prior counsel was ineffective for various reasons, including, but not limited to, failing to obtain full and complete discovery, failing to thoroughly investigate this matter, and failing to adequately advise Mr. Montante as to his potential options as it relates to this matter.

individualized assessment based on the facts presented," and explain how the facts relate to the purposes of sentencing. Id. at 49-50, 53-60; Pepper v. United States, 131 S.Ct. 1229, 1242-43 (2011).[3] The Court's "overarching" duty is to "'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing." Kimbrough, 552 U.S. at 101; Pepper, 131 S.Ct. at 1242-43. Simply stated, a sentencing court is to impose the lowest sentence that will achieve the four statutory purposes of sentencing: justice; deterrence; incapacitation; and rehabilitation. 18 U.S.C. § 3553(a)(2); Kimbrough, 552 U.S. at 101.

## SUPPLEMENTAL ARGUMENT

In the instant case, a sentence significantly below the proposed guideline range of 262 months to 327 months is "sufficient" to serve federal sentencing purposes. Accordingly, Defendant requests that this Court impose a sentence of no more than fifteen (15) years (the mandatory minimum). Defendant will not reiterate all arguments set forth in his initial Sentencing Memorandum and simply submits the following additional information/argument for the Court's consideration.

I.   **AN ANALYSIS OF THE FACTORS SET FORTH IN 18 U.S.C. §3553(a) WARRANTS A SENTENCE SIGNIFICANTLY BELOW THE APPLICABLE GUIDELINE RANGE (262 MONTHS TO 327 MONTHS).**

   A.   **THE NATURE AND CIRCUMSTANCES OF THE OFFENSE 18 U.S.C. §3553(a)(1)**

The nature and circumstances of the offense in question warrants a below guideline

---

3.   Because "the Guidelines are now advisory ... as a general matter, courts may vary [from Guidelines ranges] based solely on policy considerations, including disagreements with the Guidelines." Kimbrough, 552 U.S. at 101-02 (internal punctuation omitted); United States v. Collington, 461 F.3d 805 (6th Cir. 2006) (Post Booker, "a sentencing court has greater latitude to sentence outside the guideline range and '[i]n appropriate cases ... a lower sentence would still comply with and serve the mandates of section 3553(a).'"); Gall, supra at 47 (the Supreme Court rejected "an appellate rule that requires 'extraordinary' circumstances to justify a sentence outside the Guidelines range.")

sentence. The government claims that the nature and circumstances of the offense warrant sentence within the applicable guideline range. In support of this argument, the government claims that Mr. Montante "took advantage of a thirteen year old child for his own sexual pleasure" and "convinced her to produce sexually explicit images and videos for him." (Gov't. Sent. Memo., p. 2; p. 12.) However, the government fails to provide this Court with a full and complete history of the development of the online relationship between MV-1 and Mr. Montante and other pertinent details relating to this matter. An analysis of the full set of factual circumstances is essential to this Court's determination of an appropriate sentence and warrants a below guideline sentence.

The "relationship" between Mr. Montante and MV-1 started in February 2016 when MV-1, who was on the internet with her friend, initiated a chat with Mr. Montante on a website (Omegle), which is intended for adults. MV-1 expressly informed Mr. Montante that she was eighteen (18) years old, that she lived in New York, and would be and/or was a college student at Rutgers University. Mr. Montante understood MV-1 to be of legal age for the majority of their communications and until he was confronted by MV-1's mother. MV-1 acknowledged in her interview(s) with law enforcement that she never expressly advised Mr. Montante of her true age at any point in time and even went so far as to create a fake Facebook account to enable her to connect with/have access to Mr. Montante.

MV-1 and Mr. Montante continued to communicate online and developed an online relationship, which progressed over the course of several months. Upon information and belief, Mr. Montante and MV-1 discussed all aspects of their lives with each other and sometimes spoke for several hours per day. This was not simply a sexually-oriented relationship. By the time Mr. Montante was apprised of MV-1's true age, he was

hopelessly infatuated with her, as he had established an emotional bond with her over several months which was difficult, if not impossible, to break.

Mr. Montante was confronted by MV-1's mother in late July 2016. Mr. Montante ceased communication with MV-1 for several days, until online contact was unilaterally re-initiated by a law enforcement officer who purported to be MV-1. It was during these communications that Mr. Montante made statements, which may be construed as evidencing an intent to continue to communicate with MV-1 and an intent to continue to receive inappropriate depictions of MV-1.

A review of MV-1's interview(s) with law enforcement indicates that MV-1 was communicating with other adult individual(s) online. MV-1 admitted to law enforcement that she had lied to other individual(s) she met online about her age, including another adult male named "Tyler." Further, it appears that MV-1 was frequently on the website through which she first initiated contact with Mr. Montante (Omegle), including a few days prior to her first interview with law enforcement.[4] Defendant wishes to inform the Court of the above facts, not to disparage or "blame" MV-1, but to further emphasize to the Court that Mr. Montante's relationship with the MV-1 was commenced and premised on her representation(s) that she was of legal age.

The government also claims that the Defendant has a "fascination with sadistic and masochistic sexual themes, bestiality, and domination." (Gov't. Sent. Memo., p. 12.) The

---

4.    The government has refused, despite multiple requests, to provide the undersigned counsel with access to any communications/information/data from MV-1's electronic device(s). Accordingly, Defendant cannot provide this Court with any further information regarding this aspect of the case. The government cites alleged messages from MV-1's device(s) in it's sentencing memorandum, but Defendant cannot even address any such allegations because the government has precluded the Defendant from having any access to such information.

government has consistently referenced four (4) videos throughout the course of the instant proceeding and, upon information and belief, relies on said videos to support the aforementioned allegation. (Gov't. Sent. Memo., pp. 2-3.) However, there is no evidence that the videos in question were produced pursuant to Mr. Montante's request and/or that Mr. Montante ever sought and/or received these videos from MV-1.[5] Notwithstanding the above, the government and prior defense counsel agreed that a four level increase was appropriate under 2G2.1(b)(4). Defendant would object to the scoring of 2G2.1(b)(4), as there is no objective evidence that the offense involved "material that portrayed sadistic or masochistic conduct or other depictions of violence." If the aforementioned variable was not scored, Mr. Montante's applicable adjusted offense level would amount to 38, his total offense level would amount to 35, and his overall guideline range would be reduced to 168 months (14 years) to 210 months (17.5 years).

Mr. Montante did not seek out MV-1 knowing that she was a minor and Mr. Montante's intention and primary focus was not the production of child pornography. Mr. Montante simply engaged in an online relationship with a single individual, who expressly informed him that she was of legal age and created a detailed background story to further bolster this misrepresentation. Mr. Montante developed an emotional connection with MV-1 and his relationship with her was premised and continued on his understanding that she was of legal age. This was not a physical relationship. In fact, Mr. Montante did not have any physical contact with MV-1, nor did he make any attempts to do so. Mr. Montante does not pose a risk of committing contact sex offenses, and thus, does not fit within the

---

5.     In fact, counsel reviewed all data recovered from Mr. Montante's electronic device(s) at the United States Attorney's Office and the relevant videos were not located on any of Mr. Montante's electronic devices.

"heartland" of offenders to whom Congress and the Commission thought the harsh guidelines at issue would apply.[6]

There is no evidence to suggest that Mr. Montante would ever engage in the conduct at issue again. This was an isolated incident with unusual circumstances. There is no evidence that Mr. Montante would have communicated with MV-1 initially if she did not misrepresent her age. Furthermore, there is no evidence that Mr. Montante distributed the images/videos sent to him by MV-1 to any other person(s). There is no evidence that Mr. Montante had any interest in child pornography whatsoever, nor is there any evidence that Mr. Montante searched for or downloaded child pornography, that he was involved in any peer-to-peer trading programs, or that he was involved in any groups dedicated to trading child pornography. This case simply involves Mr. Montante's online relationship, and formulation of an emotional connection, with a single individual (MV-1), who expressly represented that she was of legal age when she initiated communication with Mr. Montante.

## B.   THE HISTORY AND CHARACTERISTICS OF THE DEFENDANT 18 U.S.C. §3553(a)(1)

At the time of the conduct at issue, Mr. Montante was twenty-three (23) years old, was a few credits short from graduating from the University of Michigan, and was gainfully employed. Mr. Montante has no criminal history whatsoever.

---

6.   The child pornography guidelines were crafted, in part, to deal with the risk of contact offenses. There is ample evidence that, when crafting the current guidelines, Congress and the Commission assumed that a "typical" child pornography possessor is largely indistinguishable from an offender who has already sexually abused a child or who poses a substantial risk of doing so. See, e.g., U.S. Sentencing Comm'n, Sex Offenses Against Children, at i (1996) (stating "a significant portion of child pornography offenders . . . show the greatest risk of victimizing children" and that "a significant portion of child pornography offenders have a criminal history that involves the sexual abuse or exploitation of children"); see also, Carissa Byrne Hessick, Disentangling Child Pornography from Child Sex Abuse, 88 Wash. U. L. Rev. 853, 899, 900 n.206 (2011).

The government attempts to characterize Mr. Montante as a "pedophile." (Gov't Sent. Memo., p. 13.) This claim is without merit.  Mr. Montante was evaluated by Gerald Shiener, M.D., in connection with this matter, and Dr. Shiener concluded that Mr. Montante did not, and does not, fit the profile of a pedophile.[7] (Psychological Report of Gerald Shiener, M.D., dated January 8, 2017, at pp. 10-11.)  Mr. Montante has a "traditional sexual ethic" and has even avoided engaging in consensual adult sexual intercourse, as he believes in preserving his virginity until marriage. (Id.)  A copy of this report was previously separately filed with this Court.

Mr. Montante was given a polygraph examination following his arrest, which further supports the conclusion that Mr. Montante is not a "pedophile."  In the first series of questions, Mr. Montante was asked: (1) "As an adult, have you ever deliberately downloaded sexually explicit images of children?;" and (2) "As an adult, have you ever shared sexually explicit images of children with another person?" Mr. Montante answered "no" to both questions.  The results of the initial examination indicated that no deception was detected.

Mr. Montante has been incarcerated in connection with this matter since August 10, 2016.  Upon information and belief, Mr. Montante has been a model inmate and has been working in the kitchen. Upon further information and belief, Mr. Montante has not attempted to engage in any further communications with MV-1 since his incarceration.

---

7.      Again, *MV-1 initiated contact with Mr. Montante, expressly informed him that she was eighteen (18) years old, and never expressly informed Mr. Montante that she was not truly of legal age.*  Mr. Montante had no knowledge at the inception of the relationship and, upon information and belief, prior to initially receiving indecent depictions, that MV-1 was a minor.  It is clear that Mr. Montante did not seek out MV-1 because she was a minor.

### C.   ADEQUATE DETERRENCE / PROTECTION OF PUBLIC
### 18 U.S.C. § 3553(a)(2)

As a first-time offender, Mr. Montante poses a minimal, if non-existent, recidivism risk. Mr. Montante's status as a first-time offender and the unique facts and circumstances underlying this matter indicate that the conduct at issue was an isolated occurrence. Mr. Montante does not pose a threat to the public, and thus, is deserving of a minimal custodial sentence.

Mr. Montante is a first-time offender. He has no criminal history whatsoever. It is well-established that defendants with no criminal history points have a low recidivism rate and, as such, are deserving of reduced punishment. See United States Sentencing Commission, Recidivism and the "First Offender," at 13-14 (May 2004) (noting that federal defendants with no criminal history points had a recidivism rate of 11.7 percent, which was approximately half of the recidivism rate of defendant who had only one point).

A growing number of courts have taken both age and first-offender status into account when fashioning an appropriate sentence under 18 U.S.C. § 3553(2) and Mr. Montante requests that the Court consider the same when imposing a sentence in this matter. See, e.g., United States v. Darway, 255 Fed. Appx. 68, 73 (6th Cir. 2007) (upholding sentence in child pornography case as reasonable where district court granted downward variance on basis of defendant's first-offender status); United States v. Hamilton, 323 Fed. Appx. 27 (2nd Cir. 2009) (holding that "the district court abused its discretion in not taking into account policy considerations with regard to age recidivism not included in the Guidelines");United States v. Holt, 486 F.3d 997, 1004 (7th Cir. 2007) (affirming a below guidelines sentence where the district court's only reason for the

variance was that the defendant's age made it unlikely that he would again be involved in another violent crime); United States v. Cabrera, 567 F. Supp. 2d 271, 279 (D. Mass. 2008) (granting variance because defendants, like Cabrera, "with zero criminal history points are less likely to recidivate than all other offenders.")

A consideration of the facts and circumstances of this case further indicate that the likelihood of recidivism is extremely low. This case involves a single victim, who initiated contact with Mr. Montante and who misrepresented her age to Mr. Montante.  There is no indication that Mr. Montante would have even communicated with MV-1 if he was aware of her true age. The instant offense involved a serious mistake or lapse in judgment on the part of Mr. Montante in that he continued to communicate with MV-1 after she (and/or law enforcement) re-initiated contact with MV-1 in August 2016. There is no indication, nor evidence, that Mr. Montante would engage in such conduct again in the future.  In fact, Dr. Shiener has opined that Mr. Montante "does not represent any risk to the community" and "has no history of any other acting out behavior or poor impulse control." (Report of Gerald Shiener, M.D., dated January 8, 2017, at p. 10.)

**D.    IMPOSITION OF A PROPORTIONAL SENTENCE AND AVOIDANCE OF UNWARRANTED SENTENCE DISPARITIES AMONG DEFENDANTS WITH SIMILAR RECORDS FOR SIMILAR CONDUCT 18 U.S.C. §3553(a)(6)**

Under 18 U.S.C. §3553(a)(6), sentencing courts must "consider the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." Further, as a matter of principle, a criminal sentence must be proportionate to the crime for which the defendant has been convicted. Solem v. Helm, 463 U.S. 277, 290; 103 S. Ct. 3001, 3009; 77 L. Ed. 2d 637 (1983).  The Supreme Court

has identified three "objective criteria" for assessing proportionality: the gravity of the offense as compared to the harshness of the penalty; the sentences imposed on others in the same jurisdiction; and the sentences imposed for the same offense in other jurisdictions. Solem, 463 U.S. at 292; United States v. Young, 766 F.3d 621, 626 (6th Cir. 2014).

In the instant matter, Mr. Montante plead guilty to an offense with a fifteen (15) year mandatory minimum sentence with an agreed-upon guideline range of 262 months (22 years) - 327 months (27 years). A sentence within Mr. Montante's guideline range would be excessive in light of the conduct at issue, his background and personal circumstances, and in light of dispositions reached in other cases. A sentence of fifteen (15) years is unduly harsh and even this mandatory minimum sentence appears to be disproportionate under the circumstances. See Young, 766 F3d at 628 ("There can be no question that a fifteen-year mandatory minimum sentence is harsh and severe.")

Defendant highlights the following several cases for the Court's consideration in support of the aforementioned assertions:

1. **United States of America vs. Starlit Zhao**
   (Eastern District of Michigan Case No.: 16-20575)
   96 MONTHS IMPRISONMENT; 5 YEARS SUPERVISED RELEASE

Mr. Zhao was charged with production of child pornography, coercion and enticement of a minor, travel with intent to engage in illicit sexual activity, and receipt of child pornography. The United States Attorney's Office allowed Mr. Zhao to plead to traveling with intent to engage in illicit sexual activity and dismissed the remaining three (3) charges (including the production charge). Mr. Zhao was sentenced to ninety-six (96) months (8 years).

13

Mr. Zhao had an "ongoing, sexual internet relationship with a girl at the vulnerable age of 14 years, and traveled to her home state with the intent to have sex with her." Upon information and belief, Mr. Zhao had knowledge of the true age of the MV from the inception of their relationship, acknowledged the inappropriate nature of their relationship, operated a gaming organization and had a YouTube channel (with a young target audience), taught MV how to perform oral sex and other inappropriate actions, instructed MV to strip her clothes off and engage in sexual acts (including masturbation), and instructed MV to deceive her parents so that she could attend certain events, which would enable Mr. Zhao and MV to engage in sexual intercourse. Mr. Zhao went so far as to purchase a plane ticket and actually traveled to MV's location for the purposed of engaging in sexual intercourse with her. It was alleged that Mr. Zhao even requested to borrow his mother's video camera for the trip (the sole purpose of which was to engage in sexual acts with MV). Further, it is relevant to note that Mr. Zhao made seemingly callous comments to MV1, which indicate an intent to use her for sexual purposes only. (See Government's Sentencing Memorandum, p. 8 - "[W]hen MV-1 asked Zhao if he loved her, he said that love was not on his mind, but "good sex" might be able to change his feelings, and that he would "treat [MV-1] like [his] lover while [he was] there.")

Like Mr. Zhao, Mr. Montante has no criminal history and engaged in an online relationship with a minor. Unlike Mr. Zhao, Mr. Montante was not expressly advised of MV-1's true age, did not make any attempts to meet with MV-1 in person, did not purchase a ticket and travel to engage in physical intercourse with MV-1, did not teach MV-1 how to engage in sexual acts, and did not simply communicate with MV-1 for purposes of attempting to have physical intercourse with her. Notwithstanding the above, Mr. Montante

is facing a sentence of incarceration that is almost three times the sentence received by Mr. Zhao.

2. **United States of America** vs. **Devin Mood**
   (Eastern District of Michigan Case No.: 08CR20330-1)
   1 DAY JAIL (time served); 5 YEARS SUPERVISED RELEASE

Mr. Mood plead guilty to receipt of child pornography and the United States Attorney's Office dismissed charges of production of child pornography and possession of child pornography.

According to the criminal complaint, Mr. Mood possessed numerous visuals of child pornography and traded these images with others. An analysis of certain images depicted the presence of an adult male, which matched the description of Mr. Mood, in such photographs. It was also determined that certain items contained in the child pornography images were located/observed inside of Mr. Mood's residence. Further, Mr. Mood engaged in communications with others in which he expressly discussed his past experiences of, and future plans to, sexually abuse children. Upon information and belief, Mr. Mood may have been employed as a teacher at some point. Notwithstanding the above, Mr. Mood received a reduced plea (a dismissal of the production charge) and an extremely low sentence (1 day jail; 5y supervised release).

3. **United States** vs. **Michael McCoy**
   (Eastern District of Michigan Case No.: 15-CR-20074)
   156 MONTHS IMPRISONMENT; 5 YEARS SUPERVISED RELEASE

Mr. McCoy was charged with conspiracy to produce child pornography and distribution of child pornography (aiding and abetting). The United States Attorney's Office allowed Mr. McCoy to plead to aiding and abetting the distribution of child pornography and dismissed the more significant production charge, despite the fact that Mr. McCoy was

previously convicted of possessing child pornography.

According to available information, Mr. McCoy routinely urged his online girlfriend to molest minor(s) and record/send the same to him.   Mr. McCoy received images depicting oral sex being performed on the genitalia of an infant pursuant to his request(s). Mr. McCoy also possessed over six hundred (600) images of child pornography, including images depicting sadistic conduct involving minors.

An analysis of Mr. McCoy's Rule 11 indicates that he had a prior conviction in 2013 for possession of child pornography and a drunk driving conviction on his record.   Despite being a recidivist, encouraging his girlfriend to molest innocent young children, and possessing hundreds of child pornography images (some of which were sadistic in nature), Mr. McCoy received a sentence that is two (2) years less than what Mr. Montante is eligible to receive (at a minimum) if the Court departs from the applicable guideline range and sentences Mr. Montante to the bare minimum.

4.   **United States of America vs. Patrick Joseph Pinchot**
     (Eastern District of Michigan Case No.:1620006)
     240 MONTHS IMPRISONMENT; 5 YEARS SUPERVISED RELEASE

Mr. Pinchot plead to coercion and enticement of a minor and receipt of child pornography. The United States Attorney's Office dismissed charges of production of child pornography, possession of child pornography, and transfer of obscene material to a minor.  The plea agreement provided that the parties stipulated that a sentence may not exceed 30 years.  Mr. Pinchot received a sentence of 240 months imprisonment.

An analysis of Mr. Pinchot's Rule 11 indicates that he previously was charged with two (2) counts of CSC (Criminal Sexual Conduct) in the Second Degree and had been convicted of two (2) counts of accosting/soliciting a child for immoral purposes.

16

It was alleged that Mr. Pinchot was a member of an online group that regularly distributed/shared child pornography. His online username was "looking4younggirls." Mr. Pinchot had over 100 videos of child pornography and hundreds of images of child pornography. He had online communications with multiple minors, sought out (and received) explicit depictions of minor(s) from minor(s), and provided instructions to minor(s) regarding such depictions.

Notwithstanding the repetitive and egregious nature of Mr. Pinchot's actions, he received a sentence below the low end of Mr. Montante's applicable guideline range.

5. **United States of America vs. Kaiel Caleb Grimes**
   (Eastern District of Michigan Case No.: 15-CR-20334)
   180 MONTHS IMPRISONMENT; 5 YEARS SUPERVISED RELEASE

Mr. Grimes was charged with production of child pornography and possession of child pornography. The criminal complaint alleged that Mr. Grimes (22 years old) was involved in a sexual relationship with MV-1 (15 years old) and that he would produce recordings of their physical sexual encounters and produce explicit photographs MV-1. One of the videos allegedly depicted Mr. Grimes sneak up on MV-1 while she was asleep on her stomach in the bed, pull her pants off, and penetrate her (apparently without her consent). MV-1 claimed that Mr. Grimes had also physically assaulted her (*i.e.*, strangled, dragged, etc.).

Mr. Grimes plead guilty to production of child pornography and received a sentence of 180 months (15 years) with five (5) years of supervised release. Mr. Grimes' conduct was significantly more egregious than Mr. Montante's. Mr. Grimes repeatedly engaged in actual physical sexual intercourse with a minor and produced numerous visual depictions of the same. Further, Mr. Grimes' actions demonstrate a violent/abusive propensity.

6.   **United States of America vs. Anthony Weiner**
     (Southern District of New York Case No.: 17-CR-00307-DLC-1)
     21 MONTHS IMPRISONMENT; 3 YEARS SUPERVISED RELEASE

Mr. Weiner (a political figure in public spotlight), with a history of inappropriate sexual activity, was sentenced to twenty-one (21) months in prison with three (3) years of supervised release for sending/exchanging sexual photographs and engaging in inappropriate sexual discussions with a fifteen (15) year old girl (age known) over the course of several months.

7.   **United States of America vs. Jared Fogle**
     (Southern District of Indiana Case No.: 1:15-CR-00159)
     188 MONTHS IMPRISONMENT

Jared Fogle acted as a spokesperson for Subway in the past and operated a charitable foundation for children.  The charging documents in this case indicate that Mr. Fogle engaged in sexual intercourse with numerous minors, paid minors to engage in sexual intercourse with him, sought out other minors to engage in sexual intercourse with, sought, received, and transferred a large number of items of child pornography (of numerous minors), and participated in surreptitiously recording children (some as young as six years old) showering, changing, etc. (and actually did so for an extended period of time) for purposes of producing visual depictions of the same for his viewing pleasure.  Mr. Fogle plead to conspiracy to distribute/receive child pornography and distribution/receipt of child pornography and received a sentence of one hundred eighty-eight (188) months (fifteen years).

Mr. Fogle was in a position of authority and abused his status to engaged in the conduct at issue.  Mr. Fogle's actions were egregious and Mr. Montante should not receive a comparable sentence.

8.     **State of Michigan vs. Charles Pugh**
       (Wayne County Circuit Court Case No.: 16-006750-01-FC)

Mr. Pugh was a local TV personality and politician.  Upon information and belief, Mr. Pugh "enticed" and "groomed" a minor male (14 years old), who was a guest on Mr. Pugh's TV show.  It was alleged that Mr. Pugh used his position of authority to facilitate and further the relationship between he and his minor victim.  Mr. Pugh engaged in a physical sexual relationship with the fourteen (14) year old over a period of time.  Mr. Pugh received a sentence of five (5) years to fifteen (15) years.

As indicated by the above, a sentence within the guideline range is not proportionate and should not be imposed.  Defendant seeks imposition of a sentence below the applicable guideline range and requests that this Court sentence him to no more than the mandatory minimum of fifteen (15) years.  Defendant would alternatively argue that the mandatory minimum sentence of fifteen (15) years is nonetheless excessive and not proportionate to the conduct at issue, and thus, Defendant requests that this Court fashion a proportionate sentence below the mandatory minimum.

## CONCLUSION AND REQUESTED RELIEF

For the reasons set forth herein and in Defendant's initial Sentencing Memorandum, Mr. Montante requests that this Court sentence Mr. Montante to no more than the mandatory minimum of fifteen (15) years incarceration.[8]  A within guideline sentence is "greater than necessary" to accomplish the purposes of sentencing set forth in 18 U.S.C. § 3553(a). Mr. Montante does not deserve to spend a majority of his adult life incarcerated

---

8.     Defendant would also request that this Court waive any fines and/or any other monetary assessments, impose the least restrictive terms and conditions of supervised release, and recommend that Mr. Montante be housed at a facility, which would allow Mr. Montante's family to conveniently access and visit him (*i.e.*, Milan FCI).

because he fell in love with a single girl, who purported to be of legal age, over the internet.


CAMILLA BARKOVIC (P-78254)
Attorney for Defendant
25805 Harper Avenue
St. Clair Shores, Michigan 48081
E-mail: camillabarkovic@gmail.com
Telephone: 586/773-2120

Dated:        November 27, 2017

## CERTIFICATE OF SERVICE

I hereby certify that on November 27, 2017, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will send notification of such filing to all parties of record, including Assistant United States Attorney Margaret Smith.

_____
CAMILLA BARKOVIC (P-78254)
Attorney for Defendant
25805 Harper Avenue
St. Clair Shores, Michigan 48081
E-mail: camillabarkovic@gmail.com
Telephone: 586/773-2120