UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,                               CRIMINAL NO. 16-cr-20576

v.                                           HON. STEPHEN J. MURPHY

RANDY NIBUNGCO MONTANTE,

      Defendant.

_____/

### Government's Supplemental Sentencing Memorandum

      With new, retained counsel, Defendant Randy Montante filed a sentencing memorandum two days before the hearing, making various arguments in favor of a downward variance. (Doc. 42). This Court ordered an independent psychological evaluation by Dr. Dennis Sugrue, and ordered the United States to respond to the Defendant's second sentencing memorandum. (Doc. 43: Order).

      For the reasons stated in the original sentencing memorandum, as well as here, the United States still believes a sentence of **262–327 months'** incarceration is "sufficient, but not greater than necessary, to comply with the purposes of sentencing set forth in 18 U.S.C. § 3553(a)." *United States v. Vowell*, 516 F.3d 503, 512 (6th Cir. 2008).

I.      **Defendant's version of events contains several factual errors**

The United States previously submitted to the Court the exhibits containing various chat logs between Defendant and MV-1. They were submitted under seal with the United States' response to Defendant's motion for bond, and are incorporated here for reference.

    A.      **MV-1 did not hold herself out as 18 years old for the "entire course" of her communications with Defendant.**

No one disputes that MV-1 indicated that when she first encountered Defendant online, she said she was eighteen years old. (Doc. 16: Det. Hrg. Tran, PgID 87). And, if she had continued to pretend to be an adult, perhaps the outcome of the case might be different[1]. But she did not. As noted in the United States' initial sentencing memorandum, MV-1 tried telling Defendant her true age, and he would continually brush her off.

MV-1's mother confronted Defendant on July 21, 2016, bluntly confronting him that MV-1 was underage. Undeterred, Defendant continued to pursue MV-1. Between July 22 and 23, 2016, Defendant and MV-1 (not an undercover) exchanged over 100 messages on Twitter, this time, with explicit instructions from Defendant on how MV-1 should hide her activities from her parents. They also discussed her age. Again, MV-1's mom found out, and confronted Defendant. And again,

---

[1] But, under 18 U.S.C. § 2251(a), production of child pornography, knowledge of age is not an element or an affirmative defense. It is a strict liability offense.

Defendant continued to pursue MV-1, this time, on Skype messenger. After the <u>second</u> time MV-1's mother discovered Defendant talking to MV-1 and confronted him, she turned MV-1's accounts over to law enforcement. And, Defendant still continued to pursue MV-1, continued to seek sexually explicit images/videos, and still ignored the warnings from MV-1's mother that she was calling the police. Defendant himself corroborated the evidence found in this case: "in the last month [of the relationship], I was apprised of her age and it wasn't what she initially put forth and I still requested images and video of sensitive content." R.39: Plea Hrg. Tr., PgID 521.

    **B.**    **Montante was not "enticed" by law enforcement.**

In another attempt at mitigation, Defendant claims that law enforcement "enticed" him into criminal behavior. Hogwash. There is zero evidence to support that Montante walked away from this behavior, and law enforcement somehow entrapped him back.[2] A review of the chat logs between the undercover officer (posing as MV-1) and Defendant show a renewed motivation to engage MV-1 in sexually explicit conduct for the purpose of creating child pornography. At no time did Defendant show anything less than giddy enthusiasm for his involvement with MV-1.

---

[2] The only hesitancy Defendant ever displayed was the prospect of getting arrested.

### C    Miscellaneous factual errors

In an attempt at mitigation, Defendant engages in blatant victim shaming by suggesting that MV-1 "was communicating with other adult individual(s) online," and that she "lied to other individual(s)" about her age . . . including another adult male named "Tyler." (R.42: Def. Mem., PgID 587). There is a reason that Congress passed a host of laws, regulations, and rules that prohibit the use of a victim's prior behavior or disposition: it is completely irrelevant. *United States v. Ogden*, 685 F.3d 600, 605–06 (6th Cir. 2012); FRE 412. Defendant's attempt to paint this victim as a girl who was "easy," or "asking for it," is precisely why these rules exist. But moreover, to infer MV-1 has been "been around the block," based on her forensic interview statement, is an incredible stretch. MV-1 did discuss chatting online with someone she thought to be a 19-year-old named Tyler. But she specifically stated that she "rarely talked" to him, and when she did "it wasn't anything like" her communications with Defendant, and she never sent him a single photo, much less anything sexual. (MV-1 interview #2, at 36:09). Moreover, undersigned counsel proffered to defense counsel that a review of MV-1's phone showed exactly zero other contacts of the same nature as Defendant.

And, after trying to smear MV-1's reputation, Defendant suggests that his relationship with MV-1 was a completely "isolated incident with unusual circumstances." Not so. According to MV-1's interview, she stated that Defendant

told her that he had talked with fourteen-year-old girls, explaining that he helped them because they were suicidal. And, forensic review of Defendant's thumb drive revealed approximately four additional females, appearing to be about middle-school age, like MV-1, in various stages of underclothes. Those females remain unidentified, but in context of the entire thumb drive contents and how Defendant categorized his images, it appears they may be additional girls he chatted with at some point in time.

As Defendant notes, he did pass the part of the polygraph exam on the questions regarding whether he deliberately downloaded or shared sexually explicit images of children. But, what Defendant failed to share with this Court, is that his results were "inconclusive" as to whether he ever requested a child to send him a sexual image, or whether he ever received sexual images of MV-1, knowing she was a minor.[3] It simply cannot be ruled out that Defendant's communications with MV-1 constitute a "one-off," based on the totality of the evidence collected.[4]

---

[3] This report can be made available to the Court.
[4] And, with Defendant acutely aware that MV-1's mother planned to go to police, he had every incentive to delete everything he had. In fact, based on his explicit, constant instructions to MV-1 on deleting their communications, as well as the fact that he totally wiped his own phone, we will never know the full extent of Defendant's behavior.

## II. Defendant's sentencing memorandum breaches the Rule 11 and references irrelevant cases in support of his request for 180-month sentence.

### A. Defendant agreed to the enhancement under 2G2.1(b)(4).

The day Defendant pleaded guilty, he agreed to the sentencing enhancements in the Rule 11 plea agreement worksheets. (R.25: Plea Agreement). This included a (+4) level enhancement for sadistic/masochistic conduct under USSG 2G2.1(b)(4). (*Id.*, PgID 365). In his most recent submission to this Court, Defendant now objects to this enhancement. Under Sixth Circuit precedent, this enhancement is shown by either offering evidence of a prepubescent child being penetrated, or by showing evidence that "portrays conduct that would cause an objective viewer to believe— without regard to the undepicted circumstances of the sexual encounter—that the pictured activity is inflicting physical pain, emotional suffering, or humiliation on that minor." *United States v. Corp*, 668 F.3d 379, 390 (6th Cir. 2012). Here, the videos that MV-1 made at Defendant's behest included: (1) having MV-1's dog lick MV-1's vagina; (2) having MV-1 penetrate herself vaginally and anally with a hairbrush; (3) having MV-1 use duct tape on her body, including her nipples, and a scene where MV-1 tears duct tape off her mouth and pulls her panties out of her mouth for the camera; and (4) having MV-1 masturbate her breasts while wearing

clothespins on her clitoris and nipples.[5] Any one of these videos objectively depicts the infliction of pain, and would qualify for the agreed-upon enhancement.

The fact that some of these videos were not recovered on Defendant's devices is of no moment. We know the pair video chatted frequently, if not daily, with MV-1 performing sex acts for Defendant, and those live-chats were never memorialized. Additionally, we know Defendant received more recorded videos/images than were recovered, as evidenced by his confessions. In fact, he described the duct-tape video described above in detail to the polygraph examiner. (Ex. A: Polygraph Report).

What ought to be concerning is the fact that Defendant now stands before this Court to be sentenced, and has all but renounced his confession to this crime. With new counsel, he has sought to unbind himself from his Rule 11 plea agreement, and reverse his pleas of guilt. Unsuccessful at those attempts, he now seeks to breach his Rule 11 plea agreement by arguing that his enhancements were incorrectly agreed upon. All of this has caused the United States countless hours of additional resources, including litigating a motion to withdraw from plea, meetings with new defense counsel, and forensic evidence review.[6] Defendant's reliance on "ineffective assistance of counsel" as an excuse is not only premature, but it is meritless in any

---

[5] These images and videos are available at the Court's request.
[6] Most recently, Defendant has now decided he does not wish to settle restitution with a stipulation and order, contrary to his previous position. This, too, must now be litigated before this Court.

event. Because of the Rule 11 plea agreement, the United States cannot seek to have this Court remove acceptance of responsibility points (although this Court can find on its own that Defendant failed to accept responsibility), but would ask this Court to consider Defendant's persistence in minimizing (if not outright denying) his conduct in the §3553(a) factors when imposing sentence.

### B. Defendant's cited cases are not similar.

The sentencing guidelines help to ensure, in part, that courts avoid unnecessary sentencing disparities. These largely concern national disparities, not local, but a court certainly can exercise discretion by reviewing local cases. *United States v. Presley*, 547 F.3d 625, 631 (6th Cir. 2008). But the cases cited by Defendant in support of a below guideline sentence are not similarly situated. While many plea agreement decisions (including in the below-cases cited by Defendant) concern information known only to the United States, or only between the parties and not publically known (such as cooperation, mental health issues, evidentiary issues, etc.).[7] But a brief analysis to distinguish these cases is in order:

**United States v. Zhao (EDMI 16-20575)**

Defendant's properly calculated guidelines (cross-referencing to production of child pornography) were 135-168 months. The United States sought a guideline sentence. The production evidence consisted of one video clip, less than 3 seconds long, with no sex acts.

---

[7] Undersigned counsel was the prosecutor in *United States v. Zhao* and *United States v. Grimes*.

### United States v. Mood (EDMI 08-20330)

Defendant sentenced to "time served" over United States objection. Within seven months, a violation petition issued for criminal sexual conduct. Mood is now serving a custodial term of up to 22 years 6 months with MDOC for sexually assaulting at least one child.

### United States v. McCoy (EDMI Northern Division 15-20074)

Defendant was convicted and faced punishment in three separate jurisdictions for his criminal behavior.

### United States v. Pinchot (EDMI 16-20006)

Defendant's prior convictions were as a juvenile. Like this case, the United States agreed to a sentencing cap of 30 years. The United States asked for a sentence of 300 months.

### United States v. Grimes (EDMI 15-20334)

Defendant pleaded guilty to production of child pornography. His properly calculated guidelines were 135-168 months, adjusted upward to 180 months to meet the mandatory minimum. He received 180 months.

Defendant's remaining cases, *United States v. Weiner*, *United States v. Fogle*, and *State of Michigan v. Pugh*, concerned completely different circumstances and are not relevant to this discussion. And finding cases that are exactly the same and Defendant's in this vein are difficult, not only because the facts are so specific, but also because the harm inflicted on the victims may vary as well. But, the United States can certainly proffer within-guideline cases this district of "online" child pornography offenders. *See United States v. DeHate*, 15-20037 (EDMI, sentenced to 365 months); *United States v. Wilcox*, 15-20682 (EDMI, sentenced to 420

months); *United States v. Liske*, 16-20574 (EDMI, sentenced to 276 months); *United States v. Fuller, et al*, 16-20239 (EDMI, three defendants sentenced to 420 months); *United States v. Fontana*, 14-20141(EDMI, sentenced to 360 months).

A sentence within the guideline sentence is presumed reasonable. This is because Congress has set the penalties, and the judicial branch has agreed that these guidelines are reasonable for cases that fall within the heartland of offenders. A minimum penalty of fifteen years is reserved for a minimum offender; that is, an offender who produced, perhaps, one image. This is not Defendant.

### III. Conclusion

The United States recommends a sentence of **262–327 months'** imprisonment.

Respectfully submitted,

DANIEL L. LEMISCH,
*Acting United States Attorney*

s/ Margaret M. Smith
Deputy Chief, General Crimes Unit
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI 48226
Phone: (313) 226-9135
E-Mail: margaret.smith@usdoj.gov
Bar No. P71413

Dated: December 20, 2017

## Certificate of Service

I hereby certify that on December 20, 2017, I electronically filed the Supplemental Sentencing Memorandum for the United States with the Clerk of the Court of the Eastern District of Michigan using the ECF system, which will send notification of such filing to the following via electronic mail:

Camilla Barkovic
Attorney for Defendant
camillabarkovic@gmail.com

*s/ Margaret M. Smith*
MARGARET M. SMITH (P71413)
Deputy Chief, General Crimes Unit
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI 48226
Phone: (313) 226-9135
E-Mail: margaret.smith@usdoj.gov