```
 1                  UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF MICHIGAN
 2                        SOUTHERN DIVISION

 3
     UNITED STATES OF AMERICA,
 4
                        Plaintiff,
 5        vs.                             Case No. 16-20576
                                          Hon. Stephen J. Murphy, III
 6        RANDY NIBUNGCO MONTANTE,

 7                        Defendant.
     _____/
 8
                             SENTENCING
 9
            BEFORE THE HONORABLE STEPHEN J. MURPHY, III
10                   United States District Judge
              Theodore Levin United States Courthouse
11                  231 West Lafayette Boulevard
                     Detroit, Michigan  48226
12                  Thursday, January 25, 2018

13   APPEARANCES:

14   For the Plaintiff           MARGARET M. SMITH
     United States of America:   United States Attorney's Office
15                               211 W. Fort Street
                                 Suite 2001
16                               Detroit, Michigan 48226-3220
                                 313-226-9135
17
     For the Defendant           CAMILLA BARKOVIC
18   Randy Nibungco Montante:    Camilla Barkovic, Attorney at law
                                 25805 Harper Avenue
19                               St. Clair Shores, Michigan  48081
                                 586-773-2120
20

21

22

23        To obtain a certified copy of this transcript, contact:
            Linda M. Cavanagh, CSR-0131, RMR, RDR, CRR, CRC
24                    Official Court Reporter
                (313) 234-2616 • www.transcriptorders.com
25
```

1

TABLE OF CONTENTS

2

<u>Page</u>

3

<u>SENTENCE ENHANCEMENT OBJECTION</u>:

4

Argument by Ms. Barkovic...........................5
Ruling by the Court................................5

5

Argument by Ms. Smith..............................6
Further Argument by Ms. Barkovic...................7

6

Further Argument by Ms. Smith.....................10
Further Ruling by the Court.......................13

7

<u>SENTENCING</u>:

8

Allocution by Ms. Barkovic........................18

9

Allocution by Defendant Randy Montante............21
Allocution by Ms. Smith...........................26

10

Comments by the Court.............................34
Comments by Mrs. Montante.........................35

11

Further Comments by the Court.....................37
Sentence of the Court.............................40

12

13

<u>EXHIBITS</u>

14

<u>Identification</u>                   <u>Offered</u>   <u>Received</u>

15

NONE

16

17

18

19

20

21

22

23

24

25

```
 1              Detroit, Michigan
 2              Thursday, January 25, 2018
 3                        —   —   —
 4              (Proceedings commenced at 11:11 a.m., all parties
 5              present)
 6              THE CLERK:  The Court calls Case No. 16-20576, United
 7     States of America versus Randy Montante.
 8              Counsel, please state your appearances for the
 9     record.
10              MS. SMITH:  Good morning, Your Honor.  Maggie Smith
11     appearing on behalf of the United States.
12              MS. BARKOVIC:  Good morning, Your Honor.  May it
13     please the Court, Camilla Barkovic appearing on behalf of Mr.
14     Montante who is present.
15              THE COURT:  Okay.  Good morning.  Everybody may be
16     seated.  Thank you, Gordon, and thank you, Ms. Ross, for being
17     here as well.
18              The defendant is here for his sentencing, and I would
19     invite Ms. Barkovic and Mr. Montante to approach the microphone
20     here and we can get started.
21              Morning, Mr. Montante.  How are you?
22              DEFENDANT MONTANTE:  Good morning.  I'm well.
23              THE COURT:  Okay.  You read the entire Pre-Sentence
24     Report along with any revisions that have been made to it along
25     with your lawyer, Ms. Barkovic, correct?
```

1         DEFENDANT MONTANTE:  Yes.

2         THE COURT:  Okay.  All right.  I understand that

3    there are no issues in dispute.  There has been a change of

4    counsel and quite a bit of litigation, and after the sentencing

5    memorandum came in from Ms. Barkovic prior to our last

6    sentencing date, I did order an exam from Dr. Sugrue, which he

7    conducted and provided a report on, but I just want to make

8    sure -- thank you, Gordon.  We had a trial in here yesterday

9    and we moved Ms. Smith's microphone but it's back now.

10        So Ms. Smith, no objections to the report, the

11   guideline range, the Offense Level or category or anything like

12   that?

13        MS. SMITH:  Your Honor, I do not, but I do recall

14   that the defense did file an objection in their sentencing

15   memorandum to the previously agreed-upon plus four enhancement

16   for sadomasochistic conduct in the offense.

17        THE COURT:  Okay.  All right.

18        MS. BARKOVIC:  That is correct.

19        THE COURT:  Okay.  Well, you're okay with the report

20   though, right?

21        MS. SMITH:  Yes.

22        THE COURT:  All right.  Okay.  The probation officer

23   did not receive a -- an objection from Mr. Schulman and nothing

24   was sent by Ms. Barkovic to her after the Pre-Sentence Report

25   came out.

1          I did read about the legal arguments that both

2    lawyers made regarding the enhancement, and do you want to make

3    that as an objection now, Ms. Barkovic?

4          MS. BARKOVIC:  Yes, Your Honor, I would.  I would

5    reiterate everything that was set forth in my supplemental

6    sentencing memorandum as it relates to 2G2.1(b)(4)(A).  My

7    contention is there's been no evidence presented to establish

8    that the defendant had ever received any photographs,

9    recordings or other items of a sadistic or violent nature.

10         In addition, Your Honor, I would just note today that

11   I am also concerned about the scoring of 2G2.1(b)(6)(B)(i)

12   which requires the use of a computer.  My contention, Your

13   Honor, is that essentially the use of a computer is implied by

14   the nature of the production charge pursuant to which Mr.

15   Montante previously had pled guilty to, so I don't believe it's

16   an appropriate enhancement and I would ask the Court not score

17   it.

18         THE COURT:  Okay.  Well, I can speak to that and deny

19   it.  If you want to make a written post-sentencing motion or

20   argument with -- with case law, you can do that.  But I'm well

21   familiar with that particular objection and argument and we've

22   seen it before, and conceptually I agree with what you say

23   because you're making a double-counting argument, but legally I

24   must deny the objection because the use of the computer

25   contained within the offense along with the sentencing

1  enhancement has time and again been evaluated by the Sixth and

2  other circuits and it would be erroneous of me not to enhance

3  with the two points for the use of the computer, even though it

4  is subsumed within the offense conduct itself.  I understand

5  that, but I'm denying the objection because I think that's been

6  resolved legally in the past.

7          You want to speak to that, Ms. Smith?

8          MS. SMITH:  Your Honor, I would just point out that

9  the parties did have a Rule 11 Plea Agreement and these

10  enhancements were agreed upon --

11          THE COURT:  Right.

12          MS. SMITH:  -- over a year ago.

13          THE COURT:  Right.

14          MS. SMITH:  And I think I covered the 2G2.1(b)(4)

15  sadomasochistic --

16          THE COURT:  Well, we're not there yet.  I mean I

17  just -- I just said that on the law I -- I am overruling the

18  objection she made.  I agree, it was in the Plea Agreement, but

19  legally you agree that I'm -- I'm -- I'm correct based on my

20  recollection of the case law on the use of the computer

21  enhancement, right?

22          MS. SMITH:  Yes, Your Honor.  And I would also add

23  that the 2012 United States Sentencing Commission has indicated

24  that it purposely set offense levels lower to account for more

25  commonly applied enhancements such as the plus two for use of a

```
 1    computer.
 2              THE COURT:  Okay.  All right.  I appreciate that.
 3              Now, on the 2G2.1(b)(4) four-level enhancement, I
 4    read both what Ms. Barkovic had to say in her supplemental
 5    sentencing memorandum of November 27 and I also read Ms.
 6    Smith's response which was lodged on December 21, 2017 at pages
 7    7 through 9.  Both lawyers have cited U.S. vs. Zhao, Mood,
 8    McCoy, Pinchot and Grimes.  Ms. Smith distinguishes them from
 9    this case and contends that Weiner or Wiener, as you will, and
10    Fogle along with State of Michigan vs. Pugh are
11    distinguishable.
12              I've looked at everything and I'm ready to hear
13    anything else you want to say on the legal issue subsumed
14    within 2G2.1(b)(4), Ms. Barkovic.
15              MS. BARKOVIC:  Your Honor, I would just indicate that
16    there's been no evidence necessarily presented to this Court
17    which would establish that Mr. Montante solicited MV-1 to
18    engage in the alleged actions nor were any of those images or
19    recordings located on any of his devices.  Throughout the
20    course of the proceedings that has been a frequency -- excuse
21    me, frequently referenced issue by the prosecution, and the
22    bottom line is there is no record that he ever received them
23    nor is there a record that he solicited them from MV-1.
24              I would also indicate even if the Court were to find
25    sufficient evidence to indicate that he essentially did receive
```

1    those images or something of that nature, I would object

2    because I don't believe that what he may have received, if

3    anything, would be violent in nature, sadistic in nature.

4           I direct the Court to the case of *United States vs.*

5    *Corp.*

6           THE COURT:  Yes.

7           MS. BARKOVIC:  And in that case, Your Honor, the

8    Sixth Circuit essentially defined the buzzwords in the relevant

9    enhancement indicating that they're -- involved generally the

10   infliction of pain or humiliation, painful, coercive or abusive

11   images and other depictions of violence.  I don't believe any

12   of that was depicted here.

13          THE COURT:  Do you have Ms. Smith's sentencing

14   memorandum with you?

15          MS. BARKOVIC:  Your Honor, I don't know if I have it

16   with me.

17          THE COURT:  All right.

18          MS. BARKOVIC:  But I have reviewed it extensively and

19   I'm prepared to address it.

20          THE COURT:  All right.  The government cites *Corp*,

21   and I agree with both lawyers that that's the appropriate

22   standard, legal standard under which to look at the

23   enhancement, (b)(4).

24          At the bottom of page 6 of Ms. Smith's memo, she sets

25   forth four different videos that were made allegedly at Mr.

```
 1   Montante's behest and included four different behaviors that

 2   she argues were within not only the offense level conduct of --

 3   of 1(b)(4) but within the parameters of -- of Corp as well.

 4           Putting aside for the moment the ultimate question,

 5   what's the effect of him not having received them?  If -- if he

 6   wrote or Skyped or texted or said on video do this and she did

 7   and the government recovered these videos, which I don't think

 8   there's any dispute that they did, how does that get Mr.

 9   Montante out of the parameters of the enhancement?

10           MS. BARKOVIC:  Well, Judge, essentially it has to be

11   established that he was involved in that conduct in some

12   manner.  My contention is the discovery materials that I was

13   provided with do not sufficiently establish that.  We can go

14   through them individually, but bottom line is he never received

15   them according to the discovery materials obtained.  An

16   analysis via electronic devices was conducted.  There was not a

17   single one of those four videos located on any of his devices.

18           If the government wants this to be scored, then they

19   have to establish essentially that he was involved in the

20   production of these videos, and I don't believe that they can

21   do that and they've set forth nothing which conclusively

22   establishes or sufficiently establishes that.

23           THE COURT:  Well, but they do.  They set forth the

24   Plea Agreement where he signed and said, "I agree to the

25   worksheets at the end of the Plea Agreement."  And that
```

1    includes an enhancement for 2G2.1(b)(4), okay?

2         MS. BARKOVIC:  Your Honor, I'm aware of that.  That's

3    a whole nother issue as it relates to this defendant.

4         THE COURT:  All right.

5         MS. BARKOVIC:  Bottom line is the Court has a

6    obligation to ensure the guidelines are properly scored.

7         THE COURT:  All right.

8         MS. BARKOVIC:  And so I would ask that the Court

9    consider my argument in light of that obligation.

10        THE COURT:  All right.  Put aside the Plea Agreement,

11   Ms. Smith, it doesn't seem that Ms. Ross made findings in this

12   regard.  I -- I take you at your word that the four videos

13   listed at page 6 of your sentencing memorandum were ultimately

14   recovered by the FBI, but how -- how should I -- how should I

15   go in terms of the fact that Ms. Barkovic contends, number one,

16   that this was -- these materials were not provided by way of

17   discovery, and number two, her client never received them

18   during the offense conduct that he -- I take that back.

19   Paragraph 17 of the -- of the report indeed does list the

20   materials.  So the issue is in light, notwithstanding the Plea

21   Agreement, the defendant allegedly never received these nor

22   were they provided in discovery.  If you would like to speak to

23   that, go right ahead.

24        MS. SMITH:  Thank you, Your Honor.

25        Ms. Barkovic is incorrect on the facts.  First off,

1    the nature of the relationship between Minor Victim 1 and the

2    defendant was that of a sadomasochistic relationship, and

3    that's evidenced by not just what Minor Victim 1 said during

4    her interview, but there is a text message that we recovered

5    where the defendant says, quote, "I love dominating you and I

6    love how submissive you are."  Another quote, "Probably the

7    kinkiest was the clips, but I still remember when you put" and

8    I bracketed [sexual item] "in your back door."

9            Now, in addition to these text messages between Minor

10   Victim 1 and the defendant discussing this sadomasochistic type

11   activity, number -- video number (1) that's listed at the

12   bottom of page 6 in the government's memo was recovered off of

13   Minor Victim 1's phone.

14           Number (2) was --

15           THE COURT:  All right.  All right.  I -- I agree,

16   paragraph 7 says that forensics determine -- the report of Ms.

17   Ross that is -- that the videos you cite in your sentence

18   memorandum were on the minor victim's phone.  What I want to

19   know is -- it's her contention that they weren't provided in

20   discovery or that her -- her client never received them.  To

21   what effect is -- is that, if any -- if anything?

22           MS. SMITH:  Right.  And that's why I'm saying she's

23   incorrect.  I did an evidence review with Ms. Barkovic.  The

24   following was recovered on the defendant's thumb drive.  There

25   are videos of Minor Victim 1 penetrating herself vaginally and

1    anally with a hairbrush.  There are screen shots of Minor

2    Victim 1 using duct tape on her body, including her nipples.

3    He referenced the scene where Minor Victim 1 tears duct tape

4    off her mouth and pulls the panties out of her mouth for the

5    camera, he referenced that in his interview, and remnants of

6    Minor Victim 1 masturbating her breasts while wearing

7    clothespins were also on the thumb drive.  That was provided in

8    an evidence interview to Ms. Barkovic.  I sat with her while

9    she reviewed the evidence.

10              THE COURT:  All right.  Okay.  All right.  Okay.

11              MS. BARKOVIC:  And just to correct something, I did

12   do an evidence review, but the bottom line is that these four

13   images were obtained from a file that came from MV-1's phone,

14   not the defendant's devices.  And there are no communications

15   that I've been provided with where the defendant tells her to

16   go get the dog and do what's listed in this Pre-Sentence Report

17   in 17-B.

18              THE COURT:  All right.  Okay.  The -- the job of the

19   Court at this point is really very limited.  It's not to

20   determine whether or not the government provided discovery to

21   the defense, and it's not to determine whether or not he was

22   counseled and whether it was a good idea for him to agree to

23   the enhancement.

24              The simple question before the Court is -- and I --

25   you know, I -- I'm not going to beat around the bush.  If you,

1    Ms. Barkovic, and your client down the line decide that, you

2    know, there was ineffective assistance of counsel in another

3    context or whatever, you -- you are going to determine whether

4    or not that's something you want to pursue.

5           But in terms of sentencing, my job is to determine

6    whether or not the offense conduct subsumes the activity set

7    forth in the Pre-Sentence Report and whether or not that

8    activity falls within the ambit of 2G2.1(b)(4), and I find that

9    it does.  *Corp* says very clearly that if conduct would cause an

10   objective viewer to believe, without regard to the undepicted

11   circumstances of the encounter, that activity in a picture is

12   inflicting pain, emotional suffering or humiliation, then the

13   enhancement applies.

14          I believe that the four videos that the government

15   has lodged and that the probation officer listed were no

16   question made by MV-1 within the relationship that she was

17   having online with the defendant, that they were indeed, at the

18   very minimum, humiliating, likely to cause emotional suffering,

19   and in a couple of cases definitely would cause physical pain.

20          So I respect the argument of the defense and I

21   appreciate the argument of the United States, but overall I

22   find that the probation officer did not err in her establishing

23   the four-point enhancement under 2G1. -- excuse me, 2G2.1(b)(4)

24   for sadistic and masochistic conduct as interpreted by *United*

25   *States vs. Corp*, 668 F.3d 379.  That will be my ruling on that

Sentencing • Thursday, January 25, 2018

1    objection.

2         And I think with that, we are ready to make the

3    Court's findings on the Offense Level, guideline range, et

4    cetera, correct, Ms. Smith?

5         MS. SMITH:  Yes, Your Honor.

6         THE COURT:  Ms. Barkovic?

7         MS. BARKOVIC:  Yes, Your Honor.  Thank you.

8         THE COURT:  All right.  Thank you very much.  The

9    Offense Level is 39, the Criminal History Category is I.  The

10   guideline range at that level, advisory, is 262 to 327 months.

11   That does match up with the Plea Agreement that was negotiated

12   by the parties.  There's no ability for the Court to impose

13   probation at that level.

14        There's no agreement as to any fine, but I do think

15   I'm going to avoid imposing a fine because there is a -- a

16   restitution issue that we need to determine, number one, and

17   there's no ability for this defendant to pay a fine.  Number

18   two, there's a special assessment that's agreed upon and a

19   five-year mandatory supervised release term minimum.

20        So that's the findings of the Court in terms of what

21   the sentencing options are going forward.

22        Before we get to allocution, let's resolve

23   restitution.  The United States has filed a memorandum with

24   support, although the letters were not signed.  Ms. Barkovic

25   points out, and I -- I agree, that the letters of the

1    therapeutic expert, the counselor and psychologist, Ms.

2    Pfeiffer, as well as the victim's statement, which I don't

3    think is actually out of -- out of line given the privacy

4    issues, were not signed.

5             But regardless of that, Pfeiffer says we're going to

6    need $42,000 worth of future therapy to get this victim back on

7    her feet.  There are approximately 1,900 or more dollars worth

8    of costs dealing with transportation, and then there's another

9    $2,200 worth of costs that were incurred as a result of prior

10   therapy.  Add all that up, you get $47,127 as restitution that

11   this victim -- or that this defendant is responsible for under

12   the statute to be paid to the victim of this crime.

13            Is there anything I'm missing or anything else you

14   want to say as to restitution, Ms. Smith?

15            MS. SMITH:  No, Your Honor, except that I do have the

16   original letter from the counselor that is signed.  I'm not

17   sure how -- I think what happened was the counselor e-mailed me

18   the first copy and then -- and then sent the second one through

19   the mail.

20            THE COURT:  I suspected as much, but as long as

21   you're willing to say that this redacted letter at page 2 of

22   Exhibit 3 of your supplemental restitution memo is accurate,

23   I'm -- I'm -- I'm -- I won't quibble with that, I'll accept it,

24   but -- but that's where I'm at.  Anything else?

25            MS. SMITH:  Nothing further, Your Honor.  I think I

1   covered it in my briefing.

2          THE COURT:  All right.  You did.  Thank you very

3   much.  I read your brief as well.

4          Any further argument on restitution, Ms. Barkovic?

5          MS. BARKOVIC:  No further argument, Your Honor.  I'd

6   rely on my brief.

7          THE COURT:  Okay.  Great.  Restitution in personal

8   offenses or non-financial crimes is relatively rare.  For

9   whatever reason -- well, not for whatever reason, but for well

10  thought out legislative reasons the Congress enacted mandatory

11  restitution for sexual exploitation of children.  That's

12  Section 2259 of 18 U.S. Code.

13         *Evers*, which is another Sixth Circuit case, 669 645

14  from 2012, makes restitution mandatory and directs the

15  defendant to pay the victim the full amount of the victim's

16  losses.  Losses have been construed in the full amount to

17  include costs incurred by the victim for psychiatric and

18  psychological care, lost income, attorney's fees, other losses,

19  things of that nature.

20         Again, I understand the objection and the briefing of

21  Ms. Barkovic that was very well done and much appreciated by

22  the Court as good advocacy for a defendant, but this is not the

23  type of -- in fact, I -- I think the government's estimates

24  have actually been somewhat conservative.  I've seen in other

25  cases other expenses asked for and ultimately agreements

1    reached, but -- but I think that transportation, prior

2    counseling fees and future counseling fees are all within the

3    ambit of the order.  And *Paroline*, which is a Supreme Court

4    case from 2014, encourage district courts to award restitution

5    and certainly didn't -- didn't hold back on the application of

6    2259.  So I am going to find a $47,127.60 amount for

7    restitution.

8            I will say if the future -- if the future counseling

9    is not obtained, and in my view it should be but that's not up

10   to me, if it's not obtained, the victim is not entitled to a

11   windfall.  This is restitution that's to go to pay for certain

12   expenses and that's why I'm awarding the amount.

13           So that's going to be my finding on restitution.

14   Anything else from Ms. Smith or Ms. Barkovic on that particular

15   issue?

16           MS. SMITH:  No, Your Honor, except that I attached a

17   proposed order to my request as well.

18           THE COURT:  Okay.  I don't know if we need to sign

19   that, but I will enter restitution as part of the criminal

20   judgment in the case.

21           MS. SMITH:  Thank you.

22           MS. BARKOVIC:  Nothing further, Your Honor.  Thank

23   you.

24           THE COURT:  Okay.  Thank you both.

25           With that, the defendant has the right to make any

 1    remarks as to the appropriate sentence in the case, as to any

 2    issues in -- in mitigation that he'd like to say.

 3              First of all, I'd like to hear from his lawyer, Ms.

 4    Barkovic, as to the appropriate sentence.  I've read

 5    everything, including the sentencing memoranda, the sentencing

 6    requests, and probably most compelling to me -- I have a lot of

 7    respect for Dr. Sugrue.  I've met him and I'm familiar with his

 8    work.  He's appeared in other cases here.  I think he's a

 9    really straight shooter, unlike some of these people you get

10    out there these days, and he -- he did a -- a good report.

11    I've read that.

12              So whatever you'd like to say as to sentence I'm

13    pleased to hear at this point.

14              MS. BARKOVIC:  Thank you for the opportunity, Your

15    Honor.

16              Before the Court today is Mr. Randy Montante.  He's

17    25 years old.  At the time of the offense he was 23 years old,

18    Your Honor.

19              Unfortunately Mr. Montante had a tough time engaging

20    in a relationship with a female in real life so he turned to

21    online services in an attempt to meet people, socialize and

22    hopefully get a girlfriend.

23              He met MV-1 online.  I know the Court's aware of it,

24    but she purported to be an 18-year-old female, created an

25    elaborate back story.  He fell in love with her, Your Honor.

1     Over the course of six or seven months they talked daily,

2     extensively, and their discussions were not just sexually

3     oriented discussions.

4           He was confronted by her mother eventually and made a

5     poor decision by resuming contact with her after a period of

6     non-contact.

7           This has been one of the -- and will be one of the

8     hardest things in his life as well as his family's life, Your

9     Honor.  He has a great background.  He's got no criminal

10    history whatsoever.  He comes from a hard-working immigrant

11    family who's always done nothing but support him and be there

12    for him.  They sent him to a Catholic high school.  He was

13    short, a few credits short of completing his undergraduate

14    degree through the University of Michigan Dearborn.  He was

15    working, and, in fact, he volunteered in his spare time.  We

16    submitted several letters to this Court.  All of those letters

17    attest to his character, and I'd ask that the Court take that

18    into consideration with respect to sentencing.

19          He's had no contact with MV-1 since the inception of

20    this matter, has no interest in ever doing so again.  That ties

21    into the report prepared both by Dr. Shiener and Dr. Sugrue.

22    Dr. Sugrue and Dr. Shiener both opine that Mr. Montante is not

23    a pedophile, that there is little to no recidivism risk, and

24    it's unlikely that he suffers from any compulsive sexual

25    behavior.  Obviously we are before the Court on a sexually

1   oriented offense, so I believe that those findings by two

2   qualified professionals are very, very relevant.

3          The government asks that the Court impose a sentence

4   within the guideline range which starts at the bottom, Your

5   Honor, at 22 and a half years.  That is extreme.  What I'm

6   asking the Court to do, given his background, history, all of

7   the information that's been set forth in the pleadings filed

8   with this Court, I'm asking for 15 years.  The Court's aware

9   he's going to be on the sex offenders registry upon release.

10  If the Court imposes a sentence of 15 years, he'll be close to

11  40 years old at the time he is released.  It's unlikely that

12  this will ever happen again.  It was an isolated incident

13  involving one female and an emotional connection.  So I'd hate

14  to see this gentleman spend 28 years in prison, 25, 22 or even

15  15, Your Honor.  I understand that the Court's bound by the

16  minimum, but I'm asking that the Court sentence him to no more

17  than 15 years and that the Court consider sentencing him to a

18  facility that is in this area so that his family who he has a

19  great relationship with can visit him on a frequent basis.

20          THE COURT:  Okay.  All right.  Thank you very much

21  for those remarks and for all your hard work on the file in

22  support of your client's matter.  We're grateful and it's

23  appreciated.

24          Mr. Montante, you as well have the opportunity to

25  speak personally to the Court as to any remarks you'd like to

1    make as to the sentence, the offense conduct or any mitigating

2    factors as well.  I'm glad to hear from you.  Go right ahead.

3            DEFENDANT MONTANTE:  Okay.  Good morning, Your Honor.

4    My name is Randy Montante.  I'd like to say a few things and

5    talk about the type of person I am.

6            I'd describe myself as a healthy young adult who --

7            THE COURT REPORTER:  Wait, wait, wait.  Sir, you've

8    got to slow down.

9            DEFENDANT MONTANTE:  Oh, sorry.

10           THE COURT REPORTER:  You've got to slow down, start

11   over.  You'd describe yourself as a healthy young adult who..."

12           DEFENDANT MONTANTE:  Yes.  Who prior to my arrest

13   volunteered at the Filipino American Community Center, worked

14   part-time hosting at a restaurant, and worked on finishing my

15   history and political science degrees at University of Michigan

16   Dearborn.

17           When I wasn't out with friends, you could usually

18   find me at my grandmother Naning's [sic] house with the rest of

19   my extended family.

20           THE COURT REPORTER:  Slow down.

21           DEFENDANT MONTANTE:  Despite all the support and

22   happiness my family and friends provided, I was still a

23   slightly depressed 23-year-old struggling to finish college.

24   My close friends were all starting careers or getting married

25   and moving forward with their lives.  I felt like I was being

Sentencing • Thursday, January 25, 2018

1   left behind.

2           I have a lot to be thankful for, but the one thing I

3   never had was a significant other.  In this day and age, if you

4   can't find someone offline, you have the option to look online

5   as well, and that's what I did.  I frequented the adult chat

6   site Omegle and had many good experiences on it in the form of

7   stimulating, intellectual and entertaining conversations with

8   people from all over the world.  This is where I met MV-1.

9   From the start she told me that she was 18 and consistently

10  maintained and reinforced[the that point by telling me that she

11  drove, babysat, and eventually that she was going to be

12  attending Rutgers College in the fall.

13          Initially the conversations we had were light and

14  basic but happened on a regular basis.  Over time the frequency

15  of our correspondence increased.

16          Early on, I confirmed my age as 23 and asked her if

17  the five-year gap was a problem.  She told me it wasn't.  I

18  asked her multiple times.  I did not want to make her feel

19  uncomfortable.

20          On multiple occasions I told her that she didn't need

21  to talk to me if she didn't want to and that she could cut off

22  all conduct, I just wouldn't talk to her anymore.  She replied

23  that it was her choice and that making -- that talking to me

24  made her incredibly happy.  It made me just as happy to hear

25  that.

Sentencing • Thursday, January 25, 2018

```
1           She is intelligent and well -- as well as texted in
2    complete sentences, even using commas correctly, something not
3    many people are able to do.
4           I enjoyed talking to her.  She supported me through
5    difficult times such as when my maternal grandmother passed
6    away in May of 2016 and also expressed wholehearted interest in
7    me as a person, and I was there to support her whenever she had
8    a bad day and wanted to talk about it.  It felt nice to be a
9    shoulder to cry on, even if it was digitally.
10          She is the first person I ever romantically cared
11   about and I'd never experienced that before.  I fell in love
12   with her but I never told her that.
13          During our last stretch of contact her mother became
14   involved and warned me away, disclosing that her daughter, who
15   I had seen over Skype, talked to on the phone and texted every
16   day for half a year, was 12.  It was the most shocking thing I
17   had ever heard.  It caught me off guard and I couldn't believe
18   it, I didn't believe it.  Nothing she previously told me gave
19   me any warning that she was anything other than 18.  I spoke
20   harshly to her mother and I deeply regret it.  I was so blinded
21   and emotionally distraught that I couldn't think straight and I
22   panicked, leading to my current incarceration.  I did not keep
23   my emotions, some of which I had never felt before, in check.
24          This whole situation has me overwhelmed.  I was
25   naive.  No one in my family or anyone I'm associated with has
```

1   ever gone through something like this so I had no idea what I

2   was getting myself into or what I got myself into.

3           And the facts of the case were never fully discussed

4   by my prior attorney and he never explained the potential

5   implications of this case.  I could never fathom that the scope

6   of my mistake would literally take my entire life away from me.

7   Now I'll have to spend the rest of the prime of my life in

8   prison and the rest of my life regretting it as well as dealing

9   with the lasting repercussions.

10          This whole ordeal has been harder for my family to

11  bear than it has been for me.  The strain and difficulty this

12  situation has placed on them is something I'll never be able to

13  resolve and must carry with that -- that with me as well.

14          This is to say nothing of her, MV-1, and her family

15  and the embarrassment and hardship she and they have been put

16  through.  I'm deeply ashamed and would beg their forgiveness.

17  She's an intelligent, compassionate and overall thoughtful

18  human being.  She doesn't deserve to go through this.  No one

19  deserves to go through this.

20          I pray she's able to move past this and find

21  happiness and success in life.  I hope she forgets about me.

22  It would have been best if I had never talked to her.  It's

23  done nothing but caused needless pain, sadness and anguish to

24  everyone involved.

25          I have not yet been able to help better the world

1     through any meaningful work or career.  This being the case, I

2     resolve to make the most of my time in prison being productive.

3     My plans to continue are finish my college degrees and also

4     learn a trade such as plumbing or electrical work.  My goal is

5     to become a published author while incarcerated.

6             Aside from this, I would -- I also plan on

7     maintaining good physical health and mental health.  This would

8     be aided by allowing me to continue to use e-mail services to

9     better communicate with my loved ones, especially those who

10    live too far to visit often.

11            Being designated and sent to Milan's Federal

12    Correctional Institution would also be ideal as it would allow

13    my family and friends to continue to visit regularly.  They're

14    my support system here, and when I'm released they'll be my

15    support system as well.

16            I wish to better myself through this and move on in

17    the best way I possibly can.  I understand and acknowledge that

18    through my actions I failed in my responsibility as an adult.

19    I never intended to hurt or endanger anyone, most of all her.

20            I'm truly sorry for all that has happened.  Though I

21    have inconvenienced the Court and put both her family and mine

22    through a horrible experience, I ask for forgiveness.  I

23    apologize for my actions.  I know that my great remorse can't

24    fix the sins of the past, what's done is done, but I beg your

25    leniency and that of the court during the sentencing so I may

1  eventually pay back my debt to society.  Thank you.

2       THE COURT:  All right.  Thank you very much, Mr.

3  Montante, for those heartfelt remarks.  The Court appreciates

4  them very much.

5       And the Court also recognizes the people of the

6  United States for any remarks they'd like to make.  The United

7  States gets an opportunity to speak as to the appropriate

8  sentence as well.

9       Two things, Ms. Smith.  The first is whether MV-1,

10  who is the victim here, would like to be heard or make any

11  statement today.

12       And secondly, I have read your sentencing memorandum

13  initially filed as well as in reaction to the second sentence

14  memorandum Ms. Barkovic filed, so I'm familiar with all the

15  materials in the file as well.

16       Go right ahead.

17       MS. SMITH:  Your Honor, Minor Victim 1 is not here

18  today and neither are her parents, and I'd like to address that

19  in part of my allocution.

20       THE COURT:  Sure.

21       MS. SMITH:  I did receive a victim impact statement

22  that I provided to the Court.

23       THE COURT:  I -- I -- I did read that, yes, and the

24  remarks of the mother.  I'm sorry to interrupt, but I -- I do

25  want the record to be clear that I received all that and read

 1    it as well.

 2            MS. SMITH:  Thank you.

 3            THE COURT:  Go right ahead.

 4            MS. SMITH:  And as part of my allocution when I get

 5    there, I will read some portions of that letter.

 6            There are four points that I want to make this

 7    morning, understanding that the Court is very familiar with the

 8    facts of this case and that the Court has thoroughly read all

 9    of the filings which at times have been voluminous and -- in

10    nature.

11            So the United States, Your Honor, is asking for a

12    sentence within the guidelines, which is 262 to 327 months.

13            The first point I want to make is about the nature

14    and circumstances of this offense.  Now, the defendant has had

15    a very long time to write a very eloquent and well-spoken

16    allocution to this Court, but the evidence in this case

17    demonstrates that this was not simply a case of mistaken

18    identity or a case of Romeo and Juliet.  This victim was

19    13 years old, not 17, not 16, she was 13.

20            She told him, and we have evidence as early as June

21    that she told him, she was 13.  He didn't want to believe it,

22    he denied it.  He continued to ignore her when she tried to

23    bring it up.  Her -- she doesn't look like an 18-year-old, she

24    certainly wasn't acting like an 18-year-old, and his -- her

25    mother told him not once but twice that she was a child.  And

1    instead of saying good-bye, which is what a 23-year-old should

2    have done, he decided to try to teach her to hide her

3    activities with him and even explained to her that, quote, "I'm

4    going to talk to you like you're 18 and in college because if

5    the cops find out, I'm going to jail for at least ten years.

6    And if they ask you, you have to tell them I thought you were

7    18 and that you told me you were the whole time because if I

8    can deny it, I'll be fine.  I researched it."

9            Your Honor, this is a serious offense.  This

10   defendant took advantage of a very young child.  He was

11   undeterred by her mother's message twice to him.  He was

12   undeterred by the threat of law enforcement for which Minor

13   Victim 1's mother told him she was going to the police, and he

14   was undeterred by the fact that this child was just 13 years

15   old.

16           Secondly, the history and characteristics of this

17   defendant warrant a guideline sentence.  As this Court knows, I

18   am also very familiar with Dr. Sugrue's work.  He appears on

19   behalf of the defense in very, very many child exploitation

20   cases.  And I would point out that I have read his report, and

21   I think that the Court is -- or should review this in the light

22   by which it was obtained.  Much of the information relies

23   exclusively on the defendant's version of the events, and most

24   certainly at the point in time that Dr. Sugrue interviewed him,

25   the defendant had every incentive to present himself in the

1    most favorable light, and, in fact, Dr. Sugrue picked up on

2    that in the Minnesota Personality Test where he indicated that

3    it appeared that the defendant was trying to make himself look

4    better.

5            What Dr. Sugrue did discover is that it is consistent

6    with the defendant's actions here, and that's that the

7    defendant has a sexual interest in young preteen and teen

8    girls, and that's evidenced not just by his relationship with

9    Minor Victim 1 but we also found pictures that he had saved to

10   a thumb drive of four unknown individual girls who appeared to

11   be around the same age as Minor Victim 1.

12           Now, most predictive of repeat or escalating

13   offenses, the United States Sentencing Commission has -- has

14   opined with both the defense and prosecutors agreeing that

15   instead of looking at recidivism rates in hard core numbers,

16   the better assessment for future dangerousness is two factors:

17   the first is personality, meaning antisocial behavior, and the

18   second is sexual deviancy.  That is most accurately tested by

19   the Hare Psychopathy Checklist.

20           Now, Dr. Sugrue gave the -- the preliminary

21   checklist, he didn't do the full checklist, but I can proffer

22   to the Court that Dr. Sugrue's evaluation found that the

23   defendant had narcissistic tendencies.  That is considered an

24   antisocial behavior that would support an increased risk for

25   re-offense or escalating offense.

Sentencing • Thursday, January 25, 2018

1       Secondly, there are sexual deviancy factors present

2  here, and sexual deviancy is defined as any abnormal source of

3  sexual attraction.  Here we have a sexual attraction to young

4  children, preteen and young teens, and we have a sexual

5  attraction to sadomasochistic type activity.

6       Both of the factors that the Hare Psychopathy

7  Checklist indicates are risk factors are present in this case.

8  And like I said, the reason why science is moving towards these

9  behavioral tests is because tests like the Static-99 are

10 unreliable.  They're unreliable because they only rely on

11 convictions, and there is a long way from criminal behavior to

12 an arrest to a conviction to prison time.

13      The third point, Your Honor, has to do with just

14 punishment and deterrence because, as the Court knows, this

15 isn't just about the defendant's psychological mis --

16 psychological condition.  This is about all of the 3553(a)

17 factors.

18      Congress has set the minimum punishment of 15 years

19 for minimal offenders.  What that means is one -- one picture,

20 one snapshot in time of sexually explicit behavior of a child

21 warrants a 15-year custodial sentence.

22      And we have so much more than that here.  We have a

23 period of months where the defendant engaged this child both to

24 create videos, to create pictures, and to spend hours upon

25 hours upon hours through the night, through the day of her live

Sentencing • Thursday, January 25, 2018

1    streaming, performing sexual acts on herself.

2         And in the face of being told that this -- her --

3    that his conduct was illegal, he turned to manipulate her into

4    hiding her activities from her parents, the people that she

5    should trust the most, the people that should be giving her a

6    soft spot to fall.  He turned her against them and instructed

7    her to delete everything she was doing and to hide her

8    activities.  And, in fact, the defendant himself deleted so

9    much of his activity that all we are left with is a sliver of

10   time between the defendant and Minor Victim 1.

11        There is also something to be said about the

12   congressional mandate of the United States Sentencing

13   Guidelines and the mandatory minimums.  Congress has set forth

14   the United States Sentencing Commission who has had every

15   opportunity to review and make revisions to certain

16   enhancements and guideline ranges.  The guideline range is set

17   to capture the heartland of offenses for a particular -- for a

18   particular statute violation, and in this case Congress has set

19   this penalty at 262 to 327 months.  The defendant has presented

20   nothing that would take him outside the heartland of cases, and

21   therefore that makes this a guideline sentence.

22        Finally, Your Honor, I want to speak a bit -- a bit

23   about this victim and her family.  This case was opened in 2016

24   and I have personally gotten to know the victim and her family.

25   They have been very active in participating in the prosecution

1    of this case.  Minor Victim 1's mother was anguished about

2    whether or not she should fly in today and appear before you.

3    She had a very real concern that the media might publish a

4    story because the media had initially covered this case from

5    the onset.  Out of fear that her daughter's identity may be

6    revealed, she decided not to appear today.

7           And so while I recognize that the defendant has a

8    number of family members here to support them, I would urge the

9    Court to consider the fact that if this -- if this victim were

10   not afraid, if perhaps we were in her jurisdiction, I would

11   have my side of the courtroom filled with family members that

12   are concerned for this child.

13          And in lieu of appearing today, Minor Victim 1's

14   mother submitted this statement that I just want to read a

15   couple of -- a couple of things to help capture what it's like

16   to be on this side, what it has been like for the victim and

17   her family.

18          THE COURT:  I -- I -- you go ahead and do that, of

19   course, but I assume this came from what you have attached to

20   your sentence memorandum?

21          MS. SMITH:  Yes.

22          THE COURT:  Okay.  Go ahead.

23          MS. SMITH:  Yes.  She writes, quote, "She was just

24   coming out of the sixth grade when he took advantage of a

25   fragile, innocent, young girl.  He tried to alienate her from

1    her family and make her dependent upon him.  He robbed her of

2    her innocence.  We've watched a young girl who was a straight-A

3    honor student, on the softball team, singing, dance, doing

4    plays, gymnastics and outgoing start to shut down, lock herself

5    in her room, cry and withdraw from her family and friends.  She

6    felt all alone, scared and afraid.  He robbed her of her

7    childhood, her happiness, her mental well-being.  He robbed her

8    from us.  She is emotionally, physically and mentally

9    traumatized.  We have been in counseling since we found out

10   what happened.

11        "I need the Court to show her that her courage to

12   come forward was not in vain.  We need the Court to show her

13   that her courage to report him and -- to us and the law was not

14   in vain, that he will never be able to go near or hurt children

15   ever again.

16        "You have no idea how hard this has been, and the

17   only solace for our family will be that he is punished to the

18   fullest extent of the law.  I cry every night.  There isn't a

19   day that this has left us, not for a single minute.  The pain

20   is life-lasting and we are managing it the best we can."

21        And, Your Honor, I can proffer to the Court that

22   Minor Victim 1's mother contacts me on a weekly basis, and in

23   times where we have court hearings, she contacts me on a daily

24   basis.  This family is very interested in receiving justice for

25   this child, and in the United States' view, justice is a

1    sentence of 262 to 327 months.

2          THE COURT:  Okay.  Very good.  Thank you as well for

3    those remarks on behalf of the United States, Ms. Smith, which

4    were very compelling as well.

5          Okay.  I have spoken to all the financial issues in

6    the case.  I'm going to analyze the 3553(a) factors, state the

7    sentence and then give the lawyers for both sides an

8    opportunity to make legal objections before the sentence is

9    finally imposed.

10         It is, of course, the most difficult of cases because

11   we have an individual who was -- had a bright future, falling

12   into severe criminal activity and visiting upon the victim and

13   her family the severe consequences that Ms. Smith just set

14   forth.

15         The fact that there's a mandatory minimum of 15 years

16   speaks to the Congress's will on behalf of the people of the

17   United States of how these types of offenses should be -- your

18   client's mother wants to say a few words?  I just got a note.

19         MS. BARKOVIC:  I apologize.  I thought the Court had

20   authorized it.  I would have referenced it.

21         THE COURT:  Well, I'm happy to hear from -- from the

22   mom.  I would -- yeah, I would have wanted to do that like

23   between your speaking and your client's speaking, but I'm --

24   I'm fine.  It's -- it's -- it's fine if the mom wants to speak.

25         MS. BARKOVIC:  Thank you, Judge.  I appreciate it and

1    I apologize for the miscommunication.

2              THE COURT:  Yep.  Okay.  Good morning to you.

3              MRS. MONTANTE:  Good morning, Judge Murphy.

4              THE COURT:  What's your name?

5              MRS. MONTANTE:  I am Ruth Nibungco Montante.

6              THE COURT:  Okay.  Go ahead.

7              MRS. MONTANTE:  Randy's mother.

8              THE COURT:  Yes, go right ahead.

9              MRS. MONTANTE:  On behalf of my husband along with

10   our family and friends, I stand before this Court to ask for

11   utmost consideration and your most sincere compassion for my

12   son.  The past year has been the most difficult time of my

13   life.  I never envisioned this to happen to our family.  My

14   only son, Randy, is definitely not the person being portrayed

15   in this case.  He is a good son.  He's never been in trouble

16   with the law prior to this case.  He is a wonderful brother to

17   his sister.  It has been very difficult time for us as a family

18   dealing with his more than a year of absence.

19             Randy is a compassionate, loving and honest person.

20   He is trustworthy and respectful, especially to his elders.  He

21   gets along well with anyone he meets.  Randy is generous with

22   his time for besides taking college courses and working

23   part-time, he still managed to volunteer his services at the

24   Filipino Community Center.  He helped with the youth program

25   that taught the culture and history of the Philippines.  He

1    spent most Sunday afternoons at the center.

2            Randy also helped with a friend who was a coach of a

3    high school soccer team.  His friend would call him when he

4    needed extra hands in manning the gates during scheduled games.

5            We as a family also volunteered our time selling

6    50/50 raffle tickets at the Ford Field for Cure For Cancer

7    during the Lions games.

8            When the World Medical Relief Office was moving to a

9    new location in Southfield, Randy volunteered with the building

10   renovation by cleaning bricks that were demolished from

11   partitions.

12           Randy also did chores for neighbors, single mother, a

13   single working mother of two school-age children, assisting

14   with yard work, mowing the lawn, shoveling snow and trimming

15   trees without being asked.

16           These are only a few of the numerous instances that

17   Randy showed his willingness to help when needed.

18           One thing that Randy had difficulty with was finding

19   a sincere partner that he can share his time and activities

20   with.  He's character -- characterized as gregarious in social

21   gatherings but extremely shy when it comes to meeting girls.

22   But once these girls get to know him, he becomes their good

23   friend.  He wanted a girlfriend but was not able to move

24   forward and ended up going online to find one.

25           Randy is short of a few credits to graduate a major

1    in his -- world history and political science, aspiring to be a

2    professor one day.

3            My son was looking for love, for acceptance.

4    Unfortunately he made a mistake, his first offense against an

5    established law of this country.  Randy is very sorry for what

6    he has done.

7            It has been very difficult to go on living with the

8    thought of my son incarcerated.  I am reaching to you, please

9    find appropriate rehabilitation that my not -- my son needs at

10   this time.  I plead for leniency, Your Honor, to please give

11   Randy a chance to redeem himself of this mistake.  Give him a

12   chance to be productive member of the community.  I hope that

13   the right rehabilitation will help Randy.  He is not a danger

14   to anyone, most especially to young people.

15           Thank you, Your Honor, for allowing me this

16   opportunity to speak before this Court for my son.

17           THE COURT:  Okay.

18           MRS. MONTANTE:  Thank you.

19           THE COURT:  Thank you.  You're very welcome.  Thank

20   you for those remarks and the time and emotion that you put

21   into preparing them as well.

22           So I'll start over again.  I'm going to talk about

23   the 3553(a) factors and provide my justification for the

24   sentence that both lawyers may object to if they decide to.

25           I don't know where I started, but my view obviously

1    is this is the most difficult of cases, and I think I did say

2    you have a young man, law abiding, with a future and

3    contributing, along with the devastation to a family that we

4    just heard Ms. Smith speak in detail about, and now, of course,

5    we have the devastation to the family of Mr. Montante, the

6    defendant, who -- from whom's [sic] mother we heard.

7            Fifteen years is an extensive prison term for any

8    crime, and the Congress has recognized this to be among the

9    worst of them by imposing a mandatory term of 15 years for the

10   reasons that Ms. Smith talked about.  I think that the Congress

11   wants to penalize Internet video pornography produced, enticed

12   and distributed by minors because these types of situations

13   arise from them and the emotional devastation that the victims

14   feel.  I'm not the least bit unmindful of that.

15           Moreover, the Sentencing Commission urges and highly

16   recommends that federal judges take these types of crimes even

17   more seriously because of the scientific underpinnings of what

18   the lawyers and Dr. Sugrue have -- have addressed in terms of

19   the severe consequences of online video criminal behavior with

20   children and the effect it has on them going forward.

21           I'm not unmindful that 262 months is a guideline and

22   therefore a reasonable sentence that I could -- could give and

23   effectively have no appeal from.

24           I am going to vary somewhat and I'm not going to give

25   the minimum, which is 15 years, that -- that, quite honestly,

1    the probation office recommended in this particular case and

2    they see a lot more than I do, but I'm not going to go to 262

3    either for a couple of reasons which I'll explain now.

4          Ms. Smith in her sentencing memorandum accurately

5    states that 15 years would be appropriate for a first-time

6    offender with the most minimum of offense conduct.

7    Notwithstanding that, this individual, Mr. Montante, did not

8    offend before, he has no prior criminal involvement, and he got

9    involved in this when he was not much out of his youth either.

10         Accordingly, I think there's room for punishing this

11   conduct, deincentivizing it in the future, but still giving him

12   a likelihood of rehabilitation if we say all right, I'm not

13   giving you 262 months but I am giving you a serious term to

14   punish your conduct and to deter future behavior.

15         One of the most compelling things I -- I see in the

16   case is that the defendant did not take the material and sell

17   it or give it to others.  I do believe that he was involved in

18   a skewed, inappropriate -- I hate to use psychological words

19   because I'm not a psychologist, but manic relationship that he

20   got fully carried away with, but it was very severe based on

21   the evidence that I saw along with the age that the girl had

22   disclosed and that her mother got involved in which led to

23   devastation there.

24         There's no good sentence I can give in this case, but

25   I've tried to approximate the incentives I think I can give for

1   rehabilitation and punishment in a variance of some sort along

2   with a very serious term that would tell this defendant that

3   the behavior he engaged in was intolerable and at the same time

4   tell society that these types of crimes are not being taken

5   anything less than seriously, at least by this federal judge.

6          Accordingly, pursuant to the Sentence Reform Act of

7   1984, the Court, having considered all the sentence guidelines

8   and factors laid out in 18 USC, Section 3553(a), hereby commits

9   the defendant, Randy Montante, to the custody of the U.S.

10  Bureau of Prisons for a term of 210 months.

11         It's further recommended that the defendant be

12  designated to an institution with a comprehensive drug

13  treatment program, and I believe he should be placed at an

14  institution where he can get help, therapy and recovery from

15  the behaviors that created him or caused him to engage in -- in

16  these crimes.

17         I would be very happy to recommend his incarceration

18  at FCI Milan, and I think the Bureau of Prisons should strongly

19  consider placing him there because his mother, his father and

20  the rest of his family give him a great deal of support, but I

21  also think that any institution that has intensive treatment

22  for rehabilitation of his sort of crime should be -- he should

23  be placed there primarily.

24         Upon release from imprisonment, the defendant shall

25  be placed on a supervised release term of five years.

Sentencing • Thursday, January 25, 2018

```
 1              The defendant may and will pay a special assessment
 2    of a hundred dollars along with a $5,000 special assessment
 3    mandated under 18 USC, Section 3014(a)(3).  Those special
 4    assessments are due immediately.
 5              I'm going to institute a restitution order of
 6    $47,127.60 pursuant to the legal ruling I made earlier.
 7    Accordingly, the defendant, while in custody, must participate
 8    in the Inmate Financial Responsibility Program, IFRP.  I'm
 9    aware of the requirements of that program.  I approve a payment
10    schedule of the program that's appropriate to this case and
11    hereby order the defendant's compliance with it.
12              No fine, no costs of incarceration, no costs of
13    supervision will be imposed due to the defendant's lack of
14    financial resources.
15              Mandatory drug testing will be ordered again because
16    of the -- his history of abuse that we saw in the Pre-Sentence
17    Report.
18              Supervised release.  While on supervision, the
19    defendant shall abide by the standard conditions adopted by the
20    U.S. District Court for the Eastern District of Michigan and he
21    shall comply with the following special conditions:
22              Due to the personal history, the characteristics of
23    the instant offense and the other factors clearly set forth in
24    the Pre-Sentence Report, the defendant shall participate in a
25    program approved by the Probation Department for substance
```

1    abuse.  That may include testing to determine if the defendant

2    has reversed -- reverted to the use of drugs or alcohol.

3             If necessary while on supervised release, the

4    defendant shall participate in a program approved by the

5    Probation Department for mental health counseling.

6             He shall comply with the requirements of the Sex

7    Offender Registration and Notification Act.  That's known as

8    SORNA and is recorded at 42 USC, Section 16901.  He'll do that

9    as directed by the probation officer, the Bureau of Prisons and

10   any state sex offender registration agency in Michigan or

11   wherever he ends up residing on supervised release, where he

12   works, is a student, or here in Michigan where he was convicted

13   of the qualifying offense.

14            Mr. Montante shall provide his probation officer with

15   accurate information about all computer systems, hardware,

16   software, passwords, Internet service providers and other

17   computer materials that the defendant has potential access to

18   on supervised release and abide by all rules of the U.S.

19   Probation Department's Computer Monitoring Program.

20            He shall only access a computer approved by the

21   probation officer.

22            He must consent to the probation officer conducting

23   periodic, unannounced examinations of all computer systems,

24   which may include computer monitoring software, at the

25   defendant's expense.

1              For the purpose of accounting for all computer

2     hardware, software and accessories as well as computers

3     themselves, the defendant must submit his person, residence,

4     computer and vehicle to a search conducted by the Probation

5     Department at a reasonable time and manner.

6              Mr. Montante must inform other residents of the

7     premises in which he resides that his computer may be subject

8     to search pursuant to the condition I just laid out.

9              The defendant shall provide a probation officer with

10    access to any requested financial information, including

11    billing records for the telephone, cable, Internet, cell phone,

12    satellite, et cetera.

13             Mr. Montante will be required to successfully

14    complete sex offender diagnostic evaluations, treatment and

15    counseling programs and polygraph examinations as directed by

16    the probation officer.  Reports pertaining to sex offender

17    assessments, treatments and polygraph examinations shall be

18    provided to his probation officer.  As directed by the Court,

19    the defendant shall pay all or a part of the costs of the

20    diagnostic evaluations, treatment or counseling programs, and

21    the polygraph examination is based upon their ability to pay.

22             The defendant shall not purchase, sell, view or

23    possess images in any form of media or live venue that depict

24    pornography, sexually explicit conduct, child erotica, child

25    nudity or anything else, whether adult or child.  The defendant

1    shall not patronize any place where any such material or
2    entertainment is available.
3            He shall not associate with minor children under the
4    age of 18 except in the presence of a responsible adult who is
5    aware of the nature of this offense and background and who has
6    been approved by the probation officer.  Mr. Montante shall not
7    frequent places where children congregate on a regular basis.
8    Those types of places would include, but are not limited to,
9    schools, playgrounds, child toy stores, video arcades and
10   things of that nature.
11           Finally, Mr. Montante must submit his person,
12   residence, office, vehicles, papers, business or place of
13   employment and any property under his control to a search.
14   Such a search will be conducted by the probation officer at a
15   reasonable time and in a reasonable manner based upon
16   reasonable suspicion of contraband or evidence of a violation
17   of -- or condition of supervised release being present.
18   Failure to submit to such a search may be grounds for
19   revocation.  Mr. Montante shall warn any residents of the
20   premises where he lives that those presidents -- premises may
21   be subject to search.
22           That will be the sentence of the Court.  Is there any
23   reason other than what you've already argued to the Court why
24   the sentence that I stated should not be imposed, Ms. Smith?
25           MS. SMITH:  No, Your Honor.

Sentencing • Thursday, January 25, 2018

1          THE COURT: Okay. Thank you. And Ms. Barkovic?

2          MS. BARKOVIC: No, Your Honor.

3          THE COURT: Okay. The Court will order the sentence

4  that I stated earlier to be imposed after the statements of

5  counsel.

6          There is a waiver of the right to appeal the sentence

7  in this case. Under some circumstances, a defendant has a

8  right to appeal his sentence and plea, but here, Mr. Montante,

9  you have waived your right as part of the Plea Agreement. And

10  since you've entered into a Plea Agreement that waives your

11  right to appeal the sentence if I sentence below the guideline

12  range, that waiver is enforceable. If you believe that yours

13  is not, you can take that up with the U.S. Court of Appeals

14  directly.

15          The defendant is in custody and will be remanded to

16  the marshals' care for continued service of his sentence.

17          Both parties have copies of the Pre-Sentence Report.

18  I will furnish amended copies that address resolution of

19  disputed issues, although I think the report will be accepted

20  as stands so we won't need to revise it. Complete copies will

21  be ultimately prepared and sent to the Bureau of Prisons and

22  the Sentencing Commission. Any other copies are to be kept

23  strictly confidential.

24          That is the end of the proceedings from this side of

25  the bench. Anything else from the United States?

1    MS. SMITH:  Yes, Your Honor, I have two housekeeping

2    issues.  First, because the defendant was sentenced within the

3    parameters of the Rule 11 Plea Agreement, I move to dismiss

4    Counts 2, 3 and 4 of the indictment.

5    THE COURT:  Those are dismissed on your motion, and

6    if you could provide an order to us, we'll enter that on the

7    docket.

8    MS. SMITH:  Sure.  And secondly, I do not have any

9    objections to the sentence that I have not previously raised,

10   and I would ask that you ask defense counsel the same.

11   THE COURT:  I did do that and you both said no.

12   Okay.  All right.

13   Okay.  Mr. Montante, I -- I tried to be lenient but

14   also take into consideration the seriousness of what happened.

15   I wish you good luck.  This is bad for everybody.  I will say

16   that at the end of your term, I think you can do really, really

17   well, and I hope you stick to what you read to me in that

18   letter.  If you do, you'll be better off and everybody will be

19   better off for it.  All right.

20   Okay.  We'll be in recess now.

21   MS. SMITH:  Thank you.

22   THE COURT:  Thank you all very much.

23   DEFENDANT MONTANTE:  Thank you.

24   THE CLERK:  All rise.  The Court is in recess.

25   (Court in recess at 12:22 p.m.)

```
 1                         —  —  —

 2                 C E R T I F I C A T I O N

 3          I, Linda M. Cavanagh, Official Court Reporter of the

 4   United States District Court, Eastern District of Michigan,

 5   appointed pursuant to the provisions of Title 28, United States

 6   Code, Section 753, do hereby certify that the foregoing pages 1

 7   through 47 comprise a full, true and correct transcript of the

 8   proceedings held in the matter of United States of America vs.

 9   Randy Nibungco Montante, Case No. 16-20576, on Thursday,

10   January 25, 2018.

11

12

13                        s/Linda M. Cavanagh
                          Linda M. Cavanagh, RMR, RDR, CRR, CRC
14                        Federal Official Court Reporter
                          United States District Court
15                        Eastern District of Michigan

16

17

18   Date: March 27, 2018
     Detroit, Michigan
19

20

21

22

23

24

25
```