## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

RANDY NIBUNGCO MONTANTE,

       Movant,

                            Case No.: 2:16-cr-20576-1

v.

                            Hon. Stephen J. Murphy, III

UNITED STATES OF AMERICA,       U.S. District Judge

       Respondent.

## MOTION TO VACATE AND SET ASIDE SENTENCE, 28 U.S.C. § 2255

NOW COMES the above-named Petitioner, RANDY NIBUNGCO MONTANTE, (hereinafter "Movant, "Petitioner" or Mr. Montante) by and through his attorney, MARTIN J. BERES, moving this Honorable Court for relief pursuant to chapter 28 U.S.C. § 2255. Petitioner files a supporting memorandum of law and states as follows:

1.     That Petitioner was convicted on February 1, 2017, on his plea of guilty in U.S. District Court for the Eastern District of Michigan, Southern Division, at Detroit, the Honorable Stephen J. Murphy, III, U.S. District Judge presiding, of: Count 1: production of child pornography, in violation of 18 U.S.C. § 2251 (a).

2.     On January 25, 2018, Mr. Montante was sentenced to 210 months in custody to be followed by 5 years of supervised release.

1

3.      Petitioner did not appeal his conviction or sentence.

4.      Petitioner has not previously filed any petitions, applications, or motions with respect to this judgment in any federal court.

5.      This Motion to Vacate and Set Aside Sentence is timely filed, pursuant to 28 U.S.C. § 2255(f)(1).  This Petition is not second or successive in that none of the grounds for relief herein have been adjudicated on their merits in the previous district court proceeding.

6.      Petitioner is currently incarcerated, serving his sentence in the Federal Correctional Institution, P.O. Box 1000, Milan, Michigan 4816, being held as prisoner number #54920-039.

7.      That the grounds for relief requested are:

**I. Petitioner was denied his constitutional right to the effective assistance of counsel in district court proceedings.**

Supporting facts:

A.      Counsel failed to fully investigate his case or consult and provide Mr. Montante with necessary information to make a rational decision to proceed to trial or to plead guilty and insure an understanding, knowing and voluntary plea.  Counsel did not obtain complete discovery, and not discuss the discovery he did obtain with Mr. Montante.   Counsel did not discuss the strength's or weaknesses of the government's case or the feasibility of going to trial rather than to plead guilty. Instead of discussing a trial as an option counsel simply repeated that Mr. Montante would "get cooked" at a trial and that it was not ever a realistic option.  Mr. Montante was ill-informed of the strength or weakness of the government's case, the potential

witnesses or defenses to the charges, or the interplay of the statutory mandatory sentences with the advisory Sentencing Guidelines provisions. Counsel did not discuss the evidence, potential testimony or possible defense strategy or even the possibility of going to trial.

     B.    That retained counsel, Mr. Sanford Schulman, failed to adequately explain the consequences and risks of pleading guilty and provided Petitioner with false and misleading information about his sentencing exposure, BOP programs that he indicated would reduce or mitigate his custodial sentence all of which Petitioner relied upon and that induced him to accept the Rule 11 Plea Agreement. Mr. Schulman convinced Mr. Montante to sign the plea agreement in the courtroom under hasty and confusing circumstances. Counsel did not meet and discussing the specific provisions in the plea agreement such as the waiver of appeal clause. Mr. Schulman unequivocally recommended that Mr. Montante reject the Rule 11 plea offer, then without explanation or further discussion when in court, abruptly urged him to immediately accept the very same offer using scare tactics to coerce him into accepting the offer.

     8.    That the grounds for relief set forth above were not previously litigated in a direct appeal, or any prior post-conviction petition, application, or motion.

     9.    That Petitioner was represented by attorney Sanford Schulman of Detroit, Michigan, pre-trial, and in district court proceedings that lead to his plea of guilty and by Camilla Barkovic of St. Clair Shores, Michigan in sentencing proceedings in the district court.

     10.    That Petitioner has no other petition or appeal pending in any court as to the judgment under attack.

Petitioner requests the following relief:

a) Require Respondent to answer the allegations in this Petition and memorandum of law in support;

b) Hold an evidentiary hearing so that any and all non-record facts and factual allegations may be developed and established for this Court to properly address and review the issues set forth in this Petition;

c) Issue an order vacating and setting aside his plea and/or his sentence, and any other relief to which he may be entitled in this proceeding.

**Pursuant to the provisions of 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing information is true and correct to the best of my information and belief.**

Executed on: **July $\underline{23}$ , 2018**

**Randy Nibungco Montante**

Respectfully submitted:

/s/    *Martin J. Beres*
MARTIN J. BERES (P-26407)
Attorney for Petitioner,
Randy Nibungco Montante
42211 Garfield Road, #146
Clinton Township, Michigan 48038
(586) 260-8373
mjberes@gmail.com

DATED: **August 3, 2018**

4

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**RANDY NIBUNGCO MONTANTE,**

      **Movant,**

                                 **Case No.: 2:16-cr-20576-1**

**v.**

                                 **Hon. Stephen J. Murphy, III**

**UNITED STATES OF AMERICA,**       **U.S. District Judge**

      **Respondent.**

## <u>MEMORANDUM OF LAW IN SUPPORT OF</u>
## <u>MOTION TO VACATE AND SET ASIDE SENTENCE, 28 U.S.C. § 2255</u>

## <u>STATEMENT OF THE CASE</u>

**<u>The procedural history:</u>**

On August 10, 2016, Randy Nibungco Montante was named in a Criminal Complaint alleging that on or about February 1, 2016, to August 9, 2016, in the Eastern District of Michigan, the defendant engaged in the Production of Child Pornography, contrary to 18 U.S.C. § 2251(a); Received Child Pornography, 18 U.S.C. § 2252A(a)(2); and engaged in the Online Enticement of a Minor, 18 U.S.C. § 2422(b).

2. On August 12, 2016, Mr. Montante was detained at his initial appearance before U.S. Magistrate Judge Anthony P. Patti.

3. On August 23, 2016, Mr. Montante was charged in a four-count Indictment with, Count 1, Production of Child of Child Pornography, 18 U.S.C. §§ 225 l(a) and (e); Count 2, Coercion and Enticement of a Minor, 18 U.S.C. § 2422(b); Count 3, Receipt of Child Pornography, 18 U.S.C. § 2252A(a)(2); and, Count 4, Possession of Child Pornography, 18 U.S.C. § 2252A(a)(5)(B). The offense conduct occurred on or about February 1, 2016, to August 10, 2016. The indictment included a Forfeiture Allegation, under 18 U.S.C. § 2253.

4. On August 24, 2016, Mr. Montante was arraigned before U.S. Magistrate Judge Mona K. Majzoub. A plea of not guilty was entered.

5. On February 1, 2017, Mr. Montante appeared before U.S. District Judge Stephen J. Murphy, III and tendered a plea of guilty to Count 1 of the Indictment, pursuant to a written Rule 11(c)(1)(B) Agreement. The plea was accepted by the Court and the agreement was taken under advisement.

6. After a change of counsel the court denied Mr. Montante's motion to withdraw his plea of guilty (R.41, 11/22/17, Pg.ID 578). The district court ordered an independent psychological evaluation of Mr. Montante (R.43, Order, 12/1/17. Pg.ID 602). After completion and submission of the report prepared by Dr. Sugrue and sentencing and supplemental sentencing memoranda filed by the parties, on January 25, 2018, Mr. Montante, with an advisory Guidelines range at 262-327

months, was sentenced to a variant term of 210 months in custody to be followed by

5 years of supervised release (R.48, Judgment, 1/29/18, Pg.ID 642).

**The facts:**

These facts recited below are adapted from various law enforcement,

investigative and other reports, pleadings and transcripts previously filed in the

district court record, and the Presentence Investigation Report (PSR), pp 4-6, ¶¶ 8-

21).

On July 23, 2016, the mother of a 13-year-old female (Minor Victim #1

hereinafter, MV1) filed a complaint with the Bayonne, New Jersey, Police

Department claiming that an adult male, who was later identified as Randy

Montante, had been exchanging "naked photos" with her daughter. The mother

believed that the relationship had been ongoing since approximately February 2016

using social media websites such as Facebook, Instagram, and Skype. On July 21,

2016, the mother confronted Mr. Montante via text messaging, informing him of her

daughter's age and telling him to leave her daughter alone. After learning that Mr.

Montante and her daughter continued to communicate, the mother again confronted

him, this time through Twitter.

On July 26, 2016, detectives from Bayonne PD interviewed MV1. She

acknowledged having an online relationship with Mr. Montante and admitted that

that she had originally told him she was 18 years old. She later hinted to him that

she was 13, but whenever she did so, he would change the subject. MV1 stated that

the online relationship started with small talk but eventually evolved into Mr.

Montante asking her to send explicit pictures, and MV1 complying. MV1 said that

she and Mr. Montante eventually transitioned to Skype for video chats on a regular

basis. Both MVl and Mr. Montante would appear nude on camera, with MV1 being

totally nude, and Mr. Montante usually nude from the waist up.

On August 2, 2016, with the permission of MV1's parents, a police officer

assumed MVl's online identity. The police officer, posing as "MVl" stated to Mr.

Montante that MV1 was 13. He responded, "A good friend of mine said if you like

someone, and it's real, age doesn't matter." then discussed how illegal their

relationship was and stated he could go to prison if law enforcement "dug s**t up."

On that same night, the detective posing as "MV1", began to communicate

with Mr. Montante by way of his Skype account "doimakeurandy." He

acknowledged that MVl was 13 years old and expressed that he could go to prison.

Mr. Montante changed his KIK account to "kamylanta" and began to message the

detective thinking he was MV1.

In a later discussion, Mr. Montante asked "MV1" to send him some pictures.

Mr. Montante discussed pictures and videos that "MV1" had previously sent him.

Later, Mr. Montante told "MV1" he was horny and asked her to go into the

bathroom, lock the door, and produce a video for him using a highlighter. He referred to the act as "doggy style."

On August 4, 2016, Mr. Montante continued to converse with the detective posing as "MV1." He instructed her to tell her parents that she told him she was 18 years old and in college because if the "cops" found out the defendant would go to prison for ten years. He also instructed her to periodically delete their messages so they wouldn't be found. Later that same day he told her that he wanted to see her sexy body and face, that he wanted her to "play with her ass," and that he wanted to see her "doggy style." During the conversation he referred to several videos that MV1 had made and sent to him in the past.

A forensic review of the MV1's cellular telephone revealed the following videos dated July 17, 2016:

> a. IMG_3857.mp4- is a 9-second video which shows MVl nude from the nose down to just above the breasts. It starts with her having black duct tape over her mouth, she then peels the tape off slowly and pulls a pair of panties out of her mouth.
>
> b. IMG_3811.mp4- is a 15-second video ofMVl with her abdomen and vagina area exposed while lying down. There is a small black dog licking her vagina.
>
> c. IMG_ 4055.mp4-is a 15-second video of MVl sitting on the toilet inserting her fingers into her vagina several times.
>
> d. IMG_ 4056.mp4-is a 7-second video which shows MVl inserting her two fingers into her mouth and sucking them while pulling them out.

These videos were found on MV1's phone and not on any of Mr. Montante's electronic devices.  On August 5, 2016, a subpoena was served on Wide Open West

(WOW) Internet server to obtain subscriber information for "doimakeurandy" and "kamylanta." WOW subsequently provided Mr. Montante's name and address.

On August 10, 2016, a federal search warrant was executed at Mr. Montante's residence in Dearborn, Michigan. During the search, agents located a USB flash drive in a desk drawer that contained multiple videos and images of MV1 engaged in various forms of sexual activity. After being advised of his *Miranda* rights, Mr. Montante agreed to be interviewed. During the interview, he admitted that MV1 sent him sexually explicit images and videos, sometimes at his request.

Mr. Montante disclosed that he met MV1 on the text portion of the adult social media website Omegle. MV1's profile on Omegle was "18F NY." i.e., that she was an 18-year-old female living in New York.  Their communication evolved from texting on Omegle to KIK messenger, and later to Snapchat. MV1 then asked Mr. Montante to Skype her.

MV1 told Mr. Montante that she had a 4.0 GPA, had just graduated from high school, and was going to attend Rutgers in the fall.  She would be 19 years old in September. Mr. Montante described MV1 as being very promiscuous. He denied that she ever told him she was 13, but they would often joke about their ages, telling each other that they looked younger than they claimed to be.

They communicated over Skype for about 4 months, and Mr. Montante was falling in love with MV1. He remembers getting a message from MV1's mother in

late July stating that her daughter was only 13 years old. Mr. Montante later received

a Twitter message from MV1 apologizing to him about the situation.

Mr. Montante stated that while he had asked for some specific sexual images

and videos of MV1 prior to being contacted by her mother, he did not recall asking

for any more images or videos after being told she was 13 years old, even though he

continued to communicate with her.

He described MV1 as very submissive and would constantly ask him what he

wanted her to do for him. She sent unsolicited videos of her stimulating her anus

with a hairbrush as well as a video where she masturbated with a clothespin on her

clitoris. Mr. Montante explained that this type of sexual behavior reinforced in his

mind that MV1 was 18 because he believed that a 13-year-old would not know about

this type of behavior. MV1 also constantly made comments about having a part-time

job to pay for college and about making plans to live in the dorms at Rutgers in the

fall, and things like running into traffic while driving home from school. She told

him that she babysat for her cousin who she claimed was "actually" 13.

Even after MV1's mother claimed that MV1 was 12 or 13 years of age, Mr.

Montante still believed that she was 18 years old and that her mother was merely

being overprotective. In fact, Mr. Montante replied to MVl's mother that he

understood her motherly inclination to be overprotective, but begged her to let MVl

experience dorm life at Rutgers in the fall.

Mr. Montante explained that MV1 would text him every morning and they would Skype for long periods of time throughout the day. He never really had a girlfriend in the past and had fallen in love with MV1. He described himself as a "hopeless romantic." He was so devastated by being unable to communicate with MV1, that he began writing love letters daily, similar to the plot in the movie "The Notebook."

Mr. Montante stated that MV1 had forwarded him approximately 30 pictures and approximately 10 or more sexual videos of herself. He added that on approximately 3 or 4 occasions MV1 engaged in sexual activity for him live over a webcam. He stated that while MV1 often instigated the sexual images and often sent them unsolicited, there were other times in which he asked her to play with her breasts and vagina, to insert her fingers in her anus, and to clip clothespins on her nipples and then send him the images or video. Mr. Montante maintained that he was not aware that MV1 was actually 13 years old until she confirmed her age for him the week before his arrest.

After she had verified her age, Mr. Montante still asked MV1 for sexual images of her. He stated that he did not intend to do so, it just happened. He had asked her to send him images of her penetrating her vagina with her hairbrush and images of her penetrating her anus with her fingers or hairbrush. He knew it was

wrong to ask her to send these images once she told him she was 13, but he was in love with MV1 and missed seeing her.

Mr. Montante maintained that he did not seek out sexually explicit images of other children on the Internet and described such activity as "gross."

**The guilty plea:**

On February 1, 2017, Mr. Montante tendered a plea of guilty to Count 1, Production of Child of Child Pornography, 18 U.S.C. §§ 225 l(a) and (e) pursuant to a written Rule 11(c)(1)(B) plea agreement, before U.S. District Judge Stephen J. Murphy, III (R.39, Tr., 2/1/17, Pg.ID 510).

At the plea hearing the court determined that Mr. Montante was competent to enter a plea and that it was his own choice to plead guilty. He said that he had discussed his case and listened to the advice of his counsel.  Mr. Montante was advised of the trial rights he was waiving and the court questioned him directly about his knowledge, understanding, and intent to enter a plea of guilty. *Id.,* Pg.ID 509-11).

Mr. Montante was informed that with the statutory maximum was 30 years and his mandatory-minimum sentence would be 15 years and that he faced a minimum of 5 years of supervised release and the possibility of restitution. *Id.,* Pg.ID 513-14.  The court discussed the sentencing guidelines, and statute, 18 USC, §

3553(a), and verified that he had an opportunity to fully read over and discuss the plea agreement with his counsel. *Id.,* Pg.ID 515-16.

AUSA Smith summarized the key provisions of the plea agreement including that Mr. Montante's advisory Guidelines range was calculated at 262-327 months, that he would be required to pay a special assessment of $5,000 pursuant to the Justice for Victims of Trafficking Act of 2015, as well as restitution to identifiable victims. She noted that by pleading guilty he will be required to register as a sex offender under both federal and state law, and at sentencing the government would move to dismiss the remaining charges in the indictment. Mr. Montante waived any right he may have to appeal his conviction, and if the sentence did not exceed the maximum allowed in the agreement (327 months), he also waived any right he may have to appeal his sentence. *Id.,* Pg.ID 516-17. Mr. Montante agreed with the Rule 11 summary recited by the AUSA, and responded affirmatively to the court's inquiries regarding whether he was, "confident that your attorney fully explained this entire agreement and all these terms to you before you signed the Plea Agreement here in court today,". . . "and you want to go forward and live by the terms of the agreement." *Id.,* Pg.ID 518-19.

Mr. Montante agreed that his lawyer did not force him to plead guilty, that he was not threatened or coerced, made any other promises or agreements, or that no one had "done anything that you think is improper, illegal or unethical to get you to

plead guilty?" *Id.,* Pg.ID 520. Mr. Montante tendered a plea of guilty to Count 1 of

the Indictment and provided a factual basis in response to direct questioning by the

court.  The district court found Mr. Montante's plea to be knowing, understanding,

and voluntary and accepted it. *Id.,* Pg.ID 521-24.

**Post-plea proceedings:**

On August 18, 2017, attorney Schulman filed a sentencing memorandum with

the court for the sentencing hearing scheduled for September 7, 2017.  On August

29, 2017, Attorney Camilla Barkovic filed an appearance on behalf of Mr. Montante,

followed by a motion for substitution of counsel on August 31, 2017 (R.35, Pg.ID

462), which was opposed by the government (R.36, USA Response, Pg.ID 472). The

court granted Mr. Montante's motion (R.37. Order, 9/6/17. Pg.ID 483).

On October 18, 2017, Mr. Montante filed a motion to withdraw his plea of

guilty.  The government responded in opposition (R.40, USA Response, 10/27/17,

Pg.ID 529) and the court entered an order denying the motion (R.41, 11/22/17, Pg.ID

578).  After counsel filed a supplemental sentencing memorandum, (R.42, 11/27/17,

Pg.ID 581), the district court ordered an independent psychological evaluation of

Mr. Montante (R.43, Order, 12/1/17. Pg.ID 602).

**The sentencing hearing:**

At sentencing on January 25, 2018, the district court entertained and denied

Mr. Montante's objection to the four point enhancement for sadomasochistic

conduct under U.S.S.G. § 2G2.1(b)(4)(A), and two point increase for use of a computer U.S.S.G. § 2G2.1(b)(6)(B)(i), (R.49, Tr., 1/25/18, Pg.ID 652-62.

The court determined Mr. Montante's adjusted offense level to be 39, his criminal history level I, and his advisory Sentencing Guidelines range at 262-327 months. The court considered the arguments and briefing regarding restitution and assessed Mr. Montante with $47,127.60 of mandatory restitution under U.S.C. 18 § 2259. *Id.,* Pg.ID 664-65.

The court heard allocution from defense counsel requesting a variant sentence to the mandatory minimum of 15 years. *Id.,* Pg.ID 666-68. Mr. Montante addressed the court. *Id.,* Pg.ID 669-74, as did the government through AUSA Smith who read excerpts from MV1's mother's letter to the court and requested a within Guidelines sentence. *Id.,* Pg.ID 675-82. The court permitted defendant's mother, Mrs. Ruth Nibungco Montante, to address the court. *Id.,* Pg.ID 683-85.

The court reviewed the 3553(a) factors and articulated its reasons for a below Guidelines variant sentence of 210 months to be followed by 5 years of supervised release. Mr. Montante was ordered to pay a special assessment of $100 along with a $5,000 special assessment mandated under 18 U.S.C. § 3014(a)(3). He was ordered to pay restitution of $47,127.60, and required to register and comply with the Sex Offender Registration and Notification Act, 42 U.S.C. § 16901 and comparable state act. Other special conditions of supervised release were ordered. *Id.,* Pg.ID 685-92.

The government's motion to dismiss Counts 2, 3, and 4 of the indictment was granted by the court. *Id.,* Pg.ID 694. Additional facts will be developed in the legal argument portion of this brief, where necessary.

## LEGAL ARGUMENT

**I.      Mr. Montante was denied his constitutional right to the effective assistance of counsel in district court proceedings.**

**a.      Counsel failed to fully investigate Mr. Montante's case or consult and provide him with necessary information to make a rational decision about whether to plead guilty or to proceed to trial. Counsel's false and inaccurate representations to Mr. Montante induced his plea of guilty and precluded a knowing, understanding, and voluntary plea.**

**b.      But for the serious mistakes and errors of counsel, Mr. Montante would have declined to tender a plea of guilty and would have insisted on going to trial.**

**c.      A voluntary plea of guilty does not cure Ineffective Assistance of Counsel in the plea bargaining process.**

**d.      An evidentiary hearing is necessary for proper resolution of these issues.**

**Standard of Review:**

To succeed on an ineffective assistance of counsel claim, Petitioner must satisfy both prongs of the test set forth in *Strickland v. Washington,* 466 U.S. 668 (1984). He must show both that counsel's representation fell below an objective standard of reasonableness, *Strickland,* 466 U.S. at 688, and that there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.,* at 694. The right to effective assistance

of counsel extends to the plea-bargaining process, during which defendants are "entitled to the effective assistance of competent counsel." *Lafler v. Cooper,* 132 S.Ct. 1376, 1384 (2012) citing *Missouri v. Frye,* 132 S.Ct. 1399, 1407-08 (2012); *Hill v. Lockhart,* 474 U.S. 52, 57 (1985).

**Applicable Law:**

In *Massaro v. United States,* 538 U.S. 500 (2003), the Supreme Court held that "an ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal." The *Massaro* Court, 538 U.S. at 504-505 explained:

> "...In light of the way our system has developed, in most cases a motion brought under § 2255 is preferable to direct appeal for deciding claims of ineffective-assistance. When an ineffective-assistance claim is brought on direct appeal, appellate counsel and the court must proceed on a trial record not developed precisely for the object of litigating or preserving the claim and thus often incomplete or inadequate for this purpose. Under *Strickland v. Washington,* 466 U.S. 668 (1984), a Petitioner claiming ineffective counsel must show that counsel's actions were not supported by a reasonable strategy and that the error was prejudicial..."

The Sixth Circuit, subsequent to *Hill v. Lockhart,* has recognized claims of ineffective assistance of counsel both where the constitutionally deficient advice has caused a petitioner to plead guilty instead of going to trial e.g., *Griffin v. United States,* 330 F.3d 733, 736-37 (6th Cir. 2003), and where a petitioner has rejected a plea offer and proceeded to trial. *Turner v. Tennessee,* 858 F.2d 1201, 1205 (6th Cir. 1988).

A petitioner who claims that he was denied effective assistance of counsel in the context of a guilty plea proceeding must prove first that counsel rendered constitutionally deficient performance, and secondly, that there is a reasonable probability that but for counsel's deficient performance, the petitioner would not have pled guilty and would have insisted on going to trial. *Lockhart,* 474 U.S. at 59. Simply put, the petitioner must show not only that counsel was deficient, but that the outcome of the plea process would have been different with competent advice. *Lafler,* 132 S.Ct. at 1384 citing *Frye,* 132 S.Ct. at 1409-10.

As the Court explained in *Griffin v. United States,* 330 F.3d at 736-37: "...In the context of guilty pleas, the first half of the *Strickland* test is nothing more than a restatement of the standard of attorney competence. . . The second, or "prejudice," requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." . . . It is therefore easier to show prejudice in the guilty plea context because the claimant need only show a *reasonable probability* that he would have pleaded differently." *Id.,* (citations omitted, emphasis supplied).  Accord, *Sawaf v. United States,* 570 Fed.Appx. 544, 547 (6th Cir. 2014).

**Discussion:**

> a.      **Counsel failed to fully investigate Mr. Montante's case or consult and provide him with necessary information to make a rational decision about whether to plead guilty or to proceed to trial. Counsel's false and inaccurate representations to Mr. Montante induced his plea of guilty and precluded a knowing, understanding, and voluntary plea.**

Mr. Montante appeared at court on February 1, 2017, the date that he tendered his plea of guilty he was not expecting that he would be pressured into making this critical decision.  He was not prepared to do so because when he met with his trial counsel, Mr. Sanford Schulman, just a week earlier, Mr. Schulman unequivocally recommended that Mr. Montante reject the Rule 11 plea offer, then without any explanation or further discussion when in court, abruptly urged him to immediately accept the very same offer using scare tactics to coerce him into accepting the offer. All along, Mr. Schulman had counseled Petitioner that he should "wait it out" for a favorable plea offer from the government.  When he brought the plea offer to Mr. Montante, Schulman stated that he thought that the terms of the Rule 11 were overly harsh.  He recommended that Petitioner should make an "open plea" and essentially leave himself at the mercy of the court.  However, when in court just a few minutes before the hearing commenced, Schulman stated that he should plead guilty to the Rule 11 because the charges that were dropped "would make his supervised release easier to deal with."  He did not understand how or why this was the case, nor did he understand why Schulman completely changed his position. Petitioner was stunned

and befuddled, but seemingly had no other option.   This, combined with his

inexperience with the criminal justice system and ingrained trust for adults,

Schulman's self-professed expertise in federal criminal cases and the belief as

expressed by Schulman that he was acting in Montante's best interests, caused him

to sign the agreement in court. He responded to the questions of the court as if he

had a complete understanding of the terms and conditions of the plea agreement,

sentencing consequences and that he was fully informed of his rights and agreed that

this was his choice to do so.  In fact, he had only a few minutes to make a hasty and

uninformed decision.  When Schulman came to him with the Rule 11, he did not

discuss it in any detail because he recommended that Mr. Montante reject it.

Consequently, there was no need to spend a lot of time reviewing specific clauses

since Petitioner would not be subject to any of them.   As a result, the waiver of

appeal was not completely clarified, nor were any of the other clauses discussed in

detail.

It is important to state at the onset that Mr. Schulman was hired to investigate

the case and defend Mr. Montante against the charges – not to simply concede his

guilt and negotiate a plea bargain.   Apparently, Mr. Schulman decided on his own

that he would limit his actions to the latter.  Mr. Schulman and Petitioner had not

had any substantive conversations about the specifics of pleading guilty or going to

trial, or his possible defenses.  His case had been pending for some 6 months prior

to that date when he was suddenly rushed to a court hearing by his counsel to offer a plea.  Mr. Montante was not provided with any discovery in the form of proffer statements that would have revealed the substance of possible testimony at trial.  He simply had no way of knowing what these witnesses might testify about, the physical evidence that the government obtained and would use at trial and consequently, his ability to contest the potential evidence and present a defense.  Counsel failed to provide him with information that would have given him the ability to understand the relative strength of the government's case to make an intelligent decision about whether to plead guilty or proceed to trial.

As a result, Mr. Montante tendered a plea of guilty as strongly urged by counsel, to the Rule 11 Agreement, based more on the representations of counsel that he would receive a 15 year sentence but that he would serve nowhere near that amount of time, that he would not be held responsible for any of the conduct in the charges that would be dismissed, and that somehow his plea would make supervised release "less difficult."  Mr. Schulman never explained the elements of the crimes charged, interplay of the mandatory-minimum sentences of all charges and the advisory Sentencing Guidelines.  Schulman did not talk at all about restitution or fines, or all of the potential special conditions of supervised release.

As was noted by the Court in *MacLloyd v. United States,* 684 F.Appx. 555, 560 (6th Cir. 2017), "It is not enough that an attorney made the petitioner aware of

the offer. Rather, the attorney must review the charges with the defendant, including a discussion of the elements necessary for the conviction, the evidence that may support those elements, and the sentencing exposure that the defendant faces."

Mr. Montante never was informed that other than losing acceptance of responsibility points, he would have little to lose by going to trial. Mr. Schulman simply told him if he went to trial he would be "cooked" and get 30 years in prison.

A criminal defense attorney's failure to provide professional guidance to a defendant regarding his sentence exposure prior to the defendant deciding to accept a plea offer may constitute deficient assistance. *Moss v. United States,* 323 F. 3d 445, 474 (6th Cir. 2003) citing, *Magana v. Hofbauer*, 263 F. 3d 542, 550 (6th Cir. 2001). The right to counsel during the plea-bargaining process includes the right to be informed by counsel as to the range of penalties under the applicable guidelines. *Lafler v. Cooper,* 132 S.Ct. at 1384-85; *Smith v. United States,* 348 F.3d 545, 552-3 (6th Cir. 2003).

Prior to the change of plea hearing, Schulman had never discussed the possibility of going to trial because he indicated to Mr. Montante that, trial really was never an option. He simply told him that if he went to trial he would "get cooked." Even when counsel obtained discovery from the government, since there was no discussion of or preparation for trial it is clear that counsel did not use it to properly investigate the case or formulated any defense strategy. Clearly, early on

23

Schulman decided that he would not take this case to trial a decision that resulted in his shirking any responsibility to properly investigate the case and provide a fact based analysis to Mr. Montante for him to make an informed decision about whether to plead guilty of go to trial.

The Supreme Court has made clear in *Strickland v. Washington,* that "strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.  In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Id.* at 690-9.  The duty to investigate derives from counsel's basic function, which is " 'to make the adversarial testing process work in the particular case.' " *Kimmelman v. Morrison,* 477 U.S. 365, 384 (1986) (quoting *Strickland,* 466 U.S. at 690).  See also, *Wiggins v. Smith,* 539 U.S. 510, 521-25 (2003) (Decision of counsel not to expand their investigation beyond the PSI and the DSS records fell short of prevailing professional standards where further investigation would have revealed mitigating evidence was ineffective assistance of counsel); *Rompilla v. Beard,* 545 U.S. 374, 383-89 (2005) (Counsel's failure to review a court file and transcripts in a prior case that the prosecution used to support aggravating circumstances was prejudicial error).

"The constitutional guarantee [of the right to counsel] applies to pretrial critical stages that are part of the whole course of a criminal proceeding, a proceeding in which defendants cannot be presumed to make critical decisions without counsel's advice." *Lafler v. Cooper,* 132 S.Ct. at 1385. "An attorney undoubtedly has a duty to consult with the client regarding 'important decisions,' including questions of overarching defense strategy." *Florida v. Nixon,* 543 U.S. 175, 187 (2004).

Mr. Montante maintains that Mr. Schulman's failure to obtain or review all of the available discovery resulted in counsel being unaware of exculpatory evidence that would have revealed that he had no knowledge of MV1's true age and that he did not entice or coerce MV1 into performing any sexual acts. Mr. Montante also believes that a complete review of the discovery by counsel would have revealed that he did not teach or influence MV1 in any way to act in a lascivious manner. Ultimately this evidence would have provided a defense to the charges against him.

There are simply no facts in the record that show Schulman properly investigated the case to the extent that he could competently advise or recommend whether Mr. Montante should accept the Rule 11 offer or proceed to trial. The fact that Mr. Montante may have agreed with this strategy does not render his performance any less deficient under *Strickland's* objective reasonableness standard. The decision, and advice, was simply uninformed. "A purportedly strategic decision is not objectively reasonable 'when the attorney has failed to investigate his options

25

and make a reasonable choice between them.'" *Towns v. Smith,* 395 F.3d 251, 258 (6th Cir. 2005) (quoting *Horton v. Zant,* 941 F.2d 1449, 1462 (11th Cir. 1991)).

Counsel's failure to fully investigate, consult and discuss his case not only deprived Mr. Montante of his right to effective assistance of counsel, but it resulted in counsel advocating the only "strategy" of convincing him that he had no defense to the charges and that his only alternative was to plead guilty. A guilty plea is more than just an admission of guilt; it is a waiver of the constitutional right to a trial by judge or jury. As a result, a defendant must enter a guilty plea knowingly, voluntarily, and intelligently. *Brady v. United States,* 397 U.S. 742, 748 (1970). For a guilty plea to be valid, the defendant is required to understand the nature of the charges against him and the consequences of pleading guilty, including the possible punishments and loss of other rights. *Brady,* 397 U.S. at 749; *Bradshaw v. Stumpf,* 545 U.S. 175, 183 (2005). ("[R]elevant circumstances surrounding" a plea include the "possibility of a heavier sentence following a guilty verdict at trial," *Boykin v. Alabama,* 395 U.S. 238, 243 (1969).

Counsel also did not make efforts to renegotiate the Rule 11 Plea Agreement. Mr. Montante learned that the Rule 11 agreement – that Schulman advised him to reject -- was the first offer from the government. Instead of having further discussions with the government to modify the offer more favorably to his client, Schulman decided to ambush Petitioner with the ultimatum in court without any time

to make an intelligent decision to sign the agreement. That counsel decided Mr. Montante would not go to trial and went about imposing his will upon him to convince him to plead guilty, without any consultation was clear, since he had already made arrangements to have a presentence investigation interview with the USPO before the plea hearing (R.39, Tr., Change of Plea Hearing, 2/1/17, Pg.ID 524).

Meanwhile, counsel assured Mr. Montante that he could rely on him to obtain the best possible sentence not because of his efforts at investigating his case, but because of his professional skills and relationship with the court and AUSA. Counsel told Mr. Montante that if he pled guilty he would get a sentence at the mandatory minimum and that because of good time and BOP programs he would do 9-10 years. This advice upon which Mr. Montante relied proved to be false. Because his crime of conviction is classified as a "crime of violence" Mr. Montante, even if permitted to participate in any BOP programs that otherwise would result in a reduction of his custodial sentence, is not eligible for any such sentence reduction. Moreover, counsel never provided a letter or anything in writing to verify his efforts or negotiations nor did he obtain such a plea bargain. As a consequence Mr. Montante had no knowledge or understanding of the consequences of his guilty plea, his potential sentencing exposure, or of his chances of success at a trial. *Brady,* 397 U.S. at 748.

"Even deliberate trial tactics may constitute ineffective assistance of counsel if they fall outside the wide range of professionally competent assistance." *Martin v. Rose,* 744 F.2d 1245, 1249 (6th Cir. 1984) (quotations and citation omitted), accord, *Washington v. Hofbauer,* 228 F.3d 689, 704 (6th Cir. 2000). Defense counsel may be deemed ineffective for misadvising a defendant about the sentencing consequences of a plea offer." *Smith v. United States,* 348 F.3d at 553-54.

Here, trial counsel's deliberate tactics involved convincing Mr. Montante to plead guilty by false promises rather than undertaking a legal analysis of his case based on an effective investigation. He did not discuss the potential strengths or weaknesses of the case, the likely testimony, possible defenses or convey the pros and cons of proceeding to trial or the consequences of pleading guilty in a meaningful way to permit an informed, knowing and voluntary decision to plead guilty.

"A defendant challenging his attorney's conduct during plea bargaining, moreover, "must show that counsel did not attempt to learn the facts of the case and failed to make a good-faith estimate of a likely sentence. He must also show that his lawyer's deficiency was a decisive factor in his decision to plead guilty." *Pough v. United States,* 442 F.3d 959, 966 (6th Cir. 2006), quoting *United States v. Cieslowski,* 410 F.3d 353, 358-59 (7th Cir. 2005).

28

Counsel's ineffective performance resulted in the hasty and uninformed decision by Mr. Montante to plead guilty. It was based on a deficient and inadequate investigation that deprived him of the information necessary to make an informed choice, and was based on misinformation, to the extent that it renders Mr. Montante's plea involuntary. Mr. Schulman's deficiencies were a decisive factor in his decision to plead guilty. It would be manifestly unjust to allow Mr. Montante's conviction to stand, and this Court should grant his motion and vacate his sentence.

**b.      But for the serious mistakes and errors of counsel Mr. Montante would have declined to tender a plea of guilty and would have insisted on going to trial.**

Mr. Montante recognizes that he must show that, "but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart,* 474 U.S. at 59. This is an objective, not a subjective, test: the bare recitation of the fact that he would have gone to trial had he received different advice is not enough. "[T]o obtain relief on this type of claim, a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla v. Kentucky,* 559 U.S. 356, 372 (2010).

The Supreme Court has recently more fully discussed this requirement in *Lee v. United States,* 137 S.Ct 1958 (2017), where the defendant facing deportation tendered a plea of guilty on the advice of his counsel who erroneously told him that deportation was not mandatory. The Court recognizing that Lee had no viable defense to the charges and that it was highly likely he would lose at trial, nonetheless,

noted that where "counsel's deficient performance led him to accept a guilty plea rather than go to trial, we do not ask whether, had he gone to trial, the result of that trial "would have been different" than the result of the plea bargain. That is because, while we ordinarily "apply a strong presumption of reliability to judicial proceedings," "we cannot accord" any such presumption "to judicial proceedings that never took place." " *Lee,* 137 S.Ct at 1966, (citations omitted).

The *Lee* Court further observed:

"But common sense (not to mention our precedent) recognizes that there is more to consider than simply the likelihood of success at trial. The decision whether to plead guilty also involves assessing the respective consequences of a conviction after trial and by plea. See INS v. St. Cyr, 533 U.S. 289, 322–323, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001).When those consequences are, from the defendant's perspective, similarly dire, even the smallest chance of success at trial may look attractive. For example, a defendant with no realistic defense to a charge carrying a 20–year sentence may nevertheless choose trial, if the prosecution's plea offer is 18 years. Here Lee alleges that avoiding deportation was *the* determinative factor for him; deportation after some time in prison was not meaningfully different from deportation after somewhat less time. He says he accordingly would have rejected any plea leading to deportation—even if it shaved off prison time— in favor of throwing a "Hail Mary" at trial."

*Lee,* 137 S.Ct at 1966-67
(emphasis in original)

The Court dismissed the government's argument that Lee's decision to reject the plea bargain would not have been rational under the circumstances stating:

"We cannot agree that it would be irrational for a defendant in Lee's position to reject the plea offer in favor of trial. But for his attorney's incompetence, Lee would have known that accepting the plea agreement would *certainly* lead to deportation. Going to trial? *Almost* certainly. If deportation were the "determinative issue" for an individual in plea

discussions, as it was for Lee; if that individual had strong connections to this country and no other, as did Lee; and if the consequences of taking a chance at trial were not markedly harsher than pleading, as in this case, that "almost" could make all the difference. Balanced against holding on to some chance of avoiding deportation was a year or two more of prison time. See id., at 6. Not everyone in Lee's position would make the choice to reject the plea. But we cannot say it would be irrational to do so."

*Lee,* 137 S.Ct at 1968-69
(emphasis in original)

Here, the determinative issue for Mr. Montante was to minimize the mandatory prison time that he would be required to serve.  His Rule 11 Plea Agreement to Count 1, production of child pornography -- the most severe charge in the four count indictment-- carried a mandatory-minimum sentence of 15 years and a statutory maximum of years 30 years, and an advisory Guidelines range of 262-327 months.  Like the defendant in *Lee* he was in extremely dire circumstances.  If he pled guilty to this plea agreement or if he chose to proceed to trial he would face a mandatory-minimum sentence of 15 years. With this sentencing exposure he had little to lose by going to trial.   At worst he would have lost his acceptance of responsibility points and his advisory guidelines range would have increased.  It is clear that his prospects were as dire as the defendant in *Lee*.

His charges were the result of a long-distance internet relationship that Mr. Montante had with an underage female who represented herself to be an 18 year old from New York, just short of her 19th birthday, preparing to go to college at Rutgers. Mr. Montante fell hopelessly in love with this young lady and maintained a several

month relationship that included sincere feelings and concern exchanged between the two. There was significant emotional involvement between him and MV1. They communicated on a daily basis at length. This was not the crime of a predator surfing the internet for vulnerable child victims to coerce into sex acts for commercial distribution. There was no intent or effort to engage in any physical activity or even any effort to meet MV1 personally.

Montante learned from substitute counsel that Schulman did not have or understand that certain videos and images were not found on his devices but instead were on MV1's cellphone. He had an arguable potential defense to the charge of production or at least some leverage for his counsel to negotiate a better plea deal than the most serious offense charged with a 15 year mandatory-minimum.

The four videos repeatedly referenced by the government in the Indictment, Rule 11 Agreement, in its sentencing memoranda and at sentencing were found on MV1's phone and not on any of Mr. Montante's electronic devices. There was no indication that Schulman knew or understood this to be the case, or if he did how that might have factored into a defense at trial. He never mentioned that fact or evaluated any other specific evidence with Mr. Montante, only making nebulous and unspecific statements such as that he would get "cooked" if he went to trial. Had he been aware of all of the evidence, Mr. Montante would have opted to take advantage of his right to throw a "Hail Mary" and go to trial. He would have told his story to

a jury that might have empathized with the totality of his circumstances and found

him guilty of a lesser offense than the one he plead guilty to with the harsh

mandatory minimum, based on constitutionally defective legal advice.

Mr. Montante maintains that under these case facts that it would have been

objectively rational for him to insist on going to trial rather than to simply plead

guilty to the most serious charge against him with a 30 year statutory maximum and

a mandatory-minimum sentence of 15 years.

**c.    A voluntary plea of guilty does not cure Ineffective Assistance of Counsel in the plea bargaining process.**

It is anticipated that the government will argue as it did in its response to Mr.

Montante's Motion to Withdraw Plea (R.40, USA Response, 10/27/17, Pg.ID 529),

that because the government provided discovery and the opportunity to view

restricted materials to his then counsel, Mr. Schulman, that all of these materials

were presented to Mr. Montante, discussed with him, and that he was fully informed

of all of the legal implications of the evidence and that he understood all of his rights

and potential defenses and the strength of the government's case prior to entering a

voluntary plea, because his case was pending for 6 months prior to his plea and he

had some college education. *Id.,* Pg.ID 534-36. This could not be further from the

truth, and such assumptions are based on speculation about the nature and extent of

the relationship between Mr. Montante and his counsel Mr. Schulman, and their non-

record communications that the government was clearly not a party to.

The government also argued that some of the evidence he sought was not exculpatory, was inadmissible and that Mr. Montante's "…unconditional guilty plea is deemed to have waived virtually all claims arising out of garden-variety errors that may have antedated the plea." *Id.,* Pg.ID 542.  As a general principal this is true *except* that an unconditional guilty plea does not waive a claim of ineffective assistance of counsel (IAC) that predated the plea.

If that were the case then there never be a need for a § 2255 proceeding in a guilty plea case, since a court would simply look at the record of the plea to resolve any claim of IAC in the pre-plea stages.  But we know that this is not true because the Supreme Court has reaffirmed, expanded and more specifically identified *Strickland's* requirement of effective assistance of counsel in *Lockhart, Padilla, Lafler, Frye,* and *Lee*.  Moreover, the 6th Circuit will, with few exceptions defer IAC claims in guilty plea cases to § 2255 proceedings. See, e.g., *United States v. Ferguson,* 669 F.3d 756, 762 (6th Cir. 2012).  If the courts simply looked to the plea proceeding record these claims could be resolved on direct appeal and there would be no need for collateral fact-finding proceedings.

The government's argument at its core renders the basic relationship between attorney and client meaningless, as along as a defendant says he understands the deal on the record in court.  The nature of any acts or omissions by counsel, discussions Mr. Monante had with counsel, and pressure exerted by counsel to convince the

client to plead guilty, any unrealistic promises, false or inaccurate representations

undue influence that resulted in a belief that he has no alternative but to plead to the

first plea offer, or his misunderstanding of his case facts and rights incident to trial

presumably mean nothing, if the appropriate responses were elicited by the court at

a brief plea hearing.   Mr. Montante does not believe that this is the law for the

following reasons.

The Supreme Court in *Frye,* 132 S.Ct. at 1406, stated:

> In *Padilla*, [*Padilla v. Kentucky,* 559 U.S. 356, 130 S.Ct. 1473, 1482, 176 L.Ed.2d 284 (2010)] the Court again discussed the duties of counsel in advising a client with respect to a plea offer that leads to a guilty plea. *Padilla* held that a guilty plea, based on a plea offer, should be set aside because counsel misinformed the defendant of the immigration consequences of the conviction. The Court made clear that "the negotiation of a plea bargain is a critical phase of litigation for purposes of the Sixth Amendment right to effective assistance of counsel." 559 U.S., at ___, 130 S.Ct., at 1486. *It also rejected the argument made by petitioner in this case that a knowing and voluntary plea supersedes errors by defense counsel.* Cf. Brief for Respondent in Padilla v. Kentucky, O.T. 2009, No. 08–651, p. 27 (arguing Sixth Amendment's assurance of effective assistance "does not extend to collateral aspects of the prosecution" because "knowledge of the consequences that are collateral to the guilty plea is not a prerequisite to the entry of a knowing and intelligent plea").

The petitioner in *Frye* (the State of Missouri) argued, as will the government

here,  that defendant Frye entered a knowing and voluntary plea at a constitutionally

adequate plea hearing and consequently was not entitled to any further relief for any

IAC that occurred in plea bargaining, citing *Tollett v. Henderson,* 411 U.S. 258, 267

(1973), for the proposition that "When a criminal defendant has solemnly admitted

in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." Merits Brief for Petitioner in *Missouri v. Frye,* p. 39.

This argument was made pursuant to the Supreme Court's grant of Certiorari, where the Court certified this question: ''What remedy, if any, should be provided for ineffective assistance of counsel during plea bargain negotiations if the defendant was later convicted and sentenced pursuant to constitutionally adequate procedures?" *Missouri v. Frye,* 131 S.Ct. 856 (Mem) (2011). By posing this question the Supreme Court has squarely considered and has rejected on two occasions, in *Padilla* and *Frye,* the very argument that the government will likely make to sustain the guilty plea entered by Mr. Montante in the instant matter.

Simply put, a "knowing and voluntary plea" does not supersede IAC that occurred at the plea bargaining or pre-plea hearing stage of the proceedings. Even a subsequent knowing and voluntary plea, as *Padilla, Frye,* and *Lee* instruct, does not remove the taint of IAC. Given this strong message by the Supreme Court, Mr. Montante maintains that this Court should address his claims of IAC in the plea bargaining process irrespective of any determination from the record of his change of plea hearing that his plea of guilty was knowing and voluntary.

36

**d.    An evidentiary hearing is necessary for proper resolution of these issues.**

The Supreme Court has held in *Machibroda v. United States,* 368 U.S. 487,

494-95 (1962), that where a § 2255 petition alleges an ineffective assistance of

counsel claim and the record includes a factual dispute, "relate primarily to

purported occurrences outside the courtroom and upon which the record could,

therefore, cast no real light."  The district court must hold a hearing to determine the

truth of the claims, unless "the files and records of the case conclusively show that

he is not entitled to relief." *Turner v. United States,* 183 F.3d 474, 477 (6th Cir.

1999).

In the instant matter the "files and records of the case" cannot resolve the

validity of Mr. Montante's claims.  The record is silent as to the attorney-client

communications between Mr. Montante and Mr. Schulman that induced him to plead

guilty on false promises and inaccurate information, and that resulted in a custodial

term that exceeded his promised mandatory-minimum sentence.  The claims in this

petition and memorandum assert facts not available in the current record and cannot

be properly addressed without the district court taking the testimony of Mr.

Montante, his witnesses, and his trial counsel, Mr. Schulman.  Moreover, a

petitioner's burden to show his right to a hearing is significantly lower than his

burden to show he is entitled to § 2255 relief, particularly where Mr. Montante has

presented a factual narrative of the events that is neither contradicted by the record

nor "inherently incredible." *Valentine v. United States,* 488 F.3d 325, 334 (6th Cir. 2007), citing *Turner,* 183 F.3d at 477. Accord, *Martin v. United States,* 889 F.3d 827, 832 (6th Cir. 2018).  See also, *MacLloyd,* 684 F.Appx. at 561-62, (citations omitted) noting that, "the burden for receiving an evidentiary hearing under § 2255 is light, and citing cases that a petitioner's burden was met based on a mere declaration, an affidavit, and "self-serving testimony" that the defendant would have pled guilty had he been fully informed by his attorney. The fact that the petitioner's allegations may be "improbable" is insufficient to forego a hearing." *Id.*

Under this standard, Mr. Montante, by signing the declaration below, attesting to the correctness of the facts recited in this Motion and Memorandum of Law in support, under penalty of perjury, has met his burden and is entitled to an evidentiary hearing.

## RELIEF REQUESTED

Petitioner Randy Nibungco Montante requests that this Honorable Court:

a) Require Respondent to answer the allegations in this motion and memorandum of law in support;

b) Hold an evidentiary hearing so that any and all non-record facts and factual allegations may be developed and established for this Court to properly address and review the issues set forth in this motion;

c) Issue an order vacating and setting aside his conviction and/or his sentence, and any other relief to which he may be entitled in this proceeding.

**Pursuant to the provisions of 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing information is true and correct to the best of my information and belief.**

Executed on: **July  23  , 2018**

**Randy Nibungco Montante**

Respectfully submitted:

/s/    *Martin J. Beres*

MARTIN J. BERES (P-26407)
Attorney for Petitioner, Randy Nibungco Montante
42211 Garfield Road, #146
Clinton Township, Michigan 48038
(586) 260-8373
mjberes@gmail.com

DATED:  **August 3, 2018**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RANDY NIBUNGCO MONTANTE,

       Movant,

                             Case No.: 2:16-cr-20576-1

v.

                             Hon. Stephen J. Murphy, III

UNITED STATES OF AMERICA,      U.S. District Judge

       Respondent.

## CERTIFICATE OF SERVICE

I certify that on August 3, 2018, the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel of record. Paper copies have been served by U.S. Mail to parties not registered in the CM/ECF system, on this date.

                    /s/ *Martin J. Beres*
                    MARTIN J. BERES, (P-26407)
                    Attorney for Petitioner, Randy Nibungco Montante